# Exhibit A

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Northampton _____ County

For Prothonotary Use Only:

Docket No: C-48-CV-2023-

TIME STAMP 1441



*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

---

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| ABEC, Inc. | Eat Just, Inc. |

**Are money damages requested?** ☒ Yes ☐ No

**Dollar Amount Requested:** (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No   **Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Peter J. Norman, Esq./Stephanie Wolbransky, Esq.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

---

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☒ Other: Contract -Equipment and Services

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

**KLEHR HARRISON HARVEY BRANZBURG LLP**
By:  Peter J. Norman/Stephanie D.Wolbransky
I.D. Nos.: 65658/326356
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700
PNorman@Klehr.com
SWolbransky@Klehr.com

ATTORNEYS FOR PLAINTIFF

*FILED*

*COPY*

2023 MAR -8 P 12: 06

COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA

| | |
|---|---|
| ABEC, INC.<br>3998 Schelden Circle<br>Bethlehem, PA 18964,<br><br>                Plaintiff,<br><br>        v.<br><br>EAT JUST, INC.<br>300 Wind River Way<br>Alameda, CA 94501<br><br>And<br><br>GOOD MEAT, INC.<br>300 Wind River Way<br>Alameda, CA 94501<br><br>              Defendants. | COURT OF COMMON PLEAS<br>NORTHAMPTON COUNTY<br><br>Civil Action<br><br>No.  C-48-CV-2023-<br>1441 |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
P.O. Box 4733
Easton, PA 18042
(610) 258-6333

1

10408132.v1

FILED

2023 MAR -8 P 12: 07

COURT OF COMMON PLEAS
CIVIL DIVISION
NORTHAMPTON COUNTY, PA

COPY

**KLEHR HARRISON HARVEY BRANZBURG LLP**
By:  Peter J. Norman/Stephanie D.Wolbransky
I.D. Nos.: 65658/326356
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700
PNorman@Klehr.com
SWolbransky@Klehr.com

ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| ABEC, INC.<br>3998 Schelden Circle<br>Bethlehem, PA 18964, | COURT OF COMMON PLEAS<br>NORTHAMPTON COUNTY<br><br>Civil Action |
| Plaintiff, | No.  **C-48-CV-2023-**<br>**1441** |
| v. | |
| EAT JUST, INC.<br>300 Wind River Way<br>Alameda, CA 94501 | |
| And | |
| GOOD MEAT, INC.<br>300 Wind River Way<br>Alameda, CA 94501 | |
| Defendants. | |

## COMPLAINT

Plaintiff ABEC, Inc. ("ABEC") for its complaint against defendants Eat Just, Inc. and

Good Meat, Inc. avers as follows:

2

10408132.v1

## I.    INTRODUCTION

1.    ABEC has been an innovator in the biopharmaceutical manufacturing industry for almost 50 years, having developed the first production-scale bioreactors in the 1980s, the first bioreactors larger than 10,000 liters (L) in the 1990s, and the first large-scale single-use bioreactors in the 2010's.

2.    ABEC is recognized as the industry leading large scale cell culture development company, and in the past few years provided that expertise to advance bioreactor technology to the scales necessary to support the commercial viability of cultured meat – that is, meat developed in a sterile laboratory environment that is comparable to farm raised animal meat.

3.    ABEC has engineered, designed, and established the manufacturing capability for cell culture bioreactors of up to 250,000L that would provide the economy of scale to allow for the affordable production of cultivated meat, which in this case is derived from chicken cells.

4.    Although ABEC has delivered on all of its commitments to defendants, including the construction of pilot scale bioreactors and support equipment for facilities in the USA and Singapore, defendants have failed to live up to their financial obligations, including failing to make payment on more than $30 million of invoices that defendants admitted are due and owed.

5.    Based upon the defendants' repeated failures and broken promises, ABEC has no choice but to terminate the large-scale bioreactor development and manufacturing agreement and associated purchase orders with defendants and to seek to recover its damages from defendants in this Court.

## II.    THE PARTIES

6.    Plaintiff ABEC, Inc. is a corporation with an address of 3998 Schelden Circle, Bethlehem, Pennsylvania 18017.

10408132.v1

7.    Defendant Eat Just, Inc. ("EJ") has a business address of 300 Wind River Way, Alameda, CA 94501.

8.    Defendant GOOD Meat, Inc. ("GM") has a business address of 300 Wind River Way, Alameda, CA 94501.

## III.    JURISDICTION AND VENUE

9.    Jurisdiction is proper in this Court because the amount in controversy exceeds $50,000.00, and the defendants have committed wrongful acts, as set forth below, in this jurisdiction.

10.    Venue is proper in the Court because the causes of action arose in Northampton County, work under the contracts are being performed in Northampton County, and/or the defendants have conducted business in Northampton County.

## IV.    FACTUAL BACKGROUND

11.    In the last decade there has been an exponential growth of "plant-based meat" products in the global food industry. However, recently this phenomenon has sprouted a semi-gold rush to develop "cultivated meats" – more precisely, meat developed in a sterile laboratory environment that is comparable to farm raised animal meat.

12.    As cultivated meats are grown in a laboratory from actual animal cell cultures over the course of several weeks, the process is more akin to the development of new biopharmaceuticals, rather than food products.  Indeed, both the federal Food and Drug Administration ("FDA") and the United States Department of Agriculture ("USDA") have strict oversight of the equipment and process under which the cultivated meat is grown.

13.    In December 2020, defendant EJ received approval from the government of Singapore for a cultivated meat product that EJ branded "Good Meat".  While it is possible to use animal cell cultures in a normal sterile laboratory to develop very small amounts of cultivated meat, to make

10408132.v1

the cultivated meat production commercially viable, the size of the vessel or vat – technically, the bioreactor - needs to be incredibly large.

14.     The manufacture, supply and use of bioreactors is very common in the biopharmaceutical industry, however, the most common size of bioreactor used in the industry likely holds only 6000 liters (L) of liquid product, and the largest ever developed only held 25,000L.

15.     In order to make the cultivated meat production profitable, EJ determined that it would need to use bioreactors that could hold 250,000L (the "Big Vessels"), approximately 10 X larger in size than the biggest bioreactor currently in use or ever designed.

16.     In order to make these new bioreactors, EJ turned to ABEC, the industry leader in the engineering and development of bioreactors to determine if it was even feasible to design and develop the Big Vessels that EJ would need.

17.     Further, it was determined that defendants would need to develop and equip two smaller demonstration plants in Singapore and California (the "Pilot Plants") as part of their process development and small-scale manufacturing for successful cultivation on a smaller scale – using only 6000L bioreactors – before ramping up to production with the Big Vessels that were in excess of 4000% larger.

18.     Negotiations on the design and development of the Big Vessels, along with development and equipping of two Pilot Plants began in early 2021.

19.     In conjunction with the development and equipping of the Pilot Plants, defendants issued purchase orders to ABEC for the Pilot Plants' work.  A copy of the Purchase Order for some of the Pilot Plants work is attached hereto as Exhibit A.

20.     Toward the end of the negotiations on the Big Vessel project, EJ determined that it would use a wholly owned division named "Good Meat" to enter into the agreement with ABEC.

21.    Unfortunately, this division which became defendant GM was woefully undercapitalized from the beginning, especially considering that the whole endeavor was likely to cost more than $1 billion, with commitments to ABEC for ABEC's portion of the Project alone likely exceeding $550,000,000.00.

22.    Around August 9, 2021, ABEC and the newly formed defendant entered into the Bioreactor Development Agreement (the "Original Agreement"), a copy of which is attached hereto as Exhibit B.

23.    The Original Agreement contemplated five different stages of work on the project (the "Project"):

Stage One – Feasibility

Stage Two – Conceptual Design

Stage Three – Design Validation

Stage Four – Proof of Concept

Stage Five – Full Scale Production Capacity

Each of the stages contained various activities/deliverables required to show progress and/or completion of tasks within the stage.  See Exhibit B.

24.    The Original Agreement also required the defendants to issue purchase orders for the various portions of each stage and set forth the payment terms under which ABEC would be entitled to receive payment upon completion of various activities or deliverables.

25.    Under the Original Agreement, defendants also agreed to issue shares of common stock in the newly created corporation to ABEC as part of ABEC's compensation for its work, with the amount of stock issued to ABEC increasing as the Project proceeded to the later stages.

26.    Defendants also agreed under the Original Agreement to provide ABEC on an annual basis copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders

6

10408132.v1

equity, all prepared in accordance with generally accepted accounting principles. See Exhibit B, page 17.

27. Defendants have never provided ABEC with any copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity.

28. Defendants also agreed under the Original Agreement to provide ABEC on a quarterly basis unaudited copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity, all prepared in accordance with generally accepted accounting principles. See Exhibit B, page 17.

29. Defendants have never provided ABEC with any copies of quarterly (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity.

30. During the end of 2021 and into 2022, defendants continued to issue purchase orders to ABEC increasing the scope of work that ABEC was to perform on the Project, and ABEC continued to perform its work under the Original Agreement and the purchase orders for the Project.

31. Additionally, in order to perform the work required under the Original Agreement and purchase orders, ABEC was required to expand and upgrade its existing facility in Springfield, Missouri to accommodate the scope of the work, and also add a facility in North Carolina. The expansion and upgrade costs (the "Expansion Costs") are estimated by ABEC to be $15,786,445.00. Attached hereto as Exhibit C to this Complaint is a breakdown of the Expansion Costs.

32. By the end of 2022, defendants had issued approximately $280 million worth of work in purchase orders and agreed changes to ABEC on the Project and had reserved production capacity to support over $550 million of work.

33.    Unfortunately, during this same time period, defendants began to fail to make timely payments on invoices owed to ABEC.

34.    In January 2023, ABEC met with the CEO of defendants, Josh Tetrick,  in California to resolve issues on the Project, including late payments, changes to the work, etc.

35.    As a result of this meeting, on or around February 1, 2023, the parties entered into the Amendments to Purchase Orders and Bioreactor Development Agreement (the "Amendments"). A copy of the Amendments is attached to this Complaint as Exhibit D hereto. (Collectively, the Original Agreement and the Amendments will be referred to herein as the "Amended Agreement")

36.    Under the Amendments, among other issues, the parties agreed:

a.    To deadlines under which defendants would have to make payment on past due invoices totaling $35,111,159.80;

b.    That all future invoices on the Project would be paid in a timely manner;

c.    That defendants would issue updated purchase orders #187860, #191507, #191509, #193749, #194919 and #196518 for work that reflected an agreed upon increase of $14,544,538.00 for the scope of such work;

d.    That defendants would issue to ABEC by February 28, 2023 copies of audited financial statements for Fiscal Year 2021 and unaudited quarterly financial statements for each fiscal quarter from the date of the Original Agreement;

e.    To make schedule changes for certain work in progress on the Project; and

f.    To changes in termination rights and exclusivity under the Original Agreement.

See Exhibit D.

37.    On or around February 6, 2023, as required under the terms of the Amendments, defendants made payment to ABEC in the amount of $2,604,352.00 reflecting payment for the "Recent Past Due Amount "as set forth in Section 1 of the Amendments, as well as $2,111,159.80 reflecting the initial payment for the "Past Due Amount".

10408132.v1

38.    However, under the Amendments, defendants were required within 10 days of the execution of the Amendments to issue updated purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 in the amount of $14,544,538.00 to ABEC for work that had been performed and/or was in progress.

39.    Despite receipt of notice from ABEC that the updating to purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 were required, and later notice that such updates were due and owing, defendants failed to issue the agreed upon updates to such purchase orders.

40.    ABEC had issued an invoice for work on January 25, 2023, in the amount of $927,366.90 ("Invoice 24845").  A copy of the Invoice 24845 is attached hereto as Exhibit E.

41.    Under the terms of the Amended Agreement, Invoice 24845 was due and owing as of February 24, 2023.

42.    In an effort to assist defendants with respect to cash management expectations, ABEC provided repeated notice to defendants that payment under Invoice 24845 was coming due on February 24, 2023.

43.    However, despite receipt of such notice, defendants failed to make any payment to ABEC on Invoice 24845.

44.    Additionally, as per the terms of the Amendments, defendants were required to make a payment of $16,500,000.00 to ABEC on March 1, 2023 of the second installment of the "Past Due Amount".

45.    However, defendants without excuse failed to make the required payment of $16,500,000.00 to ABEC for the second installment of the Past Due Amount.

46.     Under the terms of the Amendments, it was agreed that the failure to make timely payment of the Past Due Amount would cause all invoices issued to defendants to immediately become due and payable.

47.     Accordingly, as of March 7, 2023, a total of $62,649,231.79 in invoices to defendants were due and owing to ABEC. Attached hereto as Exhibit F is a copy of a spreadsheet detailing the amounts due on each invoice. Defendants owe ABEC contractual interest on the invoices in question totaling $631,963.70. Attached hereto as Exhibit G is a copy of a spreadsheet detailing the current interest charges due for each invoice.

48.     On or around March 2, 2023, ABEC sent notice to defendants that defendants were in breach of their obligations under the Amended Agreement, and despite there not being any contractual requirement for such, ABEC provided defendants with the opportunity to cure the defaults under the Amended Agreement by March 6, 2023 at 5:00 pm EST. A copy of the March 2, 2023 Letter is attached hereto as Exhibit H.

49.     Despite being given the opportunity by ABEC to cure the defaults under the Amended Agreement, defendants have failed to even make an attempt to cure any of the defaults.

50.     Accordingly, ABEC has been forced to terminate the Amended Agreement and associated purchase orders, and seek damages from defendants with respect to such termination.

51.     Defendant EJ is liable to ABEC for the amounts on the Project due to the doctrine of enterprise liability.

52.     Upon information and belief, defendants are subject to common control by Josh Tetrick, the CEO of both EJ and GM.

53.     Upon information and belief, defendants EJ and GM have common ownership and EJ has an administrative nexus to GM.

10408132.v1

54.    Upon information and belief, GM is an enterprise of defendant EJ as it is engaged in a common commercial endeavor with EJ, the commercial development of the proprietary cultivated meat products.

55.    Upon information and belief, GM failed to observe commercial formalities, as it was operating as a business in California for at least 10 months before it was registered to do business on June 16, 2022, did not regularly prepare financial reports in accordance with generally accepted accounting principles and failed to properly administer its corporate form as a separate corporation from EJ.

56.    Upon information and belief, GM has no employees of its own, and uses employees on the payroll of defendant EJ. By way of example, numerous purchase orders on the project were issued on defendant EJ forms, with billing made to "JUST INC" , a trade name used by defendant EJ. Further, the contact persons on purchased orders were employees of EJ including Infeanyi Amadi (identified as a "scientist at Eat Just"), Russ Read (identified as "VP of engineering at Just, Inc.") and Rodney Veach (Just, Inc.).

57.    Upon information and belief, GM and EJ have commingled corporate assets, GM and EJ have the same offices, the same address and the same officers. All communications with GM are from the EJ email address "@JU.ST", website and forms, and even GM's general counsel only uses an EJ email address in her communications.

