**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABEC, INC., | |
| Plaintiff, | Civil Action No.: 5:23-cv-01091 |
| v. | |
| EAT JUST, INC. | |
| And | |
| GOOD MEAT, INC. | |
| Defendants. | |

**AMENDED COMPLAINT**

Plaintiff ABEC, Inc. ("ABEC) for its amended complaint against defendants Eat Just, Inc. and Good Meat, Inc. avers as follows:

I.      **INTRODUCTION**

1.      ABEC has been an innovator in the biopharmaceutical manufacturing industry for almost 50 years, having developed the first production-scale bioreactors in the 1980s, the first bioreactors larger than 10,000 liters (L) in the 1990s, and the first large-scale single-use bioreactors in the 2010's.

2.      ABEC is recognized as the industry leading large scale cell culture development company, and in the past few years provided that expertise to advance bioreactor technology to the scales necessary to support the commercial viability of cultured meat – that is, meat developed in a sterile laboratory environment that is comparable to farm raised animal meat.

10599165.v1

3.      ABEC has engineered, designed, and established the manufacturing capability for cell culture bioreactors of up to 250,000L that would provide the economy of scale to allow for the affordable production of cultivated meat, which in this case is derived from chicken cells.

4.      Although ABEC has delivered on all of its commitments to defendants, including the construction of pilot scale bioreactors and support equipment for facilities in the USA and Singapore, defendants have failed to live up to their financial obligations, including failing to make payment on more than $30 million of invoices that defendants admitted are due and owed.

5.      Based upon the defendants' repeated failures and broken promises, ABEC has no choice but to terminate the large-scale bioreactor development and manufacturing agreement and associated purchase orders with defendants and to seek to recover its damages from defendants in this Court.

## II.      THE PARTIES

6.      Plaintiff ABEC, Inc. is a Pennsylvania corporation with an address of 3998 Schelden Circle, Bethlehem, Pennsylvania 18017.

7.      Defendant Eat Just, Inc. ("EJ") is a Delaware corporation with a business address of 300 Wind River Way, Alameda, CA 94501.

8.      Defendant GOOD Meat, Inc. ("GM") is a Delaware corporation with a business address of 300 Wind River Way, Alameda, CA 94501.

## III.      JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court because the amount in controversy exceeds $50,000.00, and the defendants have committed wrongful acts, as set forth below, in this jurisdiction.

10.      Venue is proper in the Court because the causes of action arose in Northampton County, work under the contracts are being performed in Northampton County, and/or the defendants have conducted business in Northampton County.

11.    Defendant Eat Just is subject to the general jurisdiction of this Court in that it has registered to do business in Pennsylvania.  See Mallory v. Norfolk Southern Railway Co., 600 U.S. _____ (2023). A copy of the Commonwealth Report containing Eat Just's registration statement is attached hereto at Exhibit A.

12.    Defendant Eat Just also sells and distributes food products sold within the Commonwealth of Pennsylvania under brand names of "JUST Mayo" and "JUST Egg".

13.    Defendant Eat Just is also subject to the specific jurisdiction of this Court for the numerous contacts with ABEC in Pennsylvania as detailed at length *infra*.

14.    Defendant Good Meat is subject to the jurisdiction of this Court in that at the times set forth below, Good Meat had proprietary cell cultures being grown and tested in Northampton County for a period of almost a year and continuing after the removal of this matter from the Court of Common Pleas to this Court.

15.    Under the Bioreactor Development Agreement that is detailed *infra*, all Stage 3 work ($2.8M) took place in Northampton County, PA and was performed by ABEC for GM less than 20 miles from this Court.

16.    Employees of defendant GM, including Stephen Decker and Ana Peterson, visited ABEC's facilities in April 2022 and October 2022 to review and approve the laboratory set up in Northampton County, assist in the transfer of technology, and to inspect and oversee the Stage 3 work being done at ABEC's facility in Northampton County.

17.    The photo below is of the ABEC facility in Northampton County that was dedicated to the testing of the GM cell lines for almost 9 months:



## GM STAGE 3 CELL TRIAL EQUIPMENT





18.     Defendants received regular testing and progress reports (19) with respect to the cell cultures grown in Northampton County, and defendants' employees sent directions for additional testing to be conducted at the ABEC facility in Northampton County.

19.     Defendant GM also engaged in regular business with ABEC, solicited ABEC to provide 20+ proposals for work, entered into numerous purchase orders with ABEC to perform work for GM, and directed thousands of communications to ABEC employees located in Pennsylvania.

## IV.    FACTUAL BACKGROUND

20.     In the last decade there has been an exponential growth of "plant-based meat" products in the global food industry. However, recently this phenomenon has sprouted a semi-gold rush to develop "cultivated meats" – more precisely, meat developed in a sterile laboratory environment that is comparable to farm raised animal meat.

4

21.     As cultivated meats are grown in a laboratory from actual animal cell cultures over the course of several weeks, the process is more akin to the development of new biopharmaceuticals, rather than food products.  Indeed, both the federal Food and Drug Administration ("FDA") and the United States Department of Agriculture ("USDA") have strict oversight of the equipment and process under which the cultivated meat is grown.

22.     In December 2020, defendant EJ received approval from the government of Singapore for a cultivated meat product that EJ branded "Good Meat".  While it is possible to use animal cell cultures in a normal sterile laboratory to develop very small amounts of cultivated meat, to make the cultivated meat production commercially viable, the size of the vessel or vat – technically, the bioreactor - needs to be incredibly large.

23.     The manufacture, supply and use of bioreactors is very common in the biopharmaceutical industry, however, the most common size of bioreactor used in the industry likely holds only 6000 liters (L) of liquid product, and the largest ever developed only held 25,000L.

24.     In order to make the cultivated meat production profitable, EJ determined that it would need to use bioreactors that could hold 250,000L (the "Big Vessels"), approximately 10 X larger in size than the biggest bioreactor currently in use or ever designed.

25.     In order to make these new bioreactors, EJ turned to ABEC, the industry leader in the engineering and development of bioreactors to determine if it was even feasible to design and develop the Big Vessels that EJ would need.

26.     `Further, it was determined that defendants would need to develop and equip two smaller demonstration plants in Singapore and Alameda, California (the "Pilot Plant work") as part of their process development and small-scale manufacturing for successful cultivation on a smaller scale

5

– using only 6000L bioreactors – before ramping up to production with the Big Vessels that were in excess of 4000% larger.

27.     Negotiations on the design and development of the Big Vessels, along with development and equipping of two Pilot Plants began in early 2021.28.   In conjunction with the development and equipping of the Pilot Plants, defendants issued a purchase order to ABEC for the Pilot Plants work.  A copy of Purchase Order No. 187859 for Pilot Plants work is attached hereto as Exhibit B.

29.     The Pilot Plants work encompassed improvements performed by ABEC to manufacturing facilities in Singapore and in Alameda, California.

30.     Toward the end of the negotiations on the Big Vessel project, EJ determined that it would use a wholly owned division named "Good Meat" to enter into the agreement with ABEC.

31.     Unfortunately, this division which became defendant GM was woefully undercapitalized from the beginning, especially considering that the whole endeavor was likely to cost more than $1 billion, with commitments to ABEC for ABEC's portion of the Project alone likely exceeding $550,000,000.00.

32.     Around August 9, 2021, ABEC and the newly formed defendant entered into the Bioreactor Development Agreement (the "Original Agreement"), a copy of which is attached hereto as Exhibit C.

33.     The Original Agreement contemplated five different stages of work on the project (the "Project"):

        Stage One – Feasibility

        Stage Two – Conceptual Design

        Stage Three – Design Validation

        Stage Four – Proof of Concept

6

Stage Five – Full Scale Production Capacity

Each of the stages contained various activities/deliverables required to show progress and/or completion of tasks within the stage.  See Exhibit C.

34.     The Original Agreement also required the defendants to issue purchase orders for the various portions of each stage and set forth the payment terms under which ABEC would be entitled to receive payment upon completion of various activities or deliverables.

35.     Under the Original Agreement, defendants also agreed to issue shares of common stock in the newly created corporation to ABEC as part of ABEC's compensation for its work, with the amount of stock issued to ABEC increasing as the Project proceeded to the later stages.

36.     Defendants also agreed under the Original Agreement to provide ABEC on an annual basis copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity, all prepared in accordance with generally accepted accounting principles.  See Exhibit C, page 17.

37.     Defendants have never provided ABEC with any copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity.

38.     Defendants also agreed under the Original Agreement to provide ABEC on a quarterly basis unaudited copies of (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity, all prepared in accordance with generally accepted accounting principles. See Exhibit C, page 17.

39.     Defendants have never provided ABEC with any copies of quarterly (a) balance sheets of GM, (b) statement of income, (c) cash flows and (d) stockholders equity.

40.     During the end of 2021 and into 2022, defendants continued to issue purchase orders to ABEC increasing the scope of work that ABEC was to perform on the Project, and ABEC

continued to perform its work under the Original Agreement and the purchase orders for the Project.

41.     Additionally, in order to perform the work required under the Original Agreement and purchase orders, ABEC was required to expand and upgrade its existing facility in Springfield, Missouri to accommodate the scope of the work, and also add a facility in North Carolina.  The expansion and upgrade costs (the "Expansion Costs") are estimated by ABEC to be $15,786,445.00.  Attached hereto as Exhibit D to this Complaint is a breakdown of the Expansion Costs.

42.     By the end of 2022, defendants had issued approximately $280 million worth of work in purchase orders and agreed changes to ABEC on the Project and had reserved production capacity to support over $550 million of work.

43.     Unfortunately, during this same time period, defendants began to fail to make timely payments on invoices owed to ABEC.

44.     In January 2023, ABEC met with the CEO of defendants, Josh Tetrick, in California to resolve issues on the Project, including late payments, changes to the work, etc.

45.     As a result of this meeting, on or around February 1, 2023, the parties entered into the Amendments to Purchase Orders and Bioreactor Development Agreement (the "Amendments"). A copy of the Amendments is attached to this Complaint as Exhibit E hereto. (Collectively, the Original Agreement and the Amendments will be referred to herein as the "Amended Agreement")

46.     Under the Amendments, among other issues, the parties agreed:

    a.      To deadlines under which defendants would have to make payment on past due invoices totaling $35,111,159.80;

    b.      That all future invoices on the Project would be paid in a timely manner;

c.      That defendants would issue updated purchase orders #187860, #191507, #191509, #193749, #194919 and #196518 for work that reflected an agreed upon increase of $14,544,538.00 for the scope of such work;

d.      That defendants would issue to ABEC by February 28, 2023 copies of audited financial statements for Fiscal Year 2021 and unaudited quarterly financial statements for each fiscal quarter from the date of the Original Agreement;

e.      To make schedule changes for certain work in progress on the Project; and

f.      To changes in termination rights and exclusivity under the Original Agreement.

See Exhibit E.

47.    Additionally, under the terms of the Amendments, ABEC sought to preserve its rights to sue the defendants in court, and accordingly ABEC and GM agreed that "ABEC may pursue any and all rights and remedies against GM, at law or in equity, with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices, any then outstanding invoices and the Agreement."  See Exhibit E, Section 1(d).

48.    On or around February 6, 2023, as required under the terms of the Amendments, defendants made payment to ABEC in the amount of $2,604,352.00 reflecting payment for the "Recent Past Due Amount "as set forth in Section 1 of the Amendments, as well as $2,111,159.80 reflecting the initial payment for the "Past Due Amount".

49.    However, under the Amendments, defendants were required within 10 days of the execution of the Amendments to issue updated purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 in the amount of $14,544,538.00 to ABEC for work that had been performed and/or was in progress.

50.    Despite receipt of notice from ABEC that the updating to purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 were required, and later notice that such updates were due and owing, defendants failed to issue the agreed upon updates to such purchase orders.

10599165.v1

51.     ABEC had issued an invoice for work on January 25, 2023, in the amount of $927,366.90 ("Invoice 24845").  A copy of Invoice 24845 is attached hereto as Exhibit F.

52.     Under the terms of the Amendments, Invoice 24845 was due and owing as of February 24, 2023.

53.     In an effort to assist defendants with respect to cash management expectations, ABEC provided repeated notice to defendants that payment under Invoice 24845 was coming due on February 24, 2023.

54.     However, despite receipt of such notice, defendants failed to make any payment to ABEC on Invoice 24845.

55.     Additionally, as per the terms of the Amendments, defendants were required to make a payment of $16,500,000.00 to ABEC on March 1, 2023 of the second installment of the "Past Due Amount".

56.     However, defendants without excuse failed to make the required payment of $16,500,000.00 to ABEC for the second installment of the Past Due Amount.

57.     Under the terms of the Amendments, it was agreed that the failure to make timely payment of the Past Due Amount would cause all invoices issued to defendants to immediately become due and payable.

58.     Accordingly, as of March 7, 2023, a total of $62,649,231.79 in invoices to defendants were due and owing to ABEC.  Attached hereto as Exhibit G is a copy of a spreadsheet detailing the amounts due on each invoice.  Defendants owe ABEC contractual interest on the invoices in question totaling $631,963.70.  Attached hereto as Exhibit H is a copy of a spreadsheet detailing the current interest charges due for each invoice.

10599165.v1

59.    On or around March 2, 2023, ABEC sent notice to defendants that defendants were in breach of their obligations under the Amended Agreement, and despite there not being any contractual requirement for such, ABEC provided defendants with the opportunity to cure the defaults under the Amended Agreement by March 6, 2023 at 5:00 pm EST. A copy of the March 2, 2023 Letter is attached hereto as Exhibit I.

60.    Despite being given the opportunity by ABEC to cure the defaults under the Amended Agreement, defendants have failed to even make an attempt to cure any of the defaults.

61.    Accordingly, ABEC has been forced to terminate the Amended Agreement and associated purchase orders and seek damages from defendants with respect to such termination.

62.    Defendant EJ is liable to ABEC for the amounts on the Project due to the doctrine of enterprise liability.

63.    Upon information and belief, defendants are subject to common control by Josh Tetrick, the CEO of both EJ and GM.

64.    Upon information and belief, defendants EJ and GM have common ownership and EJ has an administrative nexus to GM.

65.    Defendant EJ has asserted to third party lenders that it owns the rights to purchase orders issued by GM and to assets of GM.  Attached hereto as Exhibit J is a marked up copy of a November 3, 2022 Letter to Intent (the "Nexseer LOI") by Nexseer, a putative lender, to Eat Just (and only Eat Just).

66.    The markups on the Nexseer LOI show four ABEC purchase orders  - #187859, #187860, # 191507, and # 191509 – that EJ has asserted rights over to Nexseer.  See Exhibit J.  These four purchase orders total more than $154 million of equipment.  Additionally, EJ purports to grant lien

rights to Nexseer on "all used equipment at the Alameda pilot facility" as additional collateral, which pilot facility is allegedly that of GM.

67.     Upon information and belief, GM is an enterprise of defendant EJ as it is engaged in a common commercial endeavor with EJ, the commercial development of the proprietary cultivated meat products.

68.     Upon information and belief, GM failed to observe commercial formalities, as it was operating as a business in California for at least 10 months before it was registered to do business on June 16, 2022, did not regularly prepare financial reports in accordance with generally accepted accounting principles and failed to properly administer its corporate form as a separate corporation from EJ.

69.     Upon information and belief, GM has no employees of its own, and uses employees on the payroll of defendant EJ.  By way of example, numerous purchase orders on the project were issued on defendant EJ forms, with billing made to "JUST INC", a trade name used by defendant EJ. Further, the contact persons on purchased orders were employees of EJ including Infeanyi Amadi (identified as a "scientist at Eat Just"), Russ Read (identified as "VP of engineering at Just, Inc.") and Rodney Veach (Just, Inc.).

70.     Upon information and belief, GM and EJ have commingled corporate assets, GM and EJ have the same offices, the same address and the same officers.  All communications with GM are from the EJ email address "@JU.ST", website and forms, and even GM's general counsel only uses an EJ email address in her communications.

71.     Upon information and belief, EJ used its corporate control over GM to benefit EJ, and represented that assets of EJ were actually assets of GM.

10599165.v1

72.     As stated above, GM was vastly undercapitalized for its stated purpose, and it would be unjust and prejudicial to allow EJ to benefit from the undercapitalization of GM to the detriment of ABEC.

73.     Upon information and belief, GM is allegedly capitalized with EJ assets and opportunities, and used EJ resources.

74.     Upon information and belief, GM and EJ engaged in related party transactions that were not at fair market value and were intended to benefit EJ.

75.     Upon information and belief, the use of the GM corporate form has perpetuated a fraud upon ABEC over the course of the Project, and GM engaged in wrongful conduct by hiding its financial records and status from ABEC, despite an express obligation to provide ABEC with repeated updated financial records and status over the period of more than 18 months.

76.     Upon information and belief, the CEO of GM and EJ misrepresented to ABEC the financial situation as to GM, and ABEC acted in reliance of such statements by remaining on the Project, and as such ABEC has been prejudiced by such actions, and it would be inequitable to allow EJ to benefit from the use of GM's corporate shell.

77.     Upon information and belief, investors in GM can freely exchange their stock holdings in GM for equal stock holdings in EJ without penalty or fee.

78.     ABEC has performed all of its obligations under the Amended Agreement and/or all conditions precedent to demand payment and recoupment for its damages on the Project have been met and/or waived.

## COUNT I – Breach of Contract  - Pilot Plant Work

79.     Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 78 of the Amended Complaint, _supra_.

10599165.v1

80.    As set forth above, on June 17, 2021, defendants and ABEC entered to an agreement for

the Pilot Plant work, and defendants issued P.O. # 187859 in the amount of $14,724,797.00 to

ABEC for the Pilot Plant work.  See Exhibit B to the Complaint.

81.    As shown in the upper left corner of P.O. # 187859, the purchase order was issued by

"JUST", which is the former name of defendant Eat Just, Inc.



See Exhibit B.

82.    Additionally, as shown on the bottom of P.O.# 187859, the purchase order was made under

the "ABEC terms listed in the proposal" which do not contain any right to arbitrate disputes:

| Bioreactor growth suite for pilot scale plants at Alameda, CA and Singapore | | $14,724,797.00 |
|---|---|---|
| ABEC terms listed in the proposal would be accepted. | Tax | |
| | Total | $14,724,797.00 |

See Exhibit B.

83.    As set forth above, ABEC commenced the Pilot Plant work in 2021.

84.    However, despite ABEC's performance of the Pilot Plant work, defendants have breached

their obligations under P.O. # 187859 by failing to make payment on P.O. #187859 when due.

14

85.    Defendants have never disputed or objected to the invoices for the Pilot Plant work.

86.    ABEC is owed $927,366.90 for the Pilot Plant work.

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against Defendants Eat Just, Inc. and Good Meat, Inc. on Count I in the following amounts:

a.    $927,366.90 owed by Defendants; and

b.    Interest, statutory penalties, costs, reasonable attorneys fees and such other relief as the Court deems necessary and proper.

## COUNT II – Breach of Contract

87.    Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 78 of the Amended Complaint, *supra*.

88.    As set forth above, ABEC and defendants entered into the Amended Agreement.

89.    As set forth in detail above, defendants have breached their obligations under the Amended Agreement by:

   a.    failing to make back payments on invoices when such payments were due,

   b.    failing to make current payments on invoices when such invoices were due,

   c.    failing to issue the required additional updated purchase orders # 187860, #191507, #191509, #193749, #194919 and #196518 to ABEC under which defendants agreed that ABEC was to receive an additional $14,544,538.00,

   d.    failing to provide ABEC with annual and quarterly financial statements and records, and

   e.    failing to review and approve DCLs relating to changes requested by defendants to the scope of work within purchase orders.

90.    As set forth above, ABEC provided defendants with notice that they were in breach of their obligations under the Amended Agreement, and though under no legal obligation to do so,

10599165.v1

ABEC even provided the defendants with an opportunity to cure their breaches of the Amended

Agreement.

91.     Despite being provided with an opportunity to cure, defendants adamantly refused to cure

their breaches under the Amended Agreement.

92.     ABEC is owed $61,721,864.80 for invoices that defendants refused to pay, even though

they were acknowledged as due and owing, and interest in the amount of $631,963.70 calculated

as of March 7, 2023.

93.     ABEC is also entitled to recover $37,666,313.00 for agreed upon Impacts to ABEC due

to Changes in Committed Scope that was addressed by the parties in the Amendments.

94.     Additionally, ABEC is entitled to damages for lost profits, lost overhead and productivity

losses caused by defendants' breach of the Amended Agreement in the amount of

$105,651,321.00.

95.     Further, as set forth above, ABEC is entitled to its consequential damages caused by

defendants' breaches as estimated in the Expansion Costs of $15,786,445.00 and ABEC is also

entitled to such other direct damages caused by defendants' breaches.

96.     This Court is an appropriate forum for the resolution of such claims, in that ABEC is

under no obligation to bring these claims in an arbitration forum, as the parties expressly agreed

"ABEC may pursue any and all rights and remedies against GM, at law or in equity, with respect

to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices, any then

outstanding invoices and the Agreement."  See Exhibit E, Section 1(d).

        WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against

Defendants Eat Just, Inc. and Good Meat, Inc. on Count II in the following amounts:

a.      $61,721,864.80 on the invoices owed by Defendants;

b.     Contractual interest in the amount of $631,963.70 owed on the invoices as of March 7, 2023;

c.     $37,666,313.00 for the Impacts to ABEC due to Changes in Committed Scope that was addressed by the parties in the Amendments;

d.     An amount far in excess of $50,000.00 representing lost profits, lost overhead, productivity loses, Expansion Costs and other direct and recoverable damages incurred by Plaintiff; and

e.     Interest, costs, reasonable attorneys' fees and such other relief as the Court deems necessary and proper.

## COUNT III – Account Stated (In the Alternative)

97.     Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 78 of the Amended Complaint, *supra*.

98.     As set forth above, ABEC had a running account with Defendant GM, which was evidenced by the submission of invoices by ABEC to GM.

99.     A balance of $62,649,231.79 remains due on the invoices submitted by ABEC to GM.

100.     Additionally, in the Amendments, GM acknowledged that ABEC was due $37,666,313.00 for Impacts to ABEC due to Changes in Committed Scope.

101.     GM had acknowledged receipt of the invoices from ABEC representing the accounts stated.

102.     Defendant GM acknowledged that a certain sum in the amount of $62,649,231.79 is due on the accounts stated, that $37,666,313.00 was due as confirmed by the Amended Agreement, and GM promised to pay such accounts, and accordingly the amount of $100,315,545.79 is recoverable by ABEC from defendant GM.

10599165.v1

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against

Defendant Good Meat, Inc. on Count III in the following amounts:

a.      $100,315,545.79 owed by Defendant GM; and

b.      Interests, costs, reasonable attorneys' fees and such other relief as the Court deems

necessary and proper.

<h3 align="center">COUNT IV – (In the Alternative)</h3>

103.    Plaintiff incorporates herein the allegations set forth Paragraphs 1 to 78 of the Amended

Complaint, *supra*.

104.    As set forth above, towards the end of 2022, defendant GM began to fall behind on making

timely payments due to ABEC, even though GM had been accelerating the scope of work on the

Project.

105.    Accordingly, in an effort to induce ABEC to keep working on the Project, defendant EJ

agreed to be make sure that ABEC was paid for its work on four ABEC purchase orders with GM

- #187859, #187860, #191507, and #191509.

106.    The principal reason defendant EJ agreed to cover payments owed to ABEC on the four

purchase orders was to secure funding for EJ's own economic advantage, which included obtaining

financing from Nexseer or other lenders for EJ's use, and showing investors that the work on the

Project was proceeding.

107.    This agreement was evidenced by EJ sending a [clean] copy of the Nexseer LOI to ABEC

in order to show that the funding under these four purchase orders was secured.

108.    ABEC accepted that EJ would be responsible for payments owed to ABEC on the four

purchase orders, and continued to work on the Project, and also refraining from terminating the

work under the Original Agreement and the Pilot Plant P.O.

10599165.v1

109.    Defendant EJ breached its obligation to make sure that ABEC was paid for amounts owed

on purchase orders #187859, #187860, #191507, and #191509.

110.    The amount that is owed on the four purchase orders to ABEC totals $26,044,385.20.

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against

Defendant Eat Just, Inc. on Count IV in the following amounts:

a.      $26,044,385.20 owed by Defendant EJ; and

b.      Interests, costs, reasonable attorneys' fees and such other relief as the Court deems

necessary and proper.


                                              KLEHR, HARRISON, HARVEY,
                                              BRANZBURG LLP


08/02/2023                                    By:    _/s/  *Peter Norman*____
                                              Charles Ercole
                                              Peter J. Norman
                                              Stephanie D. Wolbransky
                                              1835 Market Street
                                              Philadelphia, PA  19103
                                              cercole@klehr.com
                                              pnorman@klehr.com
                                              swolbransky@klehr.com
                                              (215) 569-2700

                                              *Attorneys for Plaintiff ABEC, Inc.*

10599165.v1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing Amended Complaint was served upon the below listed counsel on this date by email.

Joseph Kernen
Rachel Mudra
DLA Piper LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103

*Counsel for Defendants*

*/s/ Peter Norman*
Peter Norman

Dated:    August 2, 2023

20

10599165.v1