IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABEC, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>EAT JUST, INC.<br><br>And<br><br>GOOD MEAT, INC.,<br><br>    Defendants. | Civil Action No.: 5-23-cv-01091-EGS |

**MEMORANDUM OF LAW IN SUPPORT OF EAT JUST, INC.'S MOTION TO PARTIALLY DISMISS OR STAY PLAINTIFF ABEC, INC.'S AMENDED COMPLAINT**

  Defendant, Eat Just, Inc., by its counsel, moves to partially dismiss Plaintiff, ABEC, Inc.'s, Amended Complaint for failure to state a claim, and avers as follows:

**I. BACKGROUND**

  Plaintiff, ABEC, and Defendant GOOD Meat are parties to a contract for the development and manufacture of bioreactors to produce proprietary cultivated meat products. ABEC commenced this case by filing a complaint in the Court of Common Pleas of Northampton County, Pennsylvania (the "Complaint"). On March 20, 2023, Eat Just and GOOD Meat filed a notice of removal with this Court. Eat Just moved to dismiss ABEC's Complaint on April 4, 2023. On August 2, 2023, ABEC filed an Amended Complaint.

  Eat Just now moves for partial dismissal of ABEC's Amended Complaint for failure to state a claim. Because the contract between ABEC and GOOD Meat has a mandatory arbitration

1

clause, GOOD Meat will be separately filing a motion to compel arbitration of Plaintiff's claims against GOOD Meat. Accordingly, Eat Just, as an alternative request for relief in the event the Court does not grant its motion to dismiss, requests that the Court enter a stay of proceedings pending arbitration of the claims asserted by Plaintiff against GOOD Meat.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When deciding on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Presbyterian Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Additionally, the court may consider exhibits to the complaint when deciding such a motion. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). To survive a motion to dismiss, "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2007). Simply reciting the elements will not suffice. *Id.*

## III.  ARGUMENT

### A.  Claims Against Eat Just in Counts II and IV Fail as a Matter of Law.

Plaintiff's claims against Eat Just fail as a matter of law, as a result, the Court should dismiss Counts II and IV for failure to state a claim.

*1.     The Count II Breach of Contract Claim Should Be Dismissed.*

The breach of contract claim in the second count of the Amended Complaint against Eat Just fails because Eat Just is not a party to the contracts at issue.

Under Pennsylvania law, a breach of contract claim requires a plaintiff to plead "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Assembly Tech. Inc. v. Samsung Techwin Co.*, 695 F. Supp. 2d 168, 180 (E.D. Pa. 2010). To succeed on a claim for breach of contract, a plaintiff must show "the existence of the contract to which the defendant is a party." *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185, 1186 (Pa.1977). "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (quoting *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991), *aff'd*, 618 A.2d 395 (Pa. 1993).

Dismissal is proper where a defendant is not a party to the agreement at issue. *See Sheller, Ludwig & Sheller P.C. v. Equitrac*, No. CIV.A. 07-2310, 2008 WL 2370826, at *3 (E.D. Pa. June 9, 2008) (dismissing a breach of contract claim and finding "[i]t is apparent that [defendant] is not a party to the lease agreements. None of the lease agreements are signed by a representative of [defendant] or name [defendant] as a lessor or otherwise-bound party. The lease agreements instead evidence a contract between [plaintiff] and [other parties] . . . Sheller has thus failed to show the existence of a contract to which [defendant] is a party.")

This case is identical to *Equitrac*. Here, Plaintiff alleges that "ABEC and the newly formed defendant entered into the Bioreactor Development Agreement . . . a copy of which is attached

3

hereto as Exhibit B." Am. Compl., at ¶ 32.[1]  The Bioreactor Development Agreement was entered into between GOOD Meat and Plaintiff, as evidenced by Exhibit C.  *See* Am. Compl., at Ex. C.  There are no additional parties to the agreement.  *Id.*  Plaintiff further alleged "the parties entered into the Amendments to Purchase Orders and Bioreactor Development Agreement."  Am. Compl., at ¶ 45.  However—like the Bioreactor Development Agreement—Eat Just is not a party to the Amended Agreement.  *See* Am. Compl., at Ex. E.  Neither agreement is signed by Eat Just or names Eat Just as an otherwise bound party.

Because Eat Just is not a party to either agreement, it cannot, as a matter of law, be held liable for an alleged breach of either agreement. Count Two should therefore be dismissed as to Eat Just.

        2.      *Plaintiff's Untitled Fourth Cause of Action Should be Dismissed.*

It is telling indeed that Plaintiff's fourth cause of action is untitled: it does not come close to adequately pleading a valid cause if action against Eat Just and should be summarily dismissed. ABEC alleges that "defendant EJ agreed to make sure that ABEC was paid for its work on four ABEC purchase orders with GM - #187859, #187860, #191507, and #191509."  Am. Compl., at ¶ 105.  ABEC continues: "EJ agreed to cover payments owed to ABEC on the four purchase orders." Am. Compl., at ¶ 106. But Plaintiff makes no effort to plead the elements of a contract to pay or of some tort claim involving payment, let alone facts to support a breach of contract, or tortious conduct tethered to a recognized cause of action. ABEC does not allege any facts to support the conclusion that Eat Just "agreed to make sure that ABEC was paid" or "agreed to cover payments" related to the four purchase orders.  Instead, ABEC suggests only that "[t]his agreement was

---

[1] In referring to Plaintiff's factual allegations in support of this motion Eat Just does not concede the accuracy of those allegations and reserves the right to dispute them if the case proceeds in this forum.

4

evidenced by EJ sending a [clean] copy of the Nexseer LOI to ABEC in order to show that the funding under these four purchase orders was secured." Am. Compl., at ¶ 107.

This supposed cause of action has no name because none exists. The Nexseer LOI does not create an agreement between Eat Just and ABEC nor does it reference any intention of Eat Just "to make sure ABEC was paid" or "cover payments." Am. Compl., at ¶¶ 105-106. Plaintiff's unspecified allegations fail to state a claim against Eat Just related to the four referenced purchase orders and so Count IV should be dismissed.

> 3. *Plaintiff Cannot Revive its Deficient Claims Through Conclusory Allegations of "Enterprise Liability."*

Plaintiff attempts to salvage its deficient claims by alleging that "Defendant EJ is liable to ABEC for the amounts of the Project due to the doctrine of enterprise liability." Am. Compl., at ¶ 62. Yet, Plaintiff fails, in the first instance, to allege piercing-worthy conduct above a speculative level by making conclusory allegations almost exclusively upon information and belief. Moreover, even if Plaintiff had successfully alleged piercing-worthy conduct (which it has not), Plaintiff likewise fails to allege enterprise liability against Eat Just under *Mortimer v. McCool* and its progeny. *See Mortimer v. McCool*, 255 A.3d 261, 284 (Pa. 2021).

To establish enterprise liability, a plaintiff must show: "(1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies." *Mortimer*, 255 A.3d at 271 (quoting *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 695 (Pa. Super. Ct. 1998)).

Despite narrowly recognizing the doctrine, the Pennsylvania Supreme Court emphasized that "[w]e may validate the prospect of a viable claim for enterprise liability while underscoring the fundamental concern for its use in cases of great injustice and inequity must remain the lodestar of piercing jurisprudence." *Id.* The Court concluded that "a narrow form of what we will refer to

as 'enterprise liability' may be available under certain circumstances" but "it cannot apply under the facts of this case," where a driver, seriously and permanently injured by an intoxicated driver, sought to pierce the corporate veil of the owners of a mixed-use building that housed the restaurant which served the intoxicated driver. *Id.* at 266. As a result, the enterprise liability test is an *additional* requirement, meant to "supplement[], not supplant[], [Pennsylvania's] existing piercing standard with additional, context-specific considerations," while the "threshold inquiry" remains "the presence of piercing-worthy conduct by controlling actors or alter egos." *Id.* at 284.

Pennsylvania law recognizes "a strong presumption . . . against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Generally, piercing the corporate veil may be permitted in situations where there exists: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and [where] the corporation is merely a facade for the operations of the dominant stockholder." *Id.* at 895.

If [plaintiff] cannot plead the appropriate facts at the outset to state a veil-piercing claim, that claim must be dismissed." *KorDev LLC v. Eagle Hemp*, LLC, No. 2:21-CV-1341-NR, 2023 WL 202338, at *2 (W.D. Pa. Jan. 17, 2023). While veil-piercing is not a separate cause of action—but rather a theory of liability—on a motion to dismiss, a court "must examine . . . whether the facts pleaded . . . state a cause of action on a theory of piercing the corporate veil." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) (quoting *Lumax Indust., Inc.*, 669 A.2d at 895). Critically, "[a]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments *cannot support a veil-piercing claim*." *Accurso,* 23 F. Supp. 3d at

510 (quoting *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012) (emphasis added).

          i.      As a Threshold Issue, Plaintiff Fails to Allege Piercing-Worthy Conduct.

Principally, Plaintiff fails to meet the threshold requirement: the presence of piercing-worthy conduct by controlling actors or alter egos. No fewer than twelve of Plaintiff's allegations relating to supposed "enterprise liability" are asserted upon information and belief alone. But conclusory allegations upon information and belief are insufficient to support piercing the corporate veil. *See, e.g., Partners Coffee Co., LLC v. Oceana Servs. & Prod. Co.*, 700 F. Supp. 2d 720, 737 (W.D. Pa. 2010) (dismissing a veil-piercing claim where the allegations "consist[ed] of nothing more than a list of [veil-piercing] factors . . . based on Defendants' 'information and belief.'"). Indeed, "[i]n the wake of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level" and the complaining party must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

Plaintiff alleges merely "[u]pon information and belief" that "defendants are subject to common control," Am. Compl., at ¶ 63, "have common ownership and EJ has an administrative nexus to GM," Am. Compl., at ¶ 64, "GM is an enterprise of defendant EJ and it is engaged in a common commercial endeavor with EJ," Am. Compl., at ¶ 67, "GM failed to observe commercial formalities," Am. Compl., at ¶ 68, "GM has no employees of its own," Am. Compl., at ¶ 69, "GM and EJ have commingled corporate assets," Am. Compl., at ¶ 70,[2] "EJ used its corporate control

---

[2] Here, Plaintiff also alleges—upon information and belief—that "GM And EJ have the same offices, the same address and the same officers." Am. Compl., at ¶ 70. But even if true, these allegations do not support Plaintiff's allegation that GOOD Meat and Eat Just have commingled assets. *See e.g., Accurso*, 23 F. Supp. 3d 494, 510-11 (Dismissing breach of contract claims and

over GM to benefit EJ, and represented that assets of EJ were actually assets of GM," Am. Compl., at ¶ 71, "GM is allegedly capitalized with EJ assets and opportunities, and used EJ resources," Am. Compl., at ¶ 73, "GM and EJ engaged in related party transactions that were not at fair market value and were intended to benefit EJ," Am. Compl., at ¶ 74, "the use of the GM corporate form has perpetuated a fraud," Am. Compl., at ¶ 75, "the CEO of GM and EJ misrepresented to ABEC the financial situation as to GM," Am. Compl., at 76, and "investors can freely exchange their stock holdings in GM for equal stock holdings in EJ without penalty or fee." Am. Compl., at ¶ 76. These formulaic allegations based only upon "information and belief" do not overcome the strong presumption against piercing the corporate veil.

Moreover, Plaintiffs' remaining allegations are conclusory at best. ABEC alleges: "Defendant EJ is liable to ABEC for the amounts on the Project due to the doctrine of enterprise liability." Am. Compl., at ¶ 62. Plaintiff further alleges that GOOD Meat "was woefully undercapitalized from the beginning" and "was vastly undercapitalized for its stated purpose." Am. Compl., at ¶¶ 31, 72. Yet, the Amended Complaint lacks any supporting facts regarding GOOD Meat's alleged undercapitalization.

Accordingly, Plaintiff's allegations upon information and belief are insufficient to raise a right to relief above the speculative level. Moreover, Plaintiff's remaining allegations do not overcome Pennsylvania's strong presumption against veil-piercing.

          ii.        <u>Plaintiff Likewise Fails to Allege Enterprise Liability Against Eat Just.</u>

Plaintiff's bald allegations reciting the veil-piercing test are nothing more than legal conclusions, and therefore, cannot support a veil-piercing claim. But even if the Amended

---

finding "[t]he fact that office addresses may have been shared by individuals and corporations, or may have been post office boxes . . . a common occurrence . . . is not enough" to pierce the corporate veil).

Complaint satisfied the threshold requirement of piercing-worthy conduct (and it does not), it fails to meet the additional, enterprise liability test.  The *Mortimer* court established two requirements for the application of the enterprise liability doctrine: (1) that substantial common ownership exists; and (2) the wrongdoing alleged depends on the actions or omissions of the common owner to exploit limited liability while failing to observe the separation between corporations." *Mortimer*, 255 A.3d at 287.  ABEC has not pled sufficient facts to satisfy these two elements.

With respect to common ownership, Plaintiff simply alleges "[u]pon information and belief, defendants EJ and GM have common ownership and EJ has an administrative nexus to GM." Am. Compl., at ¶ 64.  This allegation is insufficient to establish common ownership.  *See, e.g.*, *In re Forks Specialty Metals Inc.*, No. AP 19-00028-MDC, 2023 WL 3239468, at *25 (Bankr. E.D. Pa. Apr. 30, 2023) (finding substantially common ownership was sufficiently pled where the amended complaint contained allegations regarding the ownership structure—including "that the Debtor was wholly-owned by GRI, and that GRI owned a 60% interest in NAIC"). Merely alleging that there is some "common ownership" and some "administrative" connection between the two companies falls woefully short of the required standard for the first prong.

Plaintiff likewise fails to sufficiently allege the second prong required to establish enterprise liability.  In *In re Forks Specialty Metals, Inc.*, the United States Bankruptcy Court for the Eastern District of Pennsylvania found that the second prong was not satisfied even where the amended complaint alleged that the entity at issue entered into transactions "utilizing assets of the Debtor as if they were [its own] assets" and that it "marketed the Debtor's assets as if they belonged to [itself and related entity]."  *In re Forks Specialty Metals Inc.*, No. AP 19-00028-MDC, 2023 WL 3239468, at *4.  The court refused to find enterprise liability despite plaintiff's allegations that it "relied on Defendants' representations that [the Debtor] was a division of Defendants, an

9

integral component of the overall enterprise and not a separate corporate entity" and therefore, plaintiff "had no reason to believe that they were dealing with a separate entity due to the representations and control exhibited by Defendants." *Id.* Moreover, the court concluded that allegations that the entity "did not pay sufficient consideration for services the Debtor provided . . . does not sufficiently allege wrongdoing by [the entity] that would warrant triangular veil-piercing." *Id.* at *25.

If the plaintiff in *In re Forks Specialty Metals* could not state an enterprise liability claim, Plaintiff here certainly has not. Plaintiff's allegations that "GM is allegedly capitalized with EJ assets and opportunities, and used EJ resources;" that "GM and EJ engaged in related party transactions that were not at fair market value to benefit EJ;" and that it "represented the assets of EJ were actually assets of GM" are far less compelling than the unsuccessful allegations asserted by the plaintiff in *In re Forks Specialty Metals*. Am. Compl., at ¶¶ 71, 73-74. Significantly, unlike the plaintiff there, ABEC knew that it was contracting solely with Eat Just on the pilot program contract and solely with GOOD Meat, a separate entity from Eat Just, on the Agreement and Amendments. ABEC alleges that "it would be unjust and prejudicial to allow EJ to benefit from the undercapitalization of GM to the detriment of ABEC." Am. Compl., at ¶ 72. But Plaintiff has it backwards: it would create an injustice to impose liability on Eat Just despite the express terms of the Agreement between GOOD Meat and ABEC. *See, e.g.*, *Sheetz v. Spagnol*, 224 Pa. Super. 85, 89, 302 A.2d 379, 381 (1973) (reversing trial court's piercing of corporate veil when agreement itself, as drafted by the parties, was valid, entered into voluntarily by the plaintiff, and did not provide for liability as to defendant; to allow corporate disregard under these circumstances "would be not preventing an injustice but in fact creating an injustice by allowing plaintiffs to impose upon defendant a liability different than that they agreed to impose on him").

Moreover, the Western District of Pennsylvania has dismissed enterprise liability claims where allegations of involuntary creditors and insolvency, "two of the key *Mortimer factors*," were absent. *KorDev LLC*, 2023 WL 202338, at *2. Notably, "[i]nvoluntary creditors take their judgment debtors as they find them; they have no opportunity to seek information or negotiate terms." *Mortimer*, 255 A.3d at 279 n.70 (Pa. 2021). "Tort victims are classic examples" of involuntary creditors. *Id.* at 272 n.36 (quoting examples *In re LMcD, LLC*, 405 B.R. 555, 566 (Bankr. M.D. Pa. 2009)). As a result, the *KorDev* court declared that "the remedy that [plaintiff] must pursue" is "recovering under a breach-of-contract theory against [defendant], the corporate entity that is actually a party to the subject contract." *KorDev LLC*, 2023 WL 202338, at *2. The court flatly rejected plaintiff's requests to "engage in some discovery to find the facts that would support its theory of liability," saying, plaintiff "cannot simply ask for discovery to see if that might help it find a veil-piercing claim." *Id.*

We have the exact same case here. Just as in *KorDev*, Plaintiff has not plead *any facts* establishing Plaintiff as an "involuntary creditor" or the "insolvency" of GOOD Meat. In fact, Plaintiff acknowledges that it "entered into the Bioreactor Development Agreement" and later allegedly "entered into the Amended Agreement" with GOOD Meat. *See* Am. Compl., at ¶ 32, 88. Accordingly, Plaintiff alleges that it entered into not one but two separate agreements with GOOD Meat, after first entering into the pilot plant agreement solely with Eat Just, and therefore is not an involuntary creditor. Unlike a true involuntary creditor, Plaintiff undeniably had the opportunity to negotiate the terms of these agreements to include having Eat Just sign on as a party or perhaps as a guarantor. Plaintiff chose not to. Moreover, Plaintiff makes no allegation that GOOD Meat is insolvent, and therefore is unable to satisfy judgment against it. The lack of these factual allegations alone dooms Plaintiff's enterprise liability theory.

11

**B. In the Alternative, the Court Should Enter a Stay Pending Arbitration Between Plaintiff and GOOD Meat.**

In the alternative, litigation of Plaintiff's claims should be stayed pending arbitration of this matter between the contracting parties—Plaintiff and GOOD Meat. It is well-settled that "[a] United States district court has broad powers to stay proceedings." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 57 S. Ct. 163, 166 (1936).

This power extends to staying one lawsuit pending the outcome of another that may substantially affect it or be dispositive of the issues. *American Life Ins. Co. v. Stewart*, 57 S.Ct. 377 (1937). Relatedly, this power also permits courts to compel arbitration against certain parties while staying an action against other parties not bound by arbitration. *See, e.g., Just B Method, LLC v. BSCPR, LP*, No. CIV.A. 14-1516, 2014 WL 5285634, at *1 (E.D. Pa. Oct. 14, 2014) (compelling arbitration as to plaintiffs and certain defendants, while staying the action as to other defendants that did not sign the arbitration agreement at issue). The relevant factors to be considered in determining whether to stay civil proceedings include: "(1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced against the prejudice to the plaintiff from delay; (2) the burden on defendant; (3) the convenience to the courts; (4) the interest

of persons not parties to the civil litigation; and (5) the public interest." *Shirsat v. Mut. Pharm. Co., Inc.*, Civ. A. 93-3202, 1995 WL 695109, at *1 (E.D. Pa. Nov. 21, 1995).[3]

Here, the outcome of arbitration between Plaintiff and GOOD Meat will undeniably substantially affect or be dispositive of the issues raised by Plaintiff as to Eat Just. Plaintiff's claims against GOOD Meat and Eat Just are virtually identical—alleging breach of contract claims against both parties arising out of the same project. Plaintiff cannot recover the same alleged harm from both GOOD Meat and Eat Just. Consequently, arbitration between the contracting parties, Plaintiff and GOOD Meat, will substantially affect or be dispositive of the issues. Moreover, there is no prejudice to Plaintiff in proceeding to arbitration with GOOD Meat, since the arbitration will directly resolve virtually all of the issues raised in the Amended Complaint. Rather than delay, Plaintiff's claims will be dealt with expeditiously in the appropriate forum by staying this case pending arbitration.

On the other hand, Eat Just will be unreasonably burdened if Plaintiff is allowed to maintain its civil action while arbitrating the exact same dispute with GOOD Meat. Forcing Eat Just to defend itself in court while the rights and obligations under the agreements at issue are determined in arbitration is unnecessary and overly burdensome. Indeed, Plaintiff's allegations against Eat Just may be largely, if not fully, moot following arbitration. Therefore, subjecting Eat Just to continued federal court litigation during the pendency of the AAA arbitration would result in unnecessary costs for everyone involved, including this Court. Moreover, Eat Just would be prejudiced by continuing litigation while GOOD Meat and Plaintiff arbitrate the dispute, as

---

[3] Additionally, "before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255). Here, there is not a fair possibility that the stay would damage another party, including Plaintiff, since the arbitration will undoubtedly resolve the same issues.

Plaintiff proceeds in part under an enterprise liability theory. Under this theory, any liability as to Eat Just is directly tied to GOOD Meat. For this same reason, staying this case pending arbitration is convenient for the Court. Following arbitration, the relationship and obligations under the agreements will be determined—and this dispute potentially moot. Meanwhile, litigating this case while the same issues are being determined in arbitration is inconvenient and may produce ridiculous results. For instance, in arbitration, it may be determined that there has been no breach of contract. If so, discovery and motions practice in court regarding Plaintiff's enterprise liability theory would be entirely unnecessary. Judicial economy supports staying any litigation between Plaintiff and Eat Just pending arbitration between the actual contracting parties.

Eat Just is not aware of any non-parties with interest in this matter. Finally, the public interest also supports staying the litigation pending arbitration. As discussed above, requiring parties to litigate matters that may soon become moot is both unduly burdensome and flouts judicial economy. The expeditious—and linear—resolution of claims advances the public's interest in the availability of courts and freedom from needless litigation. Accordingly, the Court should enter a stay of proceedings as to Eat Just pending arbitration of this matter between the contracting parties—Plaintiff and GOOD Meat.

## IV.   CONCLUSION

For all of the aforementioned reasons, Eat Just respectfully requests that the Court dismiss the Amended Complaint, or in the alternative, stay the claims against Eat Just pending the conclusion of arbitration between Plaintiff and GOOD Meat.

DLA Piper LLP (US)

*/s/ Joseph Kernen*
Joseph Kernen
joseph.kernen@dlapiper.com
Rachel Mudra

14

*rachelmudra@dlapiper.com*
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
215.656.3345

*Counsel for Eat Just, Inc. and GOOD Meat, Inc.*

Dated: August 22, 2023

## CERTIFICATE OF SERVICE

I, Joseph Kernen, certify that on this 22nd day of August 2023, true and correct copies of the foregoing Memorandum of Law in Support of Eat Just, Inc.'s Motion to Dismiss or Stay Plaintiff ABEC, Inc.'s Amended Complaint was served via CM/ECF on all counsel of record.

*/s/ Joseph Kernen*
Joseph Kernen

Dated: August 22, 2023