58.    Upon information and belief, EJ used its corporate control over GM to benefit EJ, and represented that assets of EJ were actually assets of GM.

59.    As stated above, GM was vastly undercapitalized for its stated purpose, and it would be unjust and prejudicial to allow EJ to benefit from the undercapitalization of GM to the detriment of ABEC.

10408132.v1

60.    Upon information and belief, GM is allegedly capitalized with EJ assets and opportunities, and used EJ resources.

61.    Upon information and belief, GM and EJ engaged in related party transactions that were not at fair market value and were intended to benefit EJ.

62.    Upon information and belief, the use of the GM corporate form has perpetuated a fraud upon ABEC over the course of the Project, and GM engaged in wrongful conduct by hiding its financial records and status from ABEC, despite an express obligation to provide ABEC with repeated updated financial records and status over the period of more than 18 months.

63.    Upon information and belief, the CEO of GM and EJ misrepresented to ABEC the financial situation as to GM, and ABEC acted in reliance of such statements by remaining on the Project, and as such ABEC has been prejudiced by such actions, and it would be inequitable to allow EJ to benefit from the use of GM's corporate shell.

64.    Upon information and belief, investors in GM can freely exchange their stock holdings in GM for equal stock holdings in EJ without penalty or fee.

65.    ABEC has performed all of its obligations under the Amended Agreement and/or all conditions precedent to demand payment and recoupment for its damages on the Project have been met and/or waived.


## COUNT I – Breach of Contract

66.    Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 65 of the Complaint, *supra*.

67.    As set forth above, ABEC and defendants entered into the Amended Agreement.

68.    As set forth in detail above, defendants have breached their obligations under the Amended Agreement by:

10408132.v1

      a.      failing to make back payments on invoices when such payments were due,

      b.      failing to make current payments on invoices when such invoices were due,

      c.      failing to issue the required additional updated purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 to ABEC under which defendants agreed that ABEC was to receive an additional $14,544,538.00,

      d.      failing to provide ABEC with annual and quarterly financial statements and records, and

      e.      failing to review and approve DCLs relating to changes requested by defendants to the scope of work within purchase orders.

69.      As set forth above, ABEC provided defendants with notice that they were in breach of their obligations under the Amended Agreement, and though under no legal obligation to do so, ABEC even provided the defendants with an opportunity to cure their breaches of the Amended Agreement.

70.      Despite being provided with an opportunity to cure, defendants adamantly refused to cure their breaches under the Amended Agreement.

71.      ABEC is owed $62,649,231.79 for invoices that defendants refused to pay, even though they were acknowledged as due and owing, and interest in the amount of $631,963.70.

72.      ABEC is also entitled to recover $37,666,313.00 for agreed upon Impacts to ABEC due to Changes in Committed Scope that was addressed by the parties in the Amendments.

73.      Additionally, ABEC is entitled to damages for lost profits, lost overhead and productivity losses caused by defendants' breach of the Amended Agreement in the amount of $105,651,321.00.

74.    Further, as set forth above, ABEC is entitled to its consequential damages caused by defendants' breaches as estimated in the Expansion Costs of $15,786,445.00 and ABEC is also entitled to such other direct damages caused by defendants' breaches.

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against Defendants Eat Just, Inc. and Good Meat, Inc. on Count I in the following amounts:

a.    $62,649,231.79 on the invoices owed by Defendants;

b.    Contractual interest in the amount of $631,963.70 owed on the invoices as of March 7, 2023;

c.    $37,666,313.00 for the Impacts to ABEC due to Changes in Committed Scope that was addressed by the parties in the Amendments;

d.    An amount far in excess of $50,000.00 representing lost profits, lost overhead, productivity loses, Expansion Costs and other direct and recoverable damages incurred by Plaintiff; and

e.    Interest, costs, reasonable attorneys' fees and such other relief as the Court deems necessary and proper.

## COUNT II – Account Stated (In the Alternative)

75.    Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 74 of the Complaint, *supra*.

76.    As set forth above, ABEC had a running account with the defendants, which was evidenced by the submission of invoices by ABEC to the defendants.

77.    A balance of $62,649,231.79 remains due on the invoices submitted by ABEC to defendants.

78.    Additionally, in the Amendments, defendants acknowledged that ABEC was due $37,666,313.00 for Impacts to ABEC due to Changes in Committed Scope.

14

79.    Defendants had acknowledged receipt of the invoices from ABEC representing the accounts stated.

80.    Defendants acknowledged that a certain sum in the amount of $62,649,231.79 is due on the accounts stated, that $37,666,313.00 was due as confirmed by the Amended Agreement, and defendants promised to pay such accounts, and accordingly the amount of $100,315,545.79 is recoverable by ABEC from defendants.

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against Defendants Eat Just, Inc. and Good Meat, Inc. on Count II in the following amounts:

a.    $100,315,545.79 owed by Defendants; and

b.    Interests, costs, reasonable attorneys' fees and such other relief as the Court deems necessary and proper.

KLEHR, HARRISON, HARVEY, BRANZBURG LLP

03/07/2023

By:    /s/ Peter Norman

Peter Norman, Esquire

Attorneys for Plaintiff
ABEC Inc.

15

10408132.v1

# Exhibit A



# Purchase Order

**#187860**

6/17/2021

**Vendor**

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
United States

**TOTAL**

## $43,966,326.00

Need By Date: ~~1/31/2023~~

| Need By Date | Vendor Quote # | Billing Phone | Ready for FAT |
|---|---|---|---|
| ~~1/31/2023~~ | Proposal No. 2106101A and DCL No. | | 1 Sept 2023 |
| Ready for FAT 1 Sept 2023 | 13135-003 | | |

| Bill To Address | Contact | Net Terms | Ship To Address |
|---|---|---|---|
| JUST Inc | Ifeanyi Amadi | | Good Meat |
| 2000 Folsom St | | | 2000 Folsom |
| San Francisco, CA 94110 | | | San Francisco CA 94110 |
| | | | United States |

US Demonstration Facility Stainless Steel Bioreactors.

| Memo | Amount |
|---|---|
| Original Order 6/17/21 | $19,830,177.12 |
| Original Order 6/17/21 | $12,141,087.88 |
| DCL 13135-003. Update 12/8/2021 | $11,995,061.00 |

| | Total | $43,966,326.00 |
|---|---|---|

Terms and Conditions per Bioreactor Development Agreement Dated August 10, 2021


187860

1 of 0

# Exhibit B

CONFIDENTIAL

## BIOREACTOR DEVELOPMENT AGREEMENT

This Bioreactor Development Agreement (this "**Agreement**") is entered into as of August 10, 2021 ("**Effective Date**") by and between GOOD Meat, Inc., a Delaware corporation having its principal place of business at 2000 Folsom St., San Francisco, CA 94010 ("**GM**"); and ABEC, Inc., a Pennsylvania corporation with its principal place of business at 3998 Schelden Circle, Bethlehem, PA 18017 ("**ABEC**"). GM and ABEC are hereinafter referred to separately as a "**Party**" and jointly as the "**Parties**."

### RECITALS

WHEREAS, GM is a leading producer of cultured meat;

WHEREAS, ABEC designs, builds and sells bioreactors;

WHEREAS, GM and ABEC intend to collaborate on the development and manufacture of bioreactors with a minimum working volume of 100,000 liter bioreactors and a target working volume of 250,000 liter or larger (each, a "**100KL+ Bioreactor**"); and

WHEREAS, GM and ABEC have entered into this Agreement, which sets forth the terms and conditions for the above mentioned collaboration between GM and ABEC;

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual agreements set forth hereinafter and the consideration and mutual benefits to be derived therefrom, the Parties agree as follows:

**1     DEFINITIONS**

1.1     "**Affiliate**" means, with respect to each Party, any legal entity other than such Party that is Controlled by such Party or under common Control with such Party only while and for so long as such Control exists.

1.2     "**ABEC Background IP**" means any and all Intellectual Property Rights of ABEC that are: (i) wholly or partially owned by, licensed to, or otherwise controlled by ABEC as of the Effective Date; and (ii) first invented, developed, or otherwise devised by or for ABEC before the Effective Date or outside the Project and without utilizing Confidential Information of GM.

1.3     "**ABEC Foreground IP**" means any and all Intellectual Property Rights of ABEC that are: (i) wholly or partially owned by, licensed to, or otherwise controlled by ABEC, after the Effective Date and (ii) first invented, developed, or otherwise devised by or for ABEC after the Effective Date within the Project solely to the extent pertaining to Cell Culture Bioreactor Technology. Notwithstanding anything to the contrary, ABEC Foreground IP will exclude all ABEC Background IP. For the avoidance of doubt, ABEC Foreground IP shall include all Intellectual Property Rights relating to cell culture equipment (bioreactors and supporting technology) and process automation developed by ABEC.

1.4     "**Bioreactor Technology Intellectual Property Right(s)**" means any and all Intellectual Property Rights relating to the research, development, design and construction of bioreactors, along with related supporting equipment, software and supporting technology.

1.5     "**Cell Culture Bioreactor Technology**" means a bioreactor, along with related supporting equipment, software and supporting technology intended, designed, and constructed for GMP cultivation of animal cells for food production.

CONFIDENTIAL

1.6     **"Cultured Meat Technology"** means the technology, processes and know-how concerning the cultivation of animal cells in a bioreactor for the purpose of cultivating meat.

1.7     **"Cultured Meat Technology Intellectual Property Right(s)"** means any and all Intellectual Property Rights relating to propagation and cultivation of animal cells, specific to cell lines cultivated for human consumption and associated process recipes and formulations.

1.8     **"Confidential Information"** of a Party means any information of the Disclosing Party disclosed to the other Party pursuant to this Agreement which is in written, graphic, machine readable or other tangible form and is marked "Confidential," "Proprietary" or in some other manner to indicate its confidential nature, or which, if disclosed orally or by demonstration, is identified at the time of initial disclosure as confidential and memorialized in writing within thirty (30) days of such disclosure and such writing is marked in a manner to indicate its confidential nature and delivered to the Receiving Party.  Confidential Information includes but is not limited to, the existence, content and subject matter of this Agreement, products, components, technical data, specifications, designs, drawings, models, processes, methods, techniques, software, algorithms, formulas, compositions, methodologies, rules and procedures, know-how, research, suppliers, financial information, contracts, product plans, business plans, business methods, business data, customers, markets, and marketing or competitive analysis.

1.9     **"Control"** means the ownership or other control, directly or indirectly, of fifty percent (50%) or more of the voting securities or other equity interests in any other person; or the power to appoint the majority of the members of the board of directors of any other person; or the power to cause the direction of management of any other person; or otherwise the actual control of any other person through ownership, whether based on contract, trustee or otherwise.

1.10    **"Deliverables"** means any items required to be delivered by one Party against the Requirements as specified in more detail in **Appendix 1** (Statement of Work) hereto.

1.11    **"Disclosing Party"** means a Party that discloses Confidential Information.

1.12    **"GM Background IP"** means any and all Intellectual Property Rights of GM that are: (i) wholly or partially owned by, licensed to, or otherwise controlled by GM as of the Effective Date; and (ii) first invented, developed or otherwise devised by or for GM before the Effective Date or outside the Project and without utilizing Confidential Information of ABEC.

1.13    **"GM Foreground IP"** means any and all Intellectual Property Rights of GM that are: (i) wholly or partially owned by, licensed to, or otherwise controlled by GM after the Effective; and (ii) first invented, developed, or otherwise devised by or for GM after the Effective Date within the Project pertaining to Cultured Meat Technology. Notwithstanding anything to the contrary, GM Foreground IP will exclude all GM Background IP.  For the avoidance of doubt, GM Foreground IP shall include all Intellectual Property Rights relating to Cultured Meat Technology.

1.14    **"GMP"** means Good Manufacturing Practice.

1.15    **"Intellectual Property Right(s)"** means any and all intellectual property rights and other like statutory rights including, without limitation, Patent Rights, copyright rights (including, without limitation, moral rights and the right to further transfer and modify such copyright rights), authors' rights, trademark rights, tradenames, rights of publicity, rights in data, trade secret rights, rights in know-how or other proprietary information, in each case irrespective of whether arising out of registration or otherwise as well as applications and the right to file for applications for any of the foregoing, contract and licensing rights, goodwill and all other intellectual property rights as may exist now and/or hereafter come into existence and all applications therefor and

CONFIDENTIAL

registrations, renewals and extensions thereof, regardless of whether such rights arise under the laws of the United States or any other state, country, jurisdiction or international treaty.

1.16    **"Milestone"** means a milestone into which delivery of Deliverables or other work may be divided and as further specified in the applicable Statement of Work.

1.17    **"Joint Intellectual Property Right(s)"** means any and all Intellectual Property Rights conceived, reduced to practice and/or developed jointly by the Parties in furtherance of the Project. For the sake of clarity, Joint Intellectual Property Rights will not include ABEC Foreground IP, GM Foreground IP, ABEC Background IP or GM Background IP.

1.18    **"Patent Rights"** means any and all rights under any of the following, whether existing now or in the future: (i) any and all domestic, international or foreign patents, utility models, design registrations, certificate of inventions, patents of addition or substitution, or other governmental grants for the protection of inventions or industrial designs anywhere in the world, including any and all reissues, renewals, re-examinations or extensions thereof, and (ii) any and all applications for any of the foregoing, including any international, provisional, divisional, continuation, continuation-in-part, or continued prosecution applications.

1.19    **"Permitted Purpose"** means the purpose of performing development or other work on the part or on behalf of a Party in furtherance of the Project.

1.20    **"Person"** means an individual, corporation, limited liability company, partnership (whether general or limited), joint venture, trust (including a business trust or real estate investment trust), unincorporated organization, joint stock company, association, or other entity, or any government or any agency or subdivision of any government.

1.21    **"Project"** means the project described in the Statement of Work, as it may be amended in writing by the Parties from time to time.

1.22    **"Prototypes"** means the prototypes (if any) described in the Statement of Work.

1.23    **"Receiving Party"** means a Party that receives Confidential Information.

1.24    **"Requirements"** means GM's functional, non-functional and other requirements for the Deliverables as defined in the Statement of Work.

1.25    **"Statement of Work"** means the Statement of Work attached hereto as **Appendix 1** (Statement of Work), as it may be amended in writing by the Parties from time to time.

1.26    **"Third Party"** means a party other than any of the Parties and/or any of their Affiliates.

**2      PROJECT AND STEERING GROUP**

2.1    Neither Party will materially subcontract the development activities set forth in the Statement of Work without the advance written consent of the other Party; it being understood that the Parties may have subcontractors provided that the contracting Party continues to supervise the subcontractors in the development activities and shall remain responsible for compliance with this Agreement in connection with such development activities. The Parties will work together towards completing the Project, participating as necessary in scheduled design review meetings and any other meetings necessary for completion of the same.

2.2    Each Party will timely prepare and provide to the other Party all Prototypes, other Deliverables and/or other results of the Project in keeping with the Statement of Work, the Milestones possibly set forth therein as well as in the way and form as set forth therein. Each Party will keep the other Party continuously informed of the status and progress of as well as any possible delays or threatened delays with the Project. Each Party will promptly report to the other Party the results of any analyses or other tests performed set forth in the Statement of Work, together with any

CONFIDENTIAL

comments concerning design changes or further development or remedial actions that may be needed.

2.3    Each Party will provide and maintain the necessary precautions, supervision, and safeguards for the safety of all persons performing any development or other work within the Project and will not cause or permit to exist an unlawful, hazardous, unsafe, unhealthy, or environmentally unsound condition over which such Party has control. Each Party's employees and agents will observe all rules that may be in effect regarding badges, safety, and conduct while at any facility of the other Party.

2.4    The Project will be supervised and governed by a steering group. Each of the Parties will appoint three (3) representatives to the steering group. The steering group will make decisions with unanimous consent by all of the Parties' representatives. The steering group will convene regularly and: (i) be tasked with monitoring the progress of the Project; (ii) has the right to decide on the personnel, subcontractor, material, equipment and other like resources allocated to the Project as well as to amend the Statement of Work, both in a manner being binding on the Parties; and (iii) has such other roles and responsibilities as may be set forth in the Statement of Work. In the event the steering group fails to reach unanimous consent on any matter under review, the Parties will escalate the matter to their respective CEOs for resolution.

3    **EXCLUSIVITY**

Except as expressly authorized in this Agreement and until the earlier of: (1) the start of Stage 5 of the Project (as defined in the Statement of Work) or (2) one (1) year following the termination of this Agreement, ABEC acknowledges and agrees that it will not produce, develop, test, research or otherwise commercialize or attempt to commercialize (whether internally or with any Third Party) any bioreactors exceeding 25,000 liters of working volume for the purpose of culturing animal cells for food production. Notwithstanding the foregoing, in no event shall such aforementioned restriction be effective after seven (7) years from the Effective Date.

4    **PAYMENTS**

4.1    Except as may be otherwise provided in the Statement of Work and below, each Party will bear its own costs for performing the tasks associated with the Project.

4.2    GM shall pay ABEC in accordance with the payment obligations set forth in the Statement of Work as ABEC performs the Project and delivers the Deliverables.

4.3    ABEC will submit invoices related to any amounts owed by GM to ABEC hereunder as may be agreed in the Statement of Work. GM will pay ABEC correctly invoiced amounts net thirty (30) days upon receipt of ABEC's invoice.

4.4    All stated prices are exclusive of any taxes. ABEC may assess and retain any applicable sales taxes unless GM provides a valid sales tax exemption certificate.

4.5    Payment shall not constitute an acceptance of any Deliverables or other results of the Project. ABEC will provide wire instructions/account information and/or make changes thereto by written notice to GM.

4.6    Following the completion and validation of Stage 4 of the Project as specified in the Statement of Work and as determined by GM in its sole judgment, if and as applicable, GM agrees to purchase a minimum of two-million liters (2,000,000 L) of production 100KL+ Bioreactors (i.e., not Prototype), inclusive of the associated seed bioreactors.

4.7    Deliverables provided by ABEC for Stages 4 and 5 are subject to mutually agreed upon Factory Acceptance Testing (FAT), which shall be subject to the review and approval of the steering group.

CONFIDENTIAL

## 5   CONFIDENTIALITY

5.1    The Receiving Party will: (a) protect Confidential Information received by it from the Disclosing Party with the same degree of confidential treatment that it provides for its own similar proprietary and confidential information, which will not be less than the care a reasonable person would exercise under similar circumstances, (b) restrict access to such Confidential Information to such of its employees who have a need to know it to perform any development activities or other work within the Project or to effectuate its rights and obligations under this Agreement, (c) not use such Confidential Information for any purpose other than the Permitted Purpose, and (d) refrain from disclosing such Confidential Information to any Person unless (i) disclosure to such Person is needed to benefit the Project or to effectuate the Receiving Party's rights and obligations under this Agreement and (ii) such Person is bound by a written agreement including confidentiality obligations at least as restrictive as those contained in this Agreement.

5.2    Notwithstanding any other provision of this Agreement, the Receiving Party may disclose Confidential Information of the Disclosing Party, and without liability for such disclosure if in compliance with Section 5.3 below, to the extent that such disclosure is: (i) required to be made pursuant to applicable law, rule, regulation, government authority, duly authorized subpoena, or court order; (ii) required to be made to a court or other tribunal in connection with the enforcement of the Receiving Party's rights under this Agreement; or (iii) approved by the prior written consent of the Disclosing Party.

5.3    If the Receiving Party receives a subpoena or otherwise becomes aware of events that may legally require it to disclose Confidential Information of the Disclosing Party, it will (if not prevented by law) promptly notify the Disclosing Party and cooperate with the Disclosing Party (at the Disclosing Party's expense) to obtain a protective order or other order preventing or restricting such disclosure or eliminating or limiting the scope of such subpoena or legal requirement.

5.4    The rights and obligations under this Section 5 with respect to any Confidential Information will survive for a period of five (5) years from the conclusion of the Project, where the Confidential Information in question was exchanged.  Notwithstanding the foregoing, the Receiving Party's duties under this Agreement with respect to trade secrets of the Disclosing Party shall survive in accordance with applicable law.  The restrictions on disclosure and use of Confidential Information contained in this Agreement shall not apply to any information acquired by the Receiving Party which: (a) was publicly known and generally available to the public at the time of disclosure, or which becomes available to the public other than through an act of omission of the Receiving Party; (b) was already known to the Receiving Party prior to its receipt from the Disclosing Party; (c) is lawfully obtained at any time from a Third Party under circumstances permitting its use or disclosure to others; or (d) is independently developed by the Receiving Party without use of the Disclosing Party's Confidential Information; or (e) is disclosed with the prior written consent of the Disclosing Party.

5.5    Upon the request of the Disclosing Party following the termination or expiration of this Agreement and after the conclusion of the Project, or upon earlier request, the Receiving Party will promptly return or destroy all of the Disclosing Party's Confidential Information in the Receiving Party's possession or control, provided that the Receiving Party may retain one (1) legal file copy and will not be required to destroy electronic back-up copies made in the ordinary course of business, so long as the Receiving Party does not use such copies following termination or expiration of this Agreement.

5.6    Except as provided in Section 5.2, neither Party will disclose to any Third Party or make public the existence and content of this Agreement, or the negotiations leading to or pursuant to this Agreement without the advance written consent of the other Party.  However, each Party may disclose the terms and conditions of this Agreement:  (i) as required by any court or other

CONFIDENTIAL

governmental body; (ii) as required by the rules and regulations of any national securities exchange, NASDAQ, or other market on which its securities are listed or qualified, the Securities and Exchange Commission or other applicable governmental or regulatory body; (iii) as otherwise required by law; (iv) to legal counsel of the parties; (v) in confidence, to accountants, banks, and financing sources and their advisors; (vi) in connection with the enforcement of this Agreement or rights under this Agreement, or (vii) in confidence, in connection with an actual or proposed merger, acquisition, or similar transaction.

5.7    Each Party acknowledges that due to the unique nature of the Confidential Information, any breach of the restrictions contained in this Section 5 is a material breach of this Agreement which may cause irreparable harm and the Disclosing Party may not have an adequate remedy in money or damages in such an event. Any such breach shall entitle the Disclosing Party to seek injunctive relief in addition to all remedies that may be available in law, in equity or otherwise.

## 6    INTELLECTUAL PROPERTY

6.1    GM will retain its ownership of all GM Background IP and shall retain the ability to grant rights, licenses, and submit applications for patents and copyright registrations on its GM Background IP at its sole discretion. GM hereby grants to ABEC a non-transferable, non-exclusive, royalty-free, revocable and limited license to use the GM Background IP contained in the Deliverables solely for the Permitted Purpose and for no other purpose during the term of this Agreement.

6.2    GM will retain its ownership of all GM Foreground IP and shall retain the ability to grant rights, licenses, and submit applications for patents and copyright registrations on its GM Foreground IP at its sole discretion. GM hereby grants to ABEC a non-transferable, non-exclusive, royalty-free, revocable and limited license to use any GM Foreground IP solely for the Permitted Purpose and for no other purpose during the term of this Agreement.

6.3    ABEC will retain its ownership of all ABEC Background IP and all ABEC Foreground IP, and ABEC shall retain the ability to grant rights, licenses, and submit applications for patents and copyright registrations on its ABEC Background IP and ABEC Foreground IP at its sole discretion. ABEC hereby grants to GM a worldwide, royalty free, fully paid-up, non-exclusive license and right to use ABEC Background IP and ABEC Foreground IP for: (a) the Permitted Purpose and (b) GM to build cultured meat production at the facility housing 100KL+ Bioreactors for GM and its Affiliates only, but not for any other Person or Third Party.

6.4    All Joint Intellectual Property Rights shall be owned jointly by ABEC and GM. The Parties shall cooperate with each other and take all actions and execute all documents necessary to prepare, prosecute, record and perfect ownership of Joint Intellectual Property Rights.

  6.4.1    ABEC shall have the sole and exclusive right, even as to GM, to make, use, sell and license Bioreactor Technology Intellectual Property Rights. For the sake of clarity, GM shall not make, use, sell or license Bioreactor Technology Intellectual Property Rights.

  6.4.2    GM shall have the sole and exclusive right, even as to ABEC, to make, use, sell and license Cultured Meat Technology Intellectual Property Rights. For the sake of clarity, ABEC shall not make, use, sell or license Cultured Meat Technology Intellectual Property Rights.

  6.4.3    All costs and expenses for preparation, prosecution, recordation and all other fees for perfecting ownership of Bioreactor Technology Intellectual Property Rights shall be borne by ABEC.

CONFIDENTIAL

6.4.4   All costs and expenses for preparation, prosecution, recordation and all other fees for perfecting ownership of Cultured Meat Technology Intellectual Property Rights shall be borne by GM.

6.4.5   In the event that Joint Intellectual Property Rights (e.g., patent application) relates to both Bioreactor Technology Intellectual Property Rights and Cultured Meat Technology Intellectual Property Rights, each Party shall bear 50% of the costs and expenses for preparation, prosecution, recordation and all other fees for perfecting ownership of such Joint Intellectual Property Rights.

6.4.6   Each Party shall report to the other Party not less than twice per year (approximately six months apart), on the progress of the prosecution of Joint Intellectual Property rights.

6.4.7   The Parties shall cooperate with each other in connection with any claim, suit or proceeding relating to enforcement and/or defense of Joint Intellectual Property Rights and shall keep each other reasonably informed of all material developments in connection with any such claim, suit or proceeding.

6.5   Other than the express licenses and assignments granted under Section 6 in this Agreement, no other or broader license, assignment, right or immunity is granted, whether expressly, impliedly, by estoppel or otherwise, under any Intellectual Property Rights owned, controlled or otherwise licensable by either Party or merely by virtue of the disclosure of Confidential Information hereunder.

6.6   The grant of each license hereunder includes the right to grant sublicenses within the scope of such license by GM and ABEC to their respective current and future Affiliates (including, for clarity, their respective subsidiaries), for so long as they remain its Affiliates. This sublicense right is not subject to the other Party's approval.

6.7   Neither Party will use any trademarks, tradenames, company names, domain names or other like identifiers of the other Party in any manner without the prior written consent of such other Party.

6.8   Prior to the delivery of the respective Deliverables to the other Party, each Party shall use commercially reasonable efforts to identify Intellectual Property Rights of any Third Party that will be included in the Deliverables.

6.9   Each Party will execute such assignments or other documents reasonably required and requested by the other Party to evidence and perfect the assignments granted hereunder.

**7      REPRESENTATIONS AND WARRANTIES**

7.1   Each Party represents and warrants that: (a) it is a legal entity duly incorporated, validly existing, and in good standing under the laws of its jurisdiction of incorporation; (b) it has the power and authority to enter into and perform its obligations under this Agreement; and (c) entering into this Agreement does not violate any agreement or obligation existing between such Party and any other Person.

7.2   Each Party represents and warrants to the other Party that in performing the Project it will not disclose or use any confidential information of any Third Party or produce or develop any Prototypes, other Deliverables or other results of the Project containing or otherwise utilizing any Intellectual Property Rights or confidential information of any Third Party without authorization for such use, unless and only to the extent the Parties have expressly agreed on the same in the Statement of Work.

CONFIDENTIAL

7.3    ABEC represents and warrants to GM that all Deliverables, Prototypes and other results of the Project provided by ABEC to GM will be free and clear of all liens, security interests, and other encumbrances that would affect the ability of the same to be used for the Permitted Purpose.

7.4    ABEC warrants to GM that it: (a) will perform the Project in good, timely and workmanlike manner and with professional skill and diligence; (b) will not use equipment, materials or other items in performance of the Project that would be unsuitable for such use; (c) will perform the Projects in full compliance with all applicable laws, regulations, orders, and other applicable requirements; (d) possesses or will have the technical skills and experience required to duly and timely perform the Project; and (e) will dedicate such time, personnel, and other resources as are reasonably necessary to perform the Projects timely and in accordance with the Statement of Work. Notwithstanding the forgoing, the parties acknowledge and agree that the Project relates to the development of a new product and there is no guaranty or assurance that such product may be able to be developed and/or manufactured as currently desired by GM.

7.5    ABEC represents and warrants to GM that all Stage 5 Deliverables provided by ABEC to GM will comply with and perform in accordance with the Requirements for a period of twelve (12) months.

7.6    In the event either Party discovers a breach of any of the foregoing covenants, representations and warranties of this Section 7 by the other Party, the non-breaching Party shall notify the breaching Party, and the Party breaching the warranty shall use commercially reasonable efforts to reperform the respective task and/or redeliver the respective Deliverable so as to correct the breach.

**8    INDEMNIFICATION**

8.1    If in the performance of this Agreement, an agent or employee of ABEC enters into any premises of GM, ABEC will indemnify, hold harmless and defend, at its sole cost and expense, GM against all claims and liabilities incurred in connection with or arising out of injury to or death of any person or damage to property of any kind, to the extent that such injury, death, or damage is caused by any negligent act or omission, or willful misconduct, on the part of such ABEC agents or employees in connection with such entry into GM premises.

8.2    If in the performance of this Agreement, an agent or employee of GM enters into any premises of ABEC, GM will indemnify, hold harmless and defend, at its sole cost and expense, ABEC against all claims and liabilities incurred in connection with or arising out of injury to or death of any person or damage to property of any kind, to the extent that such injury, death, or damage is caused by any negligent act or omission, or willful misconduct, on the part of such GM agents or employees in connection with such entry into ABEC premises.

**9    TERM AND TERMINATION**

9.1    This Agreement enters into effect on the Effective Date and shall remain in full force until the completion of all the Project, unless terminated pursuant to the terms below.

9.2    Either Party may terminate this Agreement for convenience upon written notice upon thirty (30) days' prior written notice to the other Party.

9.3    Either Party may terminate this Agreement with immediate effect upon written notice to the other Party under the following circumstances: (i) the other Party commits a material breach of its obligations under this Agreement and does not fully remedy such breach by a specified date, which shall be no earlier than thirty (30) days after the date of the terminating Party's written notice thereof; or (ii) either Party: a) enters into any form of bankruptcy, insolvency, or similar proceeding; b) is liquidated, dissolves, ceases to do business or otherwise ceases to conduct its operations in the normal course of business.

CONFIDENTIAL

9.4    Sections 1 (Definitions), 3 (Exclusivity), 5 (Confidentiality), 6 (Intellectual Property), 7 (Representations and Warranties), 8 (Indemnification), 9 (Term and Termination), and 10 (Miscellaneous) shall survive any expiration, termination or other cessation of this Agreement, (x) with respect to Sections 3 (Exclusivity) and 5 (Confidentiality), for the respective periods set forth therein, and (y) with respect to 7 (Representations and Warranties), 9 (Term and Termination), for a period of twelve (12) months following such expiration, termination or other cessation of this Agreement.

9.5    In the event that ABEC is unable or unwilling to manufacture 100KL Bioreactors, GM shall have the right to use all ABEC Foreground Intellectual Property Rights arising out of this Agreement to manufacture 100KL+ Bioreactors solely for its own use to manufacture cultured meat. GM shall not use ABEC Foreground Intellectual Property Rights arising out of this Agreement to enable a third-party to manufacture 100KL+ Bioreactors for anyone other than GM for its use to manufacture cultured meat.

## 10    MISCELLANEOUS

10.1    Deliverables under this Agreement may be subject to the export control laws of the country from which shipment is made or those of the United States.  GM may be required to seek and obtain export licenses and authorizations for the shipment of Deliverables.  With respect to each Deliverable, ABEC shall assist GM in ascertaining the export classification and the potential applicability of U.S. export control laws, on its invoice, and ABEC shall provide Buyer: (i) with what ABEC believes is the correct classification, under local and U.S. laws, of the product being shipped and (ii) a statement as to the country of origin of the Deliverable.

10.2    To the extent there are any conflicting provisions within this Agreement, such conflicting provisions shall prevail in the following order: (i) provisions of the Statement of Work; and (ii) provisions of this main document.  To the extent that there is a conflict between the terms and provisions of this Agreement and any ABEC purchase order executed in connection with this Project, the terms of the ABEC purchase order shall control.

10.3    All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered to a Party (i) on the date when delivered personally or by courier or messenger (ii) on the next business day, when deposited with a recognized overnight courier service, or (iii) three (3) calendar days after the date of deposit in the United States mail, with first class postage prepaid and a copy sent by email or facsimile transmission.  All notices shall be sent to the addresses set forth below or to such other address as may be specified by either Party to the other in accordance with this Section.  Either Party may change its address for notices under this Agreement by giving written notice to the other Party by the means specified in this Section.

| If to GM: | If to ABEC: |
|---|---|
| GOOD Meat, Inc.<br>2000 Folsom St.<br>San Francisco, CA  94010<br>Attention: Legal | ABEC, Inc.<br>3998 Schelden Circle<br>Bethlehem, PA  18017<br>Attention: Jim Lynch, CFO |
| Email: notices@ju.st | Email: jlynch@abec.com |

10.4    No failure to exercise, nor any delay in exercising, on the part of either Party, any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further exercise thereof or the exercise of any other right or remedy.

CONFIDENTIAL

10.5    If, at any time, any provision hereof is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.  The invalid provision shall be replaced by a valid one, which achieves to the extent possible the original purpose and commercial goal of the invalid provision.

10.6    This Agreement constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and, except as expressly contemplated herein, supersedes all prior agreements, commitments, understandings and negotiations, both written and oral, between the Parties with respect to the subject matter of this Agreement.  Any provision of this Agreement may be amended only if such amendment is in writing and duly executed by the Parties.  Any amendment hereto shall be in the English language.

10.7    This Agreement shall be governed by the substantive laws of the State of Delaware without reference to any conflicts of laws provisions. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

10.8    Any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association.  The arbitral tribunal shall be composed of three (3) arbitrators, one (1) selected by GM, one (1) selected by ABEC and one (1) mutually agreed upon between the Parties.  The seat of arbitration shall be Wilmington, DE.

[SIGNATURES PAGE FOLLOWS]

CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed in duplicate originals by their duly authorized officer or representatives as of the Effective Date.

"GM"                                        "ABEC"

GOOD Meat, Inc.                             ABEC, Inc.

By: _____                By: _____
Name: Josh Tetrick                         Name: SCOTT PICKERING
Title: CEO                                 Title: CEO
Date: 8/9/2021                             Date: 8/10/2021

*[Signature Page to Bioreactor Development Agreement]*

**Appendix 1**

**Statement of Work**

This Statement of Work (this "**Statement of Work**" or "**SOW**") is entered into as of August 10, 2021 ("**SOW Effective Date**") by and between GOOD Meat, Inc. ("**GM**"); and ABEC, Inc., ("**ABEC**") pursuant to that certain Bioreactor Development Agreement by and between GM and ABEC dated as of August 10, 2021 ("**Bioreactor Development Agreement**"). All defined terms used in this SOW but not defined herein shall have the meanings set forth in the Bioreactor Development Agreement.

ABEC and GM have initiated a partnership for the development and potential supply of cell culture bioreactors to meet GM's growing production needs. Projects to provide bioreactors at both pilot (up to 6,000L) and demonstration (up to 25,000L) working volume are currently underway. In addition, ABEC has committed to propose a plan to design and develop bioreactors with a minimum working volume of 100,000L and a target working volume of 250,000L or more ("**100KL+ Bioreactors**").

100KL+ Bioreactors would be new to the animal cell culture life sciences industry. ABEC has identified the following general areas of investigation for design and development:

- Large-Scale Sanitary Design
- Mixing/Mass Transfer/Scale-Up
- Heat Transfer/Stress/Vibration
- Automation/Instrumentation
- Construction/Fabrication/Installation
- Seed train development
- Support Equipment (Media Prep/Delivery, Reagent Addition, Harvest)
- Development of design standards and protocols that account for sterility requirements and food GMPs

ABEC proposes the following staged approach to address the above areas and ultimately provide a viable design with firm pricing as well as proof of concept and production Bioreactors.

- Stage 1 – Feasibility (2-4 months): Understand the current GM cell culture process, establish GM's performance and production targets, and perform initial 100KL+ Bioreactor design feasibility study.
- Stage 2 – Conceptual Design (4-8 months): Develop a conceptual 100KL+ Bioreactor design, budgetary pricing for future Stages, and develop facility requirements to support first 100KL+ Bioreactor.
- Stage 3 – Design Validation (6-12 months): Finalize the 100KL+ Bioreactor detailed design, provide firm pricing for Stage 4 and refine facility requirements to support first 100KL+ Bioreactor.
- Stage 4 – Proof of Concept (20-28 months): Construct and test first 100KL+ Bioreactor. First pricing for Stage 5.
- Stage 5 – Full Scale Production Capacity (24-36 months): Construct, install, and commission ≥ 2,000,000L of Bioreactor capacity (inclusive of seed train bioreactors).

ABEC will establish a multi-disciplinary team with dedicated resources as well as support resources to execute the design development. ABEC will work collaboratively with GM through regular reviews during each stage. Upon completion of each Stage (or earlier as GM and ABEC agree), ABEC will confirm pricing and GM will provide formal approval and funding to proceed to subsequent Stages. Some of these Stages

may occur in parallel in part or in whole depending on resource availability, schedule needs, and GM risk tolerance.

It is understood that as a development effort there are various technical and commercial unknowns. The time ranges shown above reflect the realities of design uncertainties as well as the potential for GM to drive project acceleration through more aggressive investment within a Stage and added risk through overlapping Stages.

Funding for the Bioreactor Design and Development effort will be designed to both compensate ABEC for the design, development, and execution efforts as they occur as well as to establish a significant ABEC equity stake in GM to strengthen the partnership and drive toward mutual success of the overall effort. ABEC will provide a price for each Stage that will align with the value ABEC would typically attribute to a partner-based product development and execution effort. In addition, GM will provide ABEC an equity stake at the initiation of each Stage of the project to ensure mutual success resulting from the development efforts. Stages 1 & 2 will be priced with this proposal. Stages 3, 4, and 5 will be priced as the results of the previous Stages provide insight to the needs in Stage 3 and beyond. Each stage will have a set equity stake (percent of ownership) associated with initiation.

GM will have the option to deny progression to the next Stage at any point in the project. The pricing as committed based on milestones in each Stage and equity as committed based on milestone for each Stage will still be due to ABEC but GM will not be obligated to move forward to the next Stage(s) if the success of the development efforts or the economics of the resulting product do not meet the needs of the business.

DEVELOPMENT ACTIVITIES AND DELIVERABLES

STAGE 1 – FEASIBILITY

During Stage 1, ABEC and GM will set goals for process performance and Cost of Goods Sold (COGS). ABEC will also perform initial feasibility work on Bioreactor design.

Specific Activities/Deliverables:
1. Analysis of current GM cell culture process
    a. Critical process variables, process constraints/windows, batch record reviews
    b. Possible testing in current equipment to determine limits
2. Initial scale-up analysis
3. Establishment of agitation/aeration requirements
4. COGS analysis
5. Investigation of Ultra Large-Scale instruments/components and materials of construction
6. Technical Risk Assessment
7. Future Stages Cost and Schedule Update

STAGE 2 – CONCEPTUAL DESIGN

During Stage 2, ABEC will develop a conceptual design for the Bioreactors and provide budgetary pricing for the equipment.

Specific Activities/Deliverables:
1. Initial Bioreactor P&ID's
2. Agitator and Aeration System Design
3. CIP and SIP Conceptual Design
4. Materials and Finishes specification development

5. Initial 2D Layout – Plan and Elevation
6. Initial CFD Modeling
7. Utility Requirements Analysis
8. Establish Ultra Large-Scale instrument and component supply chain
9. Preliminary automation system architecture
10. Fabrication/Construction/Installation Assessment
    a. ABEC factory versus field construction
    b. Indoor versus outdoor installation
    c. Modular concepts/shipping
11. Support Equipment definition and sizing
    a. Media Prep/Delivery, Reagent Additions, Harvest
12. Conceptual Design Risk Assessment
13. Budgetary pricing of Bioreactor
14. Future Stages Cost and Schedule Update

STAGE 3 – DESIGN VALIDATION

During Stage 3, ABEC will finalize the Bioreactor design and provide firm equipment pricing.

Specific Activities/Deliverables:
1. P&ID development to Issued for Design (IFD)
    a. Bioreactors
    b. Media, Additions, Harvest
2. IFD 2D Layout – Plan and Elevation
3. Prototyping/testing of components and/or subsystems as needed – Actual scope TBD based on Conceptual Design
4. Structural/Vibrational/Stress Finite Element Analysis (FEA) – Actual scope TBD based on Conceptual Design
5. Heat Transfer calculations
6. Additional CFD Modeling – Actual scope TBD based on Conceptual Design
7. Fabrication/Construction/Installation Plan
8. Preliminary Utility Requirements
9. Final Automation System Architecture
10. Electrical Architecture
11. Firm Pricing
12. Future Stages Cost and Schedule Update

STAGE 4 – PROOF OF CONCEPT

During Stage 4, ABEC will construct and test the first 100KL+ Bioreactor.

Specific Activities/Deliverables:
1. Equipment 3D Modeling
2. Material Procurement
3. Fabrication/Construction/Installation
4. Performance Testing
    a. Cleaning and Sterilization
    b. Mixing and Mass Transfer
    c. Process Control – Temperature, pressure, pH, dissolved oxygen
5. Stage 5 Cost and Schedule Update

STAGE 5 – FULL SCALE PRODUCTION CAPACITY

During Stage 5, ABEC will construct, install, and commission ≥ 2,000,000L of Bioreactor capacity.

Specific Activities/Deliverables:
1. Seed and Production Bioreactors
2. Support Equipment TBD
3. Factory Acceptance Testing (if applicable)
4. Shipping
5. Site Installation, Start Up, and Site Acceptance Testing
6. Ongoing Service and Support

PROJECT ORGANIZATION

ABEC will establish a dedicated, multi-disciplinary and cross-functional team to execute the project, leveraging experts from all ABEC functional groups. The functional organization for the project is shown below.



PRICING

| Item No. | Description | Price | Equity |
|---|---|---|---|
| 1 | Stage 1 of 100KL+ Bioreactor Design and Development | $800,000 | 0.5% |
| 2 | Stage 2 of 100KL+ Bioreactor Design and Development | $1,400,000 | 0.5% |
| 3 | Stage 3 of 100KL+ Bioreactor Design and Development | TBD (Budgetary = $3,000,00) | 1% |
| 4 | Stage 4 of 100KL+ Bioreactor Design and Development | TBD | 1% |
| 5 | Stage 5 of 100KL+ Bioreactor Design and Development | TBD | 2% |

PAYMENT SCHEDULE

*Payment Schedule for cash portion of consideration:*

Payment terms will be as follows for Stages 1 – 3:

50% upon receipt and acceptance of purchase order
50% upon 12 weeks after receipt and acceptance of purchase order

Payment terms will be as follows for Stages 4 & 5:

35% upon receipt and acceptance of Purchase Order
20% upon ABEC receipt of Vessel Heads and Shell materials
25% upon completion of Vessels
15% upon ready for Factory Acceptance Testing (FAT)
5% on completion of Site Acceptance Testing, not to exceed 120 days from ready for FAT date

Payment Terms are Net 30 days. All payments are net to ABEC – no taxes or duties are included.

*Payment Schedule for equity portion of consideration:*

Payment terms of equity shall be as follows:

GM shall issue the requisite number of shares of its common stock equal to the percentage ownership of GM set forth in the table above (determined as of the date of issuance on a fully diluted basis) upon the acceptance by GM and ABEC of the corresponding purchase order for each Stage for Stages 1 through 3 and, with respect to each of Stages 4 and 5, upon successful Factory acceptance testing. Such shares of common stock shall be duly authorized, validly issued, fully paid and non-assessable and free of all taxes, liens and charges created by GM.

Beginning at the time of the initial issuance of shares by GM to ABEC and until the parties agree otherwise, ABEC disposes of a majority of its holdings in GM or GM has a liquidation event, GM shall provide (i) quarterly financial summaries, (ii) a summary of Board meetings, excluding any confidential or sensitive information and (iii) hold steering group meetings with ABEC.

Additionally, beginning at the time of the initial issuance of shares by GM to ABEC and until the parties agree otherwise, ABEC disposes of a majority of its holdings in GM or GM has a liquidation event, the GM hereby covenants and agrees as follows:

1. GM will furnish the following reports to ABEC:

   1(a) within one hundred twenty (120) days after the end of each fiscal year of GM, a balance sheet of GM and its subsidiaries, if any, as at the end of such fiscal year, and statements of income, cash flows and stockholders' equity of GM and its subsidiaries, if any, for such fiscal year, prepared in accordance with generally accepted accounting principles consistently applied.

   1(b) within forty-five (45) days after the end of the first, second and third quarterly accounting periods in each fiscal year of GM, an unaudited balance sheet of GM and its subsidiaries, if any, as of the end of each such quarterly period, and statements of income and cash flows of GM and its subsidiaries, if any, for such period, prepared in accordance with generally accepted accounting principles consistently applied (except that such financial statements may be subject to normal year-end adjustments and may not contain all footnotes required by generally accepted accounting principles).

2. If GM registers any class of its common stock, such registration shall include the registration of the GM stock issued hereunder to ABEC. Further, as to ABEC's general rights as a Class A Common Stockholder of GM, GM cannot amend the rights of any class of its stockholders as set forth in its certificate of incorporation in a manner that affects any stockholders or group of stockholders within that class adversely without the approval of such group (per DGCL 242).

3. In the event that Eat Just, Inc. shall sell any of its common stock of GM, it shall notify ABEC in writing ("Notice"), and ABEC shall have the right to participate in such sale by Eat Just, Inc. of GM common stock by selling ABEC's pro rata portion in such sale on the same terms and conditions as specified in the Notice. To the extent that ABEC exercises such right of participation, the number of shares of GM Common Stock that Eat Just, Inc. may sell shall be correspondingly reduced. ABEC shall provide notice of its participation in such sale within 5 business days of receipt of the Notice.

4. ABEC shall have the right to participate in future financing rounds of GM.

[SIGNATURES PAGE FOLLOWS]

1 – 6

IN WITNESS WHEREOF, the Parties have caused this Statement of Work to be signed in duplicate originals by their duly authorized officer or representatives as of the SOW Effective Date.

**"GM"**                                              **"ABEC"**

**GOOD Meat, Inc.**                                   **ABEC, Inc.**

By: _____                          By: _____
Name: Josh Tetrick                                   Name: SCOTT PICKERING
Title: CEO                                            Title: CEO
Date: 8/9/2021                                        Date: 8/10/2021

*[Signature Page to Statement of Work to Bioreactor Development Agreement]*

# Exhibit C

**Expansion and Upgrade Costs**

**North Carolina**

| | | |
|---|---|---|
| Building Purchase | 2,450,000 | |
| Building design, engineering, fit-out | 3,900,000 | |
| Equipment | 1,448,000 | |
| **Total NC** | | 7,798,000 |

**Springfield Upgrades**

| | | |
|---|---|---|
| Building renovation | 801,909 | |
| Overhead doors | 191,835 | |
| Parking lots | 131,700 | |
| Vessel Mfg/Welding Equipment | 3,037,431 | |
| Manipulators - Vessel Rolls | 2,731,915 | |
| Cranes | 1,093,655 | |
| **Total Springfield** | | 7,988,445 |
| | | **15,786,445** |

# Exhibit D

Execution version

## AMENDMENTS TO PURCHASE ORDERS AND
## BIOREACTOR DEVELOPMENT AGREEMENT

AMENDMENTS TO PURCHASE ORDERS AND BIOREACTOR DEVELOPMENT (this "Amendment"), dated as of February 1, 2023, is by and between GOOD Meat, Inc., a Delaware corporation ("GM"), and ABEC, Inc., a Pennsylvania corporation ("ABEC").

RECITALS

WHEREAS, on August 10, 2021, GM and ABEC entered into that certain Bioreactor Development Agreement (the "Original Agreement", and the Original Agreement as amended hereby, the "Agreement"), relating to the development and manufacture of bioreactors for the purposes of cultivating meat;

WHEREAS, in connection with the Original Agreement, ABEC has performed services and is due payment from GM under the following invoices (copies of which are set forth hereto as Exhibit A): Invoice Nos. 24536, 24608, 24612, 24686 and 24733 (collectively, the "Past-Due Invoices");

WHEREAS, also in connection with the Original Agreement, ABEC has performed services and is due payment from GM under the following invoices (copies of which are set forth hereto as Exhibit B): Invoice Nos. 24752, 24768, 24769, 24771, 24772, 24773, and 24800 (collectively, the "Recent Past-Due Invoices");

WHEREAS, ABEC has also performed services under the following invoices in which payment shall be due and payable by GM to ABEC after the date hereof (copies of which are attached hereto as Exhibit C): Invoice Nos. 24817, 24818 and 24834 (collectively, the "Current Invoices");

WHEREAS, GM has advised ABEC that GM desires to modify the scope and certain other terms of the Purchase Orders and the Original Agreement; and

WHEREAS, ABEC and GM have agreed to amend and modify certain of the terms and conditions of the Purchase Orders and the Original Agreement as described below.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Open Invoices.

(a)    GM acknowledges, agrees and confirms that as of the date hereof, the aggregate amount of **$35,111,159.80** (the "Past-Due Amount") is currently due and payable under the terms of the Past-Due Invoices, without defense, counterclaim or offset of any kind. GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Past-Due Amount in full. GM covenants and agrees that it shall make full payment to ABEC on the Past-Due Invoices as follows:

| Payment Date: | Payment Amount: |
|---|---|
| February 5, 2023 | $2,111,159.80 |
| March 1, 2023 | $16,500,000.00 |
| April 1, 2023 | $16,500,000.00 |
| **Total:** | **$35,111,159.80** |

Such payments shall be applied to the Past-Due Invoices based on the date of the invoices, from oldest date to newest date (i.e., the February 5, 2023 payment shall be applied to invoice 24536 first, with the balance applied to invoice 24612, etc.).

Notwithstanding the foregoing, in the event that GM closes on a loan financing transaction at any time on or before March 31, 2023 that provides for available loan proceeds to GM in the principal amount of at least $50,000,000, GM shall pay the then outstanding amount of the Past-Due Invoices in full within ten (10) business days of the closing of such loan financing transaction.

(b)     GM acknowledges, agrees and confirms that as of the date hereof, the aggregate amount of **$2,604,352.60** (the "Recent Past-Due Amount") is currently due and payable under the terms of the Recent Past-Due Invoices, without defense, counterclaim or offset of any kind.  GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Recent Past-Due Amount in full.  GM covenants and agrees that it shall make full payment to ABEC of the Recent Past-Due Amount with respect to the Recent Past-Due Invoices on or before February 5, 2023.

(c)     GM acknowledges, agrees and confirms that as of the date hereof, the Current Invoices are outstanding but not yet due and payable. GM hereby acknowledges, agrees and confirms that the Current Invoices are (x) valid, proper and correct, and (y) payable by GM on the specified payment dates thereon without defense, counterclaim or offset of any kind.  GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Current Invoices in full.  GM shall promptly pay the Current Invoices on their stated payment dates.

(d)     In the event that GM fails to timely make any of the payments in full (i) with respect to the Past-Due Invoices on the specified payment dates set forth in the chart in Section 1(a) above, (ii) with respect to the Recent Past-Due Invoices, on or before February 5, 2023, (iii) with respect to the Current Invoices (as defined in the fourth "Whereas" paragraph in the recitals above) on the stated payments dates therefor plus a three day grace period, and/or (iv) with respect to any future invoices on the stated payment dates therefor plus a three day grace period: (x) all amounts with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices and any other then outstanding invoices shall automatically be immediately due and payable without any further action by any party, (y) notwithstanding the terms of Section 9.3 of the Agreement, ABEC may immediately terminate the Agreement (i.e., without the need of providing a thirty (30) days' prior notice of termination), and (z) ABEC may pursue any and all rights and remedies against GM, at law or in equity, with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices, any then outstanding invoices and the Agreement.

2

2.  Extension of Delivery Dates.

(a)  GM consents, agrees and acknowledges that the delivery dates under the following Purchase Orders shall be extended by twelve (12) months from the current delivery dates set forth on <u>Schedule 2(a)</u> attached hereto: Purchaser Order Nos. 187860, 191507, 191509, 193749, 194919, 196518 (each, a "**§2(a) POs**"). The parties agree that that the delivery dates for the §2(a) POs may be further adjusted as determined in good faith and agreed to by the respective project teams. The delivery dates are subject to further adjustment to the extent that there are any additional changes or modifications by GM after the date of order acceptance.

(b)  GM consents, agrees and acknowledges as follows:

(i)  With respect to Purchase Order 191507 (small support equipment), the stated milestones are hereby adjusted from (x) vessel complete plus four (4) months to vessel complete plus two (2) months and (y) from vessel complete plus eight (8) months to vessel complete plus four (4) months; and

(ii)  With respect to Purchase Orders 191509 and 193749 (the two sets of large bioreactors), the stated milestones are hereby adjusted from (x) vessel complete plus four (4) months to vessel head and shell materials arrived plus eight (8) months, and (y) from vessel complete plus eight (8) months to vessel head and shell materials arrived plus fourteen (14) months.

3.  Confirmation of Repricing of Purchase Orders. In recognition of this change in committed scope of work and the resulting impact to ABEC, GM and ABEC agree to an increase in the amount of the pricing of the following Purchase Orders as of the date of this Agreement as set forth below:

| Purchaser Order No. | Current Price | Supplemental #1 Cost Impact Price Increase: | Supplemental #2 Cost Impact Price Increase: | Supplemental #3 Cost Impact Price Increase: |
|---|---|---|---|---|
| 187860 | $45,376,182 | $2,347,864 | $2,347,864 | $2,347,864 |
| 191507 | $43,182,159 | $2,181,655 | $2,181,655 | $2,181,655 |
| 191509 | $50,730,213 | $2,536,511 | $2,536,511 | $2,536,511 |
| 193749 | $49,728,150 | $2,486,408 | $2,486,408 | $2,486,408 |
| 194919 | $86,465,250 | $4,824,538 | $4,824,538 | $4,824,538 |
| 196518 | $3,351,235 | $167,562 | $167,562 | $167,562 |

3

Each of the above Purchase Orders will be evidenced by updated Purchase Orders issued by GM with the revised prices set forth above (the "Updated POs") as follows: (i) Updated POs that shall include an amount equal to the "Supplemental #1 Cost Impact Price Increase" set forth in the chart above shall be issued by GM within ten (10) business days of the date of this Agreement; (ii) Updated POs that shall include an amount equal to the "Supplemental #2 Cost Impact Price Increase" set forth in the chart above shall be issued by GM on July 1, 2023 if GM fails to place in excess of $200m (in the aggregate) of accepted orders with ABEC on or before June 30, 2023; and (iii) Updated POs that shall include an amount equal to the "Supplemental #3 Cost Impact Price Increase" set forth in the chart above shall be issued by GM on October 1, 2023 if GM fails to place in excess of $200m (in the aggregate) of accepted orders with ABEC on or before September 30, 2023.

ABEC will send "catch-up" invoice off of the Updated POs delivered pursuant to "clause (i)" above in amounts equal to (x) the percentage of completion as of such date multiplied by (y) the "Amount of Increase" of such Updated POs in the chart above (the "Catch-up Invoices"). ABEC and GM agree that the Catch-up Invoices will be due and payable by GM on May 1, 2023.

    4.    Amendments. The Original Agreement is hereby amended as follows:

    (a)    Section 3 (Exclusivity). Section 3 ("Exclusivity") of the Original Agreement is hereby amended by adding the following sentence at the end thereof: "In addition, and notwithstanding anything to the contrary contained herein, at ABEC's election (acting in its sole discretion), the exclusivity provision in this Section 3 shall immediately and automatically terminate and be of no further force or effect in the event that (x) this Agreement is terminated by ABEC in accordance with Section 9.3 below and/or Section 1(d) of that certain Amendments to Purchase Orders and Bioreactor Development Agreement, dated as of January 21, 2023, by and been ABEC and GM, or (y) 2,000,000L or more of total production capacity (taking into account all previous orders by GM) is not ordered by GM and accepted by ABEC on or before September 30, 2023."

    (b)    Section 9.5. Section 9.5 of the Original Agreement is hereby amended and restated in full as follows: "9.5. [Intentionally deleted]."

    (c)    Appendix 1 (Statement of Work). Appendix 1 ("Statement of Work") of the Original Agreement is hereby amended as follows:

    (i)    On page 1-1 of Appendix 1, the bullet point descriptions of Stage 4 and Stage 5 are hereby amended and restated in full as follows:

"• Stage 4 – (timing as set forth in purchase orders): Construct and test first 100KL+ Bioreactor. First pricing for Stage 5.

• Stage 5 – Full Scale Production Capacity (timing as set forth in purchase orders): Construct, install, and commission ≥ 500,000L of Bioreactor capacity (inclusive of seed train bioreactors)."

    5.    GM Financial Statements. In accordance with item 1(a) on page 1-6 of Appendix 1, GM was obligated to provide ABEC with GM's audited financial statements for the year ending

4

December 31, 2021 (the "GM 2021 FY Financials") on or before March 1, 2022.  Further, in accordance with item 1(b) on page 1-6 of Appendix 1, GM was obligated to provide ABEC with GM's unaudited quarterly financial statements for the fiscal quarters ended September 30, 2021, March 31, 2022, June 30, 2022, and September 30, 2022 within forty-five (45) days after the end of the applicable quarterly period (collectively, the "Historical Quarterly Statements").  GM shall provide ABEC with the GM 2021 FY Financials on or before February 28, 2023. GM shall provide ABEC with the Historical Quarterly Statements on or before February 28, 2023.  GM shall timely deliver to ABEC (i) all future GM audited annual financial statements in accordance with item 1(a) on page 1-6 of Appendix, and (ii) all future FQ1, FQ2 and FQ3 unaudited quarterly financial statements in accordance with item 1(b) page 1-6 of Appendix.

6.    <u>Miscellaneous</u>.

(a)    This Amendment may be executed in multiple copies, each of which shall for all purposes constitute an agreement, binding on the parties, and each party hereby covenants and agrees to execute all duplicates or replacement counterparts of this Amendment as may be required.

(b)    This Amendment shall be governed by the substantive laws of the State of Delaware without reference to any conflicts of laws provisions. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

(c)    To the extent that there is any conflicts between the terms and provisions of any ABEC Purchase Order (as amended by this Amendment) and the Agreement, the terms and provision of the ABEC Purchase Orders (as amended by this Amendment) shall control.

(d)    Except as modified hereby, the Original Agreement remains in full force and effect and subject to all terms and conditions thereof, which are hereby ratified and confirmed in all respects.

*[Signature Page Follows]*

5

IN WITNESS WHEREOF, the parties have executed this AMENDMENTS TO PURCHASE ORDERS AND BIOREACTOR DEVELOPMENT AGREEMENT as of the date set forth above.

GOOD MEAT, Inc.

By: _____
Name: Josh Tetrick
Title: CEO

ABEC, Inc.

By: _____
Name: Scott Pickering
Title: CEO

<u>**Exhibit A**</u>

**Past-Due Invoices**

See attached.

Exhibit A

| Sub Item | Cust PO | End User / Project Description | Order Description | Invoice Purpose | Inv Date | Due Date | Paid Date | Inv Cur Code | Invoice Cur Amount | Paid | Sales Tax/VAT | Net Due (Inv Amt - Amt Paid) | Days Past Due | Partial payments made in entirety |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | |
|---|---|---|
| Credit Memo: | 24755-A | |
| Page: | 1 | |
| Date: | 12/29/2022 | |
| Currency: | USD | |

48476

B   Good Meat
I   300 Wind River Way
L   Alameda CA 94501
L   United States of America

T
O   Tax ID:

S   Good Meat
H   300 Wind River Way
I   Alameda CA 94501
P   United States of America

T
O

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013286 | 191509 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | | Crediting sales tax on invoice # 24612 | -559,705.08 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | |
| Sales Tax | -559,705.08 |
| Total | -559,705.08 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | | Credit Memo: | 24759-A |
| | | | Page: | 1 |
| | | | Date: | 12/29/2022 |
| | | | Currency: | USD |

48476

| B | Good Meat | S | Good Meat |
| I | 300 Wind River Way | H | 2000 Folsom St |
| L | Alameda CA 94501 | I | San Francisco CA 94110 |
| L | United States of America | P | United States of America |
| | | | |
| T | | T | |
| O | Tax ID: | O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|-------|----------------|----------|---------|--------|----------|-------|
| PJBS013300 | 191507 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|----------|-----------|-------------|----------------|
| 1 | | Crediting sales tax on invoice # 24686 | -701,038.36 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | |
|--------------|---|
| Sales Tax | -701,038.36 |

| Total | -701,038.36 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

| | |
|---|---|
| **Credit Memo:** | 24757-A |
| **Page:** | 1 |
| **Date:** | 12/29/2022 |
| **Currency:** | USD |

Tax    23-1988546

48476

| | |
|---|---|
| B I L L | Good Meat |
| | 300 Wind River Way |
| | Alameda CA 94501 |
| | United States of America |
| T O | Tax ID: |

| | |
|---|---|
| S H I P | Good Meat |
| | 1145 Atlantic Ave |
| | Alameda CA 94501 |
| | United States of America |
| T O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013450 | 193749 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | | Crediting sales tax on invoice #24608 | -1,336,444.03 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| **Sales Amount** | |
| Sales Tax | -1,336,444.03 |
| **Total** | -1,336,444.03 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Invoice Number:** 24686

**Page:** 1

**Date:** 12/12/2022

**Currency:** USD

Tax    23-1988546

48476

B I L L T O
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S H I P T O
Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013300 | 191507 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 011 | "Invoices are prorated equally based on quantity of systems on each order." | 8,127,981.00 |

88% Milestone Completion Proration
  (represents 15 of the 17 systems achieved this milestone)
2 x 500L Media Prep
2 x 3,000L Media Prep
2 x 6,400L Media Prep
4 x Small Media CIP
5 x Small BRx CIP

| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 701,038.36125 |
|---|---|---|---|

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 8,127,981.00 |
| Milestones Previously Invoiced: | 9,211,711.80 |
| Project To Date M/S Invoiced: | 17,339,692.80 |
| Net Invoice Amount: | 8,127,981.00 |

**Remit_To:**

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| **Sales Amount** | 8,127,981.00 |
| Sales Tax | 701,038.36 |
| **Total** | 8,829,019.36 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**   23-1988546

Invoice Number:     24686

Page: 2

Date:  12/12/2022

Currency:  USD

48476

| B | Good Meat | S | Good Meat |
|---|-----------|---|-----------|
| I | 300 Wind River Way | H | 2000 Folsom St |
| L | Alameda CA 94501 | I | San Francisco CA 94110 |
| L | United States of America | P | United States of America |
| T | | T | |
| O | Tax ID: | O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|-------|----------------|----------|---------|--------|----------|-------|
| PJBS013300 | 191507 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|----------|-----------|-------------|----------------|

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**abec**

| Invoice Number: | 24733 |
|---|---|
| Page: | 1 |
| Date: | 12/21/2022 |
| Currency: | USD |

Tax    23-1988546

48476

| | | | | |
|---|---|---|---|---|
| B | Good Meat | S | Good Meat |
| I | 300 Wind River Way | H | 2000 Folsom St |
| L | Alameda CA 94501 | I | San Francisco CA 94110 |
| L | United States of America | P | United States of America |
| T | | T | |
| O | Tax ID: | O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013135 | 187860 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|

"Invoices are prorated equally based on quantity of systems on each order"

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 25% Upon vessels completion | 20% Milestone Completion Proration<br>2x 500L Bioreactors<br>2x 2,000L Bioreactors | 1,598,563.25 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500          137,876.08031 | |
| 2 | 25% Upon vessels completion | 20% Milestone Completion Proration<br>2x 500L Bioreactors<br>2x 2,000L Bioreactors | 599,753.05 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500          51,728.70056 | |

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 2,198,316.30 |
| Milestones Previously Invoiced: | 24,181,479.30 |
| Project To Date M/S Invoiced: | 26,379,795.60 |
| Net Invoice Amount: | 2,198,316.30 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | 2,198,316.30 |
|---|---|
| Sales Tax | 189,604.78 |
| Total | 2,387,921.08 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax   23-1988546

| | |
|---|---|
| Invoice Number: | 24612 |
| Page: | 1 |
| Date: | 11/14/2022 |
| Currency: | USD |

48476

| | |
|---|---|
| B I L L   T O | Good Meat |
| | 300 Wind River Way |
| | Alameda CA 94501 |
| | United States of America |
| | Tax ID: |

| | |
|---|---|
| S H I P   T O | Good Meat |
| | 300 Wind River Way |
| | Alameda CA 94501 |
| | United States of America |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013286 | 191509 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 002 | 25% upon receipt of vesssel materials | 11,940,375.00 |

Tax Code:  94110      SAN FRANCISCO TOURISM      4.68750      559,705.07813
                      IMPROVEMENT DISTRI

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 11,940,375.00 |
| Milestones Previously Invoiced: | 7,164,225.00 |
| Project To Date M/S Invoiced: | 19,104,600.00 |
| Net Invoice Amount: | 11,940,375.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | 11,940,375.00 |
|---|---|
| Sales Tax | 559,705.08 |
| Total | 12,500,080.08 |

ABEC, Inc.
3998 Scheiden Circle
Bethlehem PA 18017
610 861 4666

Invoice Number:    24608

Page: 1

Date:  11/14/2022

Currency:  USD

Tax   23-1988546

48476

| B I L L | Good Meat | S H I P | Good Meat |
|---|---|---|---|
| | 300 Wind River Way | | 1145 Atlantic Ave |
| | Alameda CA 94501 | | Alameda CA 94501 |
| | United States of America | | United States of America |
| T O | Tax ID: | T O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013450 | 193749 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 002 | 25% upon receipt of vesssel materials | 12,432,037.50 |

Tax Code:  94501      ALAMEDA                    10.75000              1,336,444.03125

### Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 12,432,037.50 |
| Milestones Previously Invoiced: | 7,459,222.50 |
| Project To Date M/S Invoiced: | 19,891,260.00 |
| Net Invoice Amount: | 12,432,037.50 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 12,432,037.50 |
| Sales Tax | 1,336,444.03 |
| Total | 13,768,481.53 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

| Invoice Number: | 24536 |
|---|---|
| Page: | 1 |
| Date: | 10/18/2022 |
| Currency: | USD |

Tax    23-1988546

48476

| B I L L T O | Good Meat 300 Wind River Way Alameda CA 94501 United States of America Tax ID: | S H I P T O | Good Meat 2000 Folsom Street San Francisco CA 94110 United States of America |
|---|---|---|---|

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013219 | #191481 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 003 | 30% upon 10 months post acceptance of PO | 840,000.00 |

Tax Code:  94110    SAN FRANCISCO TOURISM         8.62500          72,450.00000
                     IMPROVEMENT DISTRI

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 840,000.00 |
| Milestones Previously Invoiced: | 1,960,000.00 |
| Project To Date M/S Invoiced: | 2,800,000.00 |
| Net Invoice Amount: | 840,000.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | 840,000.00 |
|---|---|
| Sales Tax | 72,450.00 |
| Total | 912,450.00 |

## Exhibit B

### Recent Past-Due Invoices

See attached.

**Good Meat - Recent Past Due Invoices**

Exhibit B

| Customer | Inv Num | Project/CO Num | Cust PO | Inv Date | Terms Code | Due Date | Payment Status | Net Due (Inv Amt - Amt Paid) |
|----------|---------|----------------|---------|----------|------------|----------|----------------|------------------------------|
| Good Meat | 24752 | PJBS013286 | 191509 | 12/29/2022 | N30 | 1/28/2023 | UnPaid | 1,184,485.20 |
| Good Meat | 24768 | PJBS013135 | 187860 | 12/30/2022 | N30 | 1/29/2023 | UnPaid | 628,136.40 |
| Good Meat | 24769 | PJBS013300 | 191507 | 12/30/2022 | N30 | 1/29/2023 | UnPaid | 368,062.00 |
| Good Meat | 24771 | PJBS013286 | 191509 | 12/30/2022 | N30 | 1/29/2023 | UnPaid | 80,186.00 |
| Good Meat | 24772 | PJBS013368 | 194919 | 12/30/2022 | N30 | 1/29/2023 | UnPaid | 196,405.40 |
| Good Meat | 24773 | PJBS013450 | 193749 | 12/30/2022 | N30 | 1/29/2023 | UnPaid | 80,677.60 |
| Good Meat | 24800 | PJBS013100 | 187859 | 12/31/2022 | N30 | 1/30/2023 | UnPaid | 66,400.00 |
| | | | | | | | Total Current | 2,604,352.60 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | |
|---|---|---|
| Invoice Number: | 24800 |
| Page: | 1 |
| Date: | 12/31/2022 |
| Currency: | USD |

48476

B
I   Good Meat
L   300 Wind River Way
L   Alameda CA 94501
    United States of America
T
O        Tax ID:

S
H   Good Meat
I   300 Wind River Way
P   Alameda CA 94501
    United States of America
T
O

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 91 | Pass through freight for Alameda | 66,400.00 |

Tax Code:  N/A                    0.00000              0.00000

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 66,400.00 |
| Milestones Previously Invoiced: | 15,910,590.53 |
| Project To Date M/S Invoiced: | 15,976,990.53 |
| Net Invoice Amount: | 66,400.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 66,400.00 |
| Sales Tax | 0.00 |
| Total | 66,400.00 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**  23-1988546

| | | | | |
|---|---|---|---|---|
| Invoice Number: | 24773 |
| Page: 1 |
| Date: | 12/30/2022 |
| Currency: | USD |

48476

B I L L T O

Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S H I P T O

Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013450 | 193749 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 009 | 15% catch up on DCL 6 - R&A of PO # 196518 | 30,254.10 |
| Tax Code: | | | 0.00000 |
| 2 | 010 | 25% catch up on DCL 6 - vessel material - PO# 196518 | 50,423.50 |
| Tax Code: | | | 0.00000 |

| | |
|---|---|
| Project Invoice Summary: | |
| Milestones On Current Invoice: | 80,677.60 |
| Milestones Previously Invoiced: | 19,891,260.00 |
| Project To Date M/S Invoiced: | 19,971,937.60 |
| Net Invoice Amount: | 80,677.60 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 80,677.60 |
| Sales Tax | 0.00 |
| Total | 80,677.60 |

ABEC, Inc.
3998 Scheiden Circle
Bethlehem PA 18017
610 861 4666

abec

| Invoice Number: | 24772 |
| Page: | 1 |
| Date: | 12/30/2022 |
| Currency: | USD |

**Tax**  23-1988546

48476

| | | | |
|---|---|---|---|
| B | Good Meat | S | Good Meat |
| I | 300 Wind River Way | H | 4000 Friendship Road |
| L | Alameda CA 94501 | I | Apex NC 27502 |
| L | United States of America | P | United States of America |
| T | | T | |
| O | Tax ID: | O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013368 | 194919 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 008 | 20% catch up on DCL 6 - R&A of PO # 196518 | 196,405.40 |

**Tax Code:** N/A                    0.00000            0.00000

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 196,405.40 |
| Milestones Previously Invoiced: | 17,290,050.00 |
| Project To Date M/S Invoiced: | 17,486,455.40 |
| Net Invoice Amount: | 196,405.40 |

**Remit_To:**

ABEC, Inc.
3998 Scheiden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | 196,405.40 |
|---|---|
| Sales Tax | 0.00 |
| **Total** | 196,405.40 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | Invoice Number: | 24769 |
|---|---|---|---|
| | | Page: | 1 |
| | | Date: | 12/30/2022 |
| | | Currency: | USD |

48476

B I L L
T O

Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S H I P
T O

Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013300 | 191507 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 015 | 20% catch up on DCL 6 - R&A of PO # 196518 | 184,031.00 |
| Tax Code: | | 0.00000 | |
| 2 | 016 | 20% catch up on DCL 6 - Vessel materials - PO#196518 | 184,031.00 |
| Tax Code: | | 0.00000 | |

### Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 368,062.00 |
| Milestones Previously Invoiced: | 17,339,692.80 |
| Project To Date M/S Invoiced: | 17,707,754.80 |
| Net Invoice Amount: | 368,062.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 368,062.00 |
| Sales Tax | 0.00 |
| Total | 368,062.00 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

| Invoice Number: | 24768 |
|---|---|
| Page: 1 | |
| Date: | 12/30/2022 |
| Currency: | USD |

Tax    23-1988546

48476

B   Good Meat
I   300 Wind River Way
L   Alameda CA 94501
L   United States of America

T
O      Tax ID:

S   Good Meat
H   4000 Friendship Road
I   Apex NC 27502
P   United States of America

T
O

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013135 | 187860 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | | Extended Price |
|---|---|---|---|---|
| 1 | 29 | 35% catch up on DCL # 6 - PO# 196518<br>35% Upon receipt of PO | | 366,412.90 |
| Tax Code: | | | 0.00000 | |
| 2 | 30 | 20% catch up on DCL 6 - Vessel material | | 209,378.80 |
| Tax Code: | | | 0.00000 | |
| 3 | 31 | 25% DCL 6 - Vessel completion - 4 systems | | 52,344.70 |
| Tax Code: | | | 0.00000 | |

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 628,136.40 |
| Milestones Previously Invoiced: | 26,379,795.60 |
| Project To Date M/S Invoiced: | 27,007,932.00 |
| Net Invoice Amount: | 628,136.40 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| Sales Amount | 628,136.40 |
|---|---|
| Sales Tax | 0.00 |
| **Total** | **628,136.40** |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**   23-1988546

Invoice Number:    24768

Page: 2

Date:  12/30/2022

Currency:  USD

48476

| B | Good Meat |
| I | 300 Wind River Way |
| L | Alameda CA 94501 |
| L | United States of America |

| T | |
| O | Tax ID: |

| S | Good Meat |
| H | 4000 Friendship Road |
| I | Apex NC 27502 |
| P | United States of America |

| T | |
| O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|-------|----------------|----------|---------|--------|----------|-------|
| PJBS013135 | 187860 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|----------|-----------|-------------|----------------|

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**   23-1988546

Invoice Number:   24771

Page: 1

Date:  12/30/2022

Currency:  USD

48476

| B I L L | Good Meat | S H I P | Good Meat |
|---|---|---|---|
| | 300 Wind River Way | | 4000 Friendship Road |
| | Alameda CA 94501 | | Apex NC 27502 |
| | United States of America | | United States of America |
| T O | Tax ID: | T O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013286 | 191509 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 015 | 15% catch up on DCL 6 - R&A of PO # 196518 | 30,069.75 |
| Tax Code: | | 0.00000 | |
| 2 | 016 | 25% catch up on DCL 6 - Vessel materials - PO# 196518 | 50,116.25 |
| Tax Code: | | 0.00000 | |

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 80,186.00 |
| Milestones Previously Invoiced: | 20,289,085.20 |
| Project To Date M/S Invoiced: | 20,369,271.20 |
| Net Invoice Amount: | 80,186.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| **Sales Amount** | 80,186.00 |
| Sales Tax | 0.00 |
| **Total** | 80,186.00 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| Invoice Number: | 24752 |
| --- | --- |
| Page: | 1 |
| Date: | 12/29/2022 |
| Currency: | USD |

48476

B
I
L
L

T
O

Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S
H
I
P

T
O

Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
| --- | --- | --- | --- | --- | --- | --- |
| PJBS013286 | 191509 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
| --- | --- | --- | --- |
| 1 | 007 | DCL 1 - 15% catch up upon receipt and acceptance of PO | 444,181.95 |
| Tax Code: | | 0.00000 | |
| 2 | 008 | DCL 1- 25% catch up upon receipt of vessel materials | 740,303.25 |
| Tax Code: | | 0.00000 | |

### Project Invoice Summary:

| | |
| --- | --- |
| Milestones On Current Invoice: | 1,184,485.20 |
| Milestones Previously Invoiced: | 19,104,600.00 |
| Project To Date M/S Invoiced: | 20,289,085.20 |
| Net Invoice Amount: | 1,184,485.20 |

**Remit_To:**

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
| --- | --- |
| **Sales Amount** | 1,184,485.20 |
| Sales Tax | 0.00 |
| **Total** | 1,184,485.20 |

## Exhibit C

**Current Invoices**

See attached.

**Good Meat - Current Invoices**
Exhibit C

| Customer | Inv Num | Project/CO Num | Cust PO | Inv Date | Terms Code | Due Date | Payment Status | Net Due (Inv Amt - Amt Paid) |
|---|---|---|---|---|---|---|---|---|
| Good Meat | 24817 | PJBS013100 | 187859 | 1/10/2023 | N30 | 2/9/2023 | UnPaid | 460,037.74 |
| Good Meat | 24818 | PJBS013100 | 187859 | 1/10/2023 | N30 | 2/9/2023 | UnPaid | (122,945.03) |
| Good Meat | 24834 | PJBS013300 | 191507 | 1/17/2023 | N30 | 2/16/2023 | UnPaid | 1,083,730.80 |
| | | | | | | | Total Current | 1,420,823.51 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**    23-1988546

| | | |
|---|---|---|
| **Invoice Number:** | | 24834 |
| **Page:** | | 1 |
| **Date:** | | 1/17/2023 |
| **Currency:** | | USD |

48476

| | | | | |
|---|---|---|---|---|
| B | Good Meat | | S | Good Meat |
| I | 300 Wind River Way | | H | 4000 Friendship Road |
| L | Alameda CA 94501 | | I | Apex NC 27502 |
| L | United States of America | | P | United States of America |
| T | | | T | |
| O | Tax ID: | | O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013300 | 191507 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|

"Invoices are prorated equally based on quantity of systems on each order."    1,083,730.80

20% R&A of vessel material

12% Milestone Completion Proration (2 of 17 complete)

2 x 25,000L Media Prep

**Tax Code:**  N/A

| | |
|---|---|
| **Project Invoice Summary:** | |
| **Milestones On Current Invoice:** | 1,083,730.80 |
| **Milestones Previously Invoiced:** | 17,707,754.80 |
| **Project To Date M/S Invoiced:** | 18,791,485.60 |
| **Net Invoice Amount:** | 1,083,730.80 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| **Sales Amount** | 1,083,730.80 |
| **Sales Tax** | 0.00 |
| **Total** | 1,083,730.80 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

| Invoice Number: | 24817 |
|---|---|
| Page: | 1 |
| Date: | 1/10/2023 |
| Currency: | USD |

Tax   23-1988546

48476

**B I L L   T O**
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

**S H I P   T O**
Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | |

| Line/Rel | | Milestone | Description | | Extended Price |
|---|---|---|---|---|---|
| 1 | 129 | | DCL# 15 - 35% Catch-up upon receipt and acceptance of PO | | 156,030.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 13,457.58750 | |
| 2 | 130 | | DCL# 15 - 10% Catch-up vessel material (A) | | 44,580.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 3,845.02500 | |
| 3 | 131 | | DCL# 15 - 10% Catch-up vessel material (S) | | 44,580.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 3,845.02500 | |
| 4 | 132 | | DCL# 15 - 12.5% Catch-up vessel completion (A) | | 55,725.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 4,806.28125 | |
| 5 | 133 | | DCL# 15 - 12.5% Catch-up vessel completion (S) | | 55,725.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 4,806.28125 | |
| 6 | 134 | | DCL# 15 - 7.5% Catch-up ready for FAT (A) | | 33,435.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 2,883.76875 | |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

| | |
|---|---|
| Invoice Number: | 24817 |
| Page: | 2 |
| Date: | 1/10/2023 |
| Currency: | USD |

Tax    23-1988546

48476

| B I L L  T O | | S H I P  T O | |
|---|---|---|---|
| Good Meat | | Good Meat | |
| 300 Wind River Way | | 2000 Folsom St | |
| Alameda CA 94501 | | San Francisco CA 94110 | |
| United States of America | | United States of America | |
| Tax ID: | | | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 7 | 135 | DCL# 15 - 7.5% Catch-up ready for FAT (S) | 33,435.00 |

Tax Code: 94110    SAN FRANCISCO TOURISM
IMPROVEMENT DISTRI    8.62500    2,883.76875

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 423,510.00 |
| Milestones Previously Invoiced: | 15,976,990.53 |
| Project To Date M/S Invoiced: | 16,400,500.53 |
| Net Invoice Amount: | 423,510.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 423,510.00 |
| Sales Tax | 36,527.74 |
| Total | 460,037.74 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | |
|---|---|---|
| Invoice Number: | 24818 |
| Page: | 1 |
| Date: | 1/10/2023 |
| Currency: | USD |

48476

| | | | | |
|---|---|---|---|---|
| B<br>I<br>L<br>L<br><br>T<br>O | Good Meat<br>300 Wind River Way<br>Alameda CA 94501<br>United States of America<br><br>Tax ID: | | S<br>H<br>I<br>P<br><br>T<br>O | Good Meat<br>2000 Folsom St<br>San Francisco CA 94110<br>United States of America |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 138 | DCL# 16 - 35% Catch-up upon receipt and acceptance of PO | -41,699.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -3,596.53875 |
| 2 | 139 | DCL# 16 - 10% Catch-up vessel material (A) | -11,914.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -1,027.58250 |
| 3 | 140 | DCL# 16 - 10% Catch-up vessel material (S) | -11,914.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -1,027.58250 |
| 4 | 141 | DCL# 16 - 12.5% Catch-up vessel completion (A) | -14,892.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -1,284.47813 |
| 5 | 142 | DCL# 16 - 12.5% Catch-up vessel completion (S) | -14,892.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -1,284.47813 |
| 6 | 143 | DCL# 16 - 7.5% Catch-up ready for FAT (A) | -8,935.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -770.68688 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

Invoice Number:    24818

Page: 2

Date:  1/10/2023

Currency:  USD

**Tax**    23-1988546

48476

| B I L L | Good Meat | S H I P | Good Meat |
|---|---|---|---|
| | 300 Wind River Way | | 2000 Folsom St |
| | Alameda CA 94501 | | San Francisco CA 94110 |
| | United States of America | | United States of America |
| T O | Tax ID: | T O | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 7 | 144 | DCL# 16 - 7.5% Catch-up ready for FAT (S) | -8,935.50 |

Tax Code: 94110     SAN FRANCISCO TOURISM          8.62500              -770.68688
                     IMPROVEMENT DISTRI

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | -113,183.00 |
| Milestones Previously Invoiced: | 16,400,500.53 |
| Project To Date M/S Invoiced: | 16,287,317.53 |
| Net Invoice Amount: | -113,183.00 |

Remit_To:

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | -113,183.00 |
| Sales Tax | -9,762.03 |
| Total | -122,945.03 |

## Schedule 2(a)

### ABEC GOOD Meat Schedule Summary _ Rev6

See attached.











# Exhibit E

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax** 23-1988546

| | |
|---|---|
| Invoice Number: | 24845 |
| Page: | 1 |
| Date: | 1/25/2023 |
| Currency: | USD |

48476

B
I  Good Meat
L  300 Wind River Way
L  Alameda CA 94501
   United States of America
T
O  **Tax ID:**

S
H  Good Meat
I  2000 Folsom St
P  San Francisco CA 94110
   United States of America
T
O

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | | | Extended Price |
|---|---|---|---|---|---|
| 1 | 102 | DCL 14 - 2.5% after SAT NTE 110d FAT(A) PO# 187859 | | | -3,099.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -267.28875 | |
| 2 | 116 | 2.5% after SAT NTE 110d FAT(S) | | | 368,119.92 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 31,750.34310 | |
| 3 | 117 | Scope change from Proposal- 2.5%(S) | | | 35,404.81 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 3,053.66486 | |
| 4 | 118 | DCL 1 - 2.5% after SAT NTE 110d FAT(S) | | | 14,955.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 1,289.86875 | |
| 5 | 119 | DCL 2 - 2.5% after SAT NTE 110d FAT(S) | | | 14,955.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 1,289.86875 | |
| 6 | 120 | DCL 13 - 2.5% after SAT NTE 110d FAT(S) | | | 11,307.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 975.22875 | |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Invoice Number:    24845

Page: 2

Date:  1/25/2023

Currency:  USD

Tax    23-1988546

48476

B  Good Meat
I  300 Wind River Way
L  Alameda CA 94501
L  United States of America

T
O    Tax ID:

S  Good Meat
H  2000 Folsom St
I  San Francisco CA 94110
P  United States of America

T
O

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |
| **Line/Rel** | **Milestone** | | **Description** | | | **Extended Price** |
| 7 | 121 | | DCL 5 - 2.5% after SAT NTE 110d FAT(S) | | | 3,570.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | 307.91250 | |
| 8 | 122 | | DCL 10 - 2.5% after SAT NTE 110d FAT(S) | | | 1,228.50 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | 105.95813 | |
| 9 | 123 | | DCL 3 - 2.5% after SAT NTE 110d FAT(S) | | | 1,049.50 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | 90.51938 | |
| 10 | 124 | | Warranty- 2.5%(S) | | | 410.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | 35.36250 | |
| 11 | 125 | | DCL 11 - 2.5% after SAT NTE 110d FAT(S) | | | 246.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | 21.21750 | |
| 12 | 126 | | DCL 14 - 2.5% after SAT NTE 110d FAT(S) | | | -3,099.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | | -267.28875 | |
| 13 | 127 | | DCL 12 - 2.5% after SAT NTE 110d FAT(S) | | | -4,550.00 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| | | |
|---|---|---|
| Invoice Number: | 24845 |
| Page: | 3 |
| Date: | 1/25/2023 |
| Currency: | USD |

48476

B
I
L
L

T
O

Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S
H
I
P

T
O

Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | | Extended Price |
|---|---|---|---|---|
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -392.43750 | |
| 14 | 128 | DCL 7 - 2.5% after SAT NTE 110d FAT(S) | | -24,897.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -2,147.36625 | |
| 15 | 136 | DCL 15 - 2.5% after SAT NTE 110d FAT(A) | | 11,145.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 961.25625 | |
| 16 | 137 | DCL 15 - 2.5% after SAT NTE 110d FAT(S) | | 11,145.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 961.25625 | |
| 17 | 14 | 2.5% after SAT NTE 110d FAT(A) | | 368,119.92 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 31,750.34310 | |
| 27 | 73 | Warranty- 2.5%(A) PO# 187859 | | 410.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 35.36250 | |
| 18 | 145 | DCL 16 - 2.5% after SAT NTE 110d FAT(A) | | -2,978.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -256.89563 | |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

abec

| Invoice Number: | 24845 |
| Page: | 4 |
| Date: | 1/25/2023 |
| Currency: | USD |

Tax    23-1988546

48476

B
I
L
L

T
O

Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S
H
I
P

T
O

Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |
| Line/Rel | Milestone | | Description | | | Extended Price |

| Line/Rel | Milestone | Description | | Extended Price |
|---|---|---|---|---|
| 19 | 146 | DCL 16 - 2.5% after SAT NTE 110d FAT(S) | | -2,978.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -256.89563 | |
| 20 | 20 | DCL 1 - 2.5% after SAT NTE 110d FAT(A) | | 14,955.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 1,289.86875 | |
| 21 | 26 | DCL 2 - 2.5% after SAT NTE 110d FAT(A) | | 14,955.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 1,289.86875 | |
| 22 | 32 | DCL 3 - 2.5% after SAT NTE 110d FAT(A) | | 1,049.50 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 90.51938 | |
| 23 | 38 | DCL 5 - 2.5% after SAT NTE 110d FAT(A) | | 3,570.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 307.91250 | |
| 24 | 44 | DCL 7 - 2.5% after SAT NTE 110d FAT(A) | | -24,897.00 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -2,147.36625 | |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax    23-1988546

| Invoice Number: | 24845 |
| --- | --- |
| Page: | 5 |
| Date: | 1/25/2023 |
| Currency: | USD |

48476

B I L L T O
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

S H I P T O
Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
| --- | --- | --- | --- | --- | --- | --- |
| PJBS013100 | 187859 | | | | | Net 30 Days |
| **Line/Rel** | **Milestone** | | | **Description** | | **Extended Price** |

| Line/Rel | Milestone | Description | | Extended Price |
| --- | --- | --- | --- | --- |
| 25 | 67 | DCL 11 - 2.5% after SAT NTE 110d FAT(A) PO# 187859 | | 246.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 21.21750 |
| 26 | 70 | DCL 12 - 2.5% after SAT NTE 110d FAT(A) PO# 187859 | | -4,550.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | -392.43750 |
| 28 | 76 | Scope change from Proposal- 2.5%(A) 2.5% after SAT NTE 110 days FAT | | 35,404.82 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 3,053.66573 |
| 29 | 79 | DCL 10 - 2.5% after SAT NTE 110d FAT(A) PO# 190697 | | 1,228.50 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 105.95813 |
| 30 | 90 | DCL 13 - 2.5% after SAT NTE 110d FAT(A) PO# 187859 | | 11,307.00 |
| Tax Code: 94110 | | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 975.22875 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

**Tax**    23-1988546

| | |
|---|---|
| Invoice Number: | 24845 |
| Page: | 6 |
| Date: | 1/25/2023 |
| Currency: | USD |

48476

**B I L L   T O**
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

**S H I P   T O**
Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBS013100 | 187859 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|

**Project Invoice Summary:**

| | |
|---|---|
| Milestones On Current Invoice: | 853,732.47 |
| Milestones Previously Invoiced: | 16,287,317.53 |
| Project To Date M/S Invoiced: | 17,141,050.00 |
| Net Invoice Amount: | 853,732.47 |

**Remit_To:**

ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210000778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 853,732.47 |
| Sales Tax | 73,634.43 |
| Total | 927,366.90 |

# Exhibit F

| Inv Num | Cust PO | Project Description | Invoice Date | Original Due Date | Revised Due Date | Amount Due |
|---|---|---|---|---|---|---|
| 24608 | 193749 | 250,000L Bioreactor (T2A) | 11/14/2022 | 12/14/2022 | 3/1/2023 | 12,432,037.50 |
| 24612 | 191509 | 250,000L Bioreactor (T1A) | 11/14/2022 | 12/14/2022 | 3/1/2023 | 4,067,962.50 |
| 24612 - balance per Amendment dated February 1, 2023 | | | | | 4/1/2023 | 7,872,412.50 |
| 24686 | 191507 | 500L Media Prep (T1-T2) | 12/12/2022 | 1/11/2023 | 4/1/2023 | 6,429,271.20 |
| 24733 | 187860 | 500L Bioreactor (T1) | 12/21/2022 | 1/20/2023 | 4/1/2023 | 2,198,316.30 |
| 24845 | 187859 | 1,000L Media Prep, Just | 1/25/2023 | 2/24/2023 | 2/24/2023 | 927,366.90 |
| 24874 | 194919 | 3,000L Nutrient Prep (T1-T2) | 2/2/2023 | 3/4/2023 | 3/4/2023 | 8,326,883.52 |
| 24879 | 196174 | SERVICE - PURCHASED PARTS | 2/3/2023 | 3/5/2023 | 3/5/2023 | 7,534.24 |
| 24880 | 196174 | SERVICE - PURCHASED PARTS | 2/3/2023 | 3/5/2023 | 3/5/2023 | 25,621.82 |
| 24904 | 187860 | 500L Bioreactor (T1) | 2/10/2023 | 3/12/2023 | 3/12/2023 | 3,375,991.51 |
| 24931 | 194919 | DCL 14 Stoppage of Work (Large Support) | 2/22/2023 | 3/24/2023 | 3/24/2023 | 12,500.00 |
| 24932 | 191507 | DCL 14 Stoppage of Work (Small Support) | 2/22/2023 | 3/24/2023 | 3/24/2023 | 62,500.00 |
| 24940 | 187860 | 500L Bioreactor (T1) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 1,584,808.20 |
| 24941 | 187860 | 500L Bioreactor (T1) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 35,332.88 |
| 24942 | 191509 | 250,000L Bioreactor (T1A) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 1,014,604.40 |
| 24943 | 191509 | 250,000L Bioreactor (T1A) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 4,009.20 |
| 24944 | 191507 | 500L Media Prep (T1-T2) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 872,662.00 |
| 24945 | 191507 | 500L Media Prep (T1-T2) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 18,403.20 |
| 24946 | 194919 | 3,000L Nutrient Prep (T1-T2) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 1,424,387.41 |
| 24947 | 194919 | 3,000L Nutrient Prep (T1-T2) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 14,496.49 |
| 24948 | 193749 | 250,000L Bioreactor (T2A) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 994,563.20 |
| 24949 | 193749 | 250,000L Bioreactor (T2A) | 2/23/2023 | 3/25/2023 | 5/1/2023 | 4,034.00 |
| 24954 | 191507 | DCL 14 Stoppage of Work (Small Support) | 2/27/2023 | 3/29/2023 | 3/29/2023 | 62,500.00 |
| 24956 | 194919 | DCL 14 Stoppage of Work (Large Support) | 2/27/2023 | 3/29/2023 | 3/29/2023 | 12,500.00 |
| 24969 | 187860 | 500L Bioreactor (T1) | 3/2/2023 | 4/1/2023 | 4/1/2023 | 2,963,339.31 |
| 24970 | 194919 | 3,000L Nutrient Prep (T1-T2) | 3/2/2023 | 4/1/2023 | 4/1/2023 | 4,395,519.80 |
| 24971 | 191507 | 500L Media Prep (T1-T2) | 3/2/2023 | 4/1/2023 | 4/1/2023 | 1,447,246.38 |
| 24973 | 187859 | 1,000L Media Prep, Just | 3/2/2023 | 4/1/2023 | 4/1/2023 | 30,459.43 |
| 24976 | 187860 | 500L Bioreactor (T1) | 3/3/2023 | 4/2/2023 | 4/2/2023 | 2,111,958.10 |
| 24977 | 191507 | 500L Media Prep (T1-T2) | 3/3/2023 | 4/2/2023 | 4/2/2023 | (1,037,346.32) |
| 24978 | 191509 | 250,000L Bioreactor (T1A) | 3/3/2023 | 4/2/2023 | 4/2/2023 | 3,000.00 |
| 24979 | 194919 | 3,000L Nutrient Prep (T1-T2) | 3/3/2023 | 4/2/2023 | 4/2/2023 | 719,356.12 |
| 24983 | 194919 | DCL 14 Stoppage of Work (Large Support) | 3/6/2023 | 4/5/2023 | 4/5/2023 | 12,500.00 |
| 24984 | | DCL 19a Stoppage of Work (Small BRxs) | 3/6/2023 | 4/5/2023 | 4/5/2023 | 90,000.00 |
| 24989 | 196518 | DCL 19c Stop g Work Delta V | 3/6/2023 | 4/5/2023 | 4/5/2023 | 6,000.00 |
| 24990 | 191507 | DCL 14 Stoppage of Work (Small Support) | 3/6/2023 | 4/5/2023 | 4/5/2023 | 62,500.00 |
| 24991 | 191507 | DCL 19b Stoppage of Work (Small Support) | 3/6/2023 | 4/5/2023 | 4/5/2023 | 64,000.00 |

|  |  |  |  | Total | 62,649,231.79 |

# Exhibit G

Interest on Past Due, Unpaid Eat Just/Good Meat Invoices as of March 7, 2023

**Interest Prior to Amendment dated February 1, 2023**

| Invoice Number | Cust PO | Due Date | Amendment Date | Amount Due | Days Past Due | Interest |
|---|---|---|---|---|---|---|
| 24608 | 193749 | 12/14/2022 | 2/1/2023 | 12,432,037.50 | 49 | 133,516.68 |
| 24612 | 191509 | 12/14/2022 | 2/1/2023 | 11,940,375.00 | 49 | 128,236.36 |
| 24686 | 191507 | 1/11/2023 | 2/1/2023 | 6,429,271.20 | 21 | 29,592.26 |
| 24733 | 187860 | 1/20/2023 | 2/1/2023 | 2,198,316.30 | 12 | 5,781.87 |
| | | | Total Interest Prior to Amendment dated February 1, 2023 | | | 297,127.17 |

**Interest Post Amendment dated February 1, 2023**

| Invoice Number | Cust PO | Revised Due Date | As of March 7, 2023 | Amount Due | Days Past Due | Interest |
|---|---|---|---|---|---|---|
| 24608 | 193749 | 3/1/2023 | 3/7/2023 | 12,432,037.50 | 6 | 16,348.98 |
| 24612 | 191509 | 3/1/2023 | 3/7/2023 | 4,067,962.50 | 6 | 5,349.65 |
| 24612 - balance | | 4/1/2023 | | 7,872,412.50 | | - |
| 24686 | 191507 | 4/1/2023 | | 6,429,271.20 | | - |
| 24733 | 187860 | 4/1/2023 | | 2,198,316.30 | | - |
| | | | Total Interest Post Amendment dated February 1, 2023 | | | 21,698.63 |
| | | | Total Interest on Past Due, Unpaid Invoices | | | 318,825.80 |

Interest on Eat Just/Good Meat Late Payments

| Invoice Number | Due date | Paid date | Amount Due | Days Late | Interest |
|---|---|---|---|---|---|
| 24818 | 2/9/2023 | 2/13/2023 | (122,945.03) | 4 | (107.79) |
| 24817 | 2/9/2023 | 2/13/2023 | 460,037.74 | 4 | 403.32 |
| 24800 | 1/30/2023 | 2/7/2023 | 66,400.00 | 8 | 116.43 |
| 24773 | 1/29/2023 | 2/7/2023 | 80,677.60 | 9 | 159.14 |
| 24772 | 1/29/2023 | 2/7/2023 | 196,405.40 | 9 | 387.43 |
| 24771 | 1/29/2023 | 2/7/2023 | 80,186.00 | 9 | 158.18 |
| 24769 | 1/29/2023 | 2/7/2023 | 368,062.00 | 9 | 726.04 |
| 24768 | 1/29/2023 | 2/7/2023 | 628,136.40 | 9 | 1,239.06 |
| 24752 | 1/28/2023 | 2/7/2023 | 1,184,485.20 | 10 | 2,596.13 |
| 24431 | 10/14/2022 | 10/31/2022 | 34,643.43 | 17 | 129.08 |
| 24400 | 10/7/2022 | 10/31/2022 | 1,391,129.93 | 24 | 7,317.72 |
| 24374 | 9/29/2022 | 10/31/2022 | 2,318,549.88 | 32 | 16,261.61 |
| 24252 | 8/14/2022 | 10/31/2022 | 1,391,129.92 | 78 | 23,782.60 |
| 24206 | 7/21/2022 | 10/31/2022 | 8,261,088.92 | 102 | 184,686.26 |
| 24133 | 6/26/2022 | 10/31/2022 | 240,730.38 | 127 | 6,700.88 |
| 24116 | 6/16/2022 | 6/21/2022 | 2,229,483.33 | 5 | 2,443.27 |
| 24107 | 6/10/2022 | 6/15/2022 | 4,775,842.16 | 5 | 5,233.80 |
| 24011 | 4/24/2022 | 4/26/2022 | 1,783,586.65 | 2 | 781.85 |
| 24010 | 4/24/2022 | 4/26/2022 | 24,020.25 | 2 | 10.53 |
| 24009 | 4/24/2022 | 4/26/2022 | 616,115.41 | 2 | 270.08 |
| 23754 | 1/21/2022 | 2/3/2022 | 7,500,048.05 | 13 | 21,370.00 |
| 23753 | 1/21/2022 | 2/3/2022 | 9,643,510.79 | 13 | 27,477.40 |
| 23735 | 1/15/2022 | 1/26/2022 | 4,560,372.25 | 11 | 10,994.87 |
| | | | | Total | 313,137.90 |

# Exhibit H



**KLEHR HARRISON
HARVEY BRANZBURG**LLP

Michael P. Rittinger
**Direct Dial:** 215-569-3399
**Email:** MRittinger@klehr.com

March 2, 2023

*Via Federal Express & Email (notices@ju.st)*

GOOD MEAT, INC.
Attn: Legal
2000 Folsom Street
San Francisco, CA 94010

GOOD MEAT, INC.
Attn: Legal
300 Wind River Way
Alameda, CA 94501

Re:    **Notice of Default**

Dear Good Meat, Inc. Legal Department:

This firm represents ABEC, Inc. ("ABEC"). Reference is made to that certain Bioreactor Development Agreement, dated as of August 10, 2021, by and between GOOD MEAT, Inc. ("GM") and ABEC (the "Original Agreement"), as amended by that certain Amendments to Purchase Orders and Bioreactor Development Agreement, dated as of February 1, 2023 (the "First Amendment", and together with the Original Agreement, the "Agreement").

This will confirm that GM is in breach of the Agreement for failing to timely pay the following amounts to ABEC (collectively, the "Payment Defaults"):

| Invoice / Agreement § | Amount | Due Date |
|---|---|---|
| Invoice #24845 | $927,366.90 | February 24, 2023 |
| First Amendment §1(a) | $16,500,000.00 | March 1, 2023 |

Further, GM is in default of the Agreement for (x) failing to deliver updated POs to ABEC as required under Section 3 of the First Amendment, and (y) failing to deliver to ABEC copies of GM's 2021 annual financial statements (the "GM 2021 FY Financials") and the GM quarterly financial statements for the fiscal quarters ended September 30, 2021, March 31, 2022, June 30, 2022 and September 30, 2022 (collectively, the "Historical Quarterly Statements"), as required under Section 5 of the First Amendment.



March 2, 2023
GOOD MEAT, INC.
Page 2

In accordance Section 1(d) of the First Amendment, ABEC is entitled on account of the Payment Defaults to immediately terminate the Agreement and all outstanding purchaser orders. Upon such a termination, Section 3 ("Exclusivity") of the Original Agreement will immediately and automatically terminate and be of no further force or effect.

Notwithstanding such right of ABEC to immediately terminate the Agreement, ABEC hereby grants GM until *5:00 pm Eastern Time on March 6, 2023* (i) to cure the Payment Defaults by making payment in full to ABEC of $17,427,366.90 by wire transfer of immediately available funds, (ii) to deliver the GM 2021 FY Financials and the Historical Quarterly Statements to ABEC, and (iii) to issue the required replacement POs to ABEC under Section 3 of the First Amendment.

If GM fails to timely pay the Payment Defaults and cure the other defaults specified above, the Agreement and all purchase orders shall automatically be deemed terminated as of 5:01 pm Eastern Time on March 6, 2023 and ABEC will be entitled to all damages against GM on account of GM's breach of the Agreement and purchase orders.

This letter does not purport to reflect all GM defaults that may have occurred under the Agreement. ABEC reserves any and all rights it may have in connection with any such additional defaults. Furthermore, nothing herein contained is intended as, constitutes, or should be construed as, an election of remedies or a waiver of any of ABEC's rights or remedies.

If you have any questions concerning GM's obligations under the Agreement, you should contact the undersigned or instruct your attorney do so on your behalf.

Very truly yours,

Michael P. Rittinger

MPR:el

cc:     Scott Pickering, Chief Executive Officer

PENNSYLVANIA   |   NEW JERSEY   |   DELAWARE   |   NEW YORK

10400375.v3



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

## VERIFICATION

I, James Lynch, hereby certify that I am the CFO of Plaintiff ABEC, Inc., that I am authorized to make this verification on behalf of the Plaintiff, and that the statements set forth in the foregoing complaint are true and correct to the best of my knowledge and/or information and belief. I acknowledge and understand that this verification is made subject to the penalties of 18 Pa.C.S.A.§4904 relating to unsworn falsification to authorities.

Dated: March __, 2023

James Lynch, CFO

Digitally signed by James Lynch, CFO
Date: 2023.03.08 07:36:49 -05'00'

10408047.v1