IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABEC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EAT JUST, INC.<br><br>and<br><br>GOOD MEAT, INC.,<br><br>Defendants. | Civil Action No.: 5-23-cv-01091-WB |

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AGAINST ABEC, INC.**

Defendants, GOOD Meat, Inc. and Eat Just, Inc., for their Answer, Affirmative Defenses, and Counterclaims to the Amended Complaint dated August 2, 2023 (the "Complaint") of Plaintiff ABEC, Inc. (Defendants' "Answer") state as follows:

## I. INTRODUCTION

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and these allegations are, therefore, denied.

2. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and these allegations are, therefore, denied.

3. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and these allegations are, therefore, denied.

4. Defendants deny the allegations in paragraph 4 of the Complaint.

5. Defendants deny the allegations in paragraph 5 of the Complaint.

## II. THE PARTIES

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and these allegations are, therefore, denied.

7. Defendants admit the allegations in paragraph 7 of the Complaint.

8. Defendants admit the allegations in paragraph 8 of the Complaint.

## III. JURISDICTION AND VENUE

9. The allegations in Paragraph 9 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 9 of the Complaint.

10. The allegations in Paragraph 10 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 10 of the Complaint.

11. The allegations in Paragraph 11 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 11 of the Complaint.

12. Eat Just admits only that it sells and distributes "JUST Egg" products within the Commonwealth of Pennsylvania. Defendants deny all remaining allegations in Paragraph 12 of the Complaint.

13. The allegations in Paragraph 13 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 13 of the Complaint.

14. The allegations in Paragraph 14 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 14 of the Complaint.

15. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, and these allegations are, therefore, denied.

16. Defendants admit the allegations in paragraph 16 of the Complaint.

17. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and these allegations are, therefore, denied.

18. Good Meat admits the allegations in paragraph 18 of the Complaint. Eat Just denies the allegations in paragraph 18 of the Complaint.

19. Good Meat admits the allegations in paragraph 19 of the Complaint.

## IV. <u>FACTUAL BACKGROUND</u>

20. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and these allegations are, therefore, denied.

21. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, and these allegations are, therefore, denied.

22. Defendants admit only that Eat Just received approval from Singapore for a cultivated meat product branded "Good Meat," and deny the remainder of the allegations in Paragraph 22 of the Complaint.

23. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and these allegations are, therefore, denied.

24. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and these allegations are, therefore, denied.

25. Defendants deny the allegations in paragraph 25 of the Complaint.

26. Defendants deny the allegations in paragraph 26 of the Complaint.

27. Defendants deny the allegations in paragraph 27 of the Complaint.

28. Paragraph 28 is omitted from the Complaint.

29. Defendants admit the allegations in paragraph 29 of the Complaint.

30. Defendants deny the allegations in paragraph 30 of the Complaint.

31. Defendants deny the allegations in paragraph 31 of the Complaint.

32. Defendants admit only that around August 9, 2021, ABEC and GOOD Meat entered into the Bioreactor Development Agreement but denies Plaintiff's characterization with respect to same in paragraph 32 of the Complaint.

33. Defendants admit only that the Bioreactor Development Agreement contains five stages but denies Plaintiff's characterization with respect to same in paragraph 33 of the Complaint.

34. The Bioreactor Development Agreement speaks for itself. The allegations in Paragraph 34 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 34 of the Complaint.

35. The Bioreactor Development Agreement speaks for itself. The allegations in Paragraph 35 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 35 of the Complaint.

36. The Bioreactor Development Agreement speaks for itself. The allegations in Paragraph 36 of the Complaint contain conclusions of law to which no response is required. To

the extent a response is required, Defendants deny the allegations in Paragraph 36 of the Complaint.

37. Defendants deny the allegations in paragraph 37 of the Complaint.

38. The Bioreactor Development Agreement speaks for itself. The allegations in Paragraph 38 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 38 of the Complaint.

39. Defendants deny the allegations in paragraph 39 of the Complaint.

40. Defendants deny the allegations in paragraph 40 of the Complaint.

41. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and these allegations are, therefore, denied.

42. Defendants deny the allegations in paragraph 42 of the Complaint.

43. Defendants deny the allegations in paragraph 43 of the Complaint, including Plaintiff's characterization of invoices as "owed to ABEC."

44. Defendants admit only that the parties met in California in January 2023 but denies Plaintiff's characterization with respect to same.

45. Defendants deny the allegations in paragraph 45 of the Complaint.

46. Defendants deny the allegations in paragraph 46 of the Complaint.

47. Defendants deny the allegations in paragraph 47 of the Complaint.

48. Defendants admit only that GOOD Meat made payments to ABEC in the amounts of $2,111,159.80 and $2,604,352.60 in or about February of 2023 and deny the remainder of Plaintiff's allegations in paragraph 48 of the Complaint and further deny the characterization of same as "Recent Past Due Amount" and "Past Due Amount."

49. Defendants deny the allegations in paragraph 49 of the Complaint.

50. Defendants deny the allegations in paragraph 50 of the Complaint.

51. Defendants admit the allegations in paragraph 51 of the Complaint.

52. Defendants deny the allegations in paragraph 52 of the Complaint.

53. Defendants deny the allegations in paragraph 53 of the Complaint.

54. Defendants deny the allegations in paragraph 54 of the Complaint

55. Defendants deny the allegations in paragraph 55 of the Complaint.

56. Defendants deny the allegations in paragraph 56 of the Complaint.

57. Defendants deny the allegations in paragraph 57 of the Complaint.

58. Defendants deny the allegations in paragraph 58 of the Complaint.

59. Defendant GOOD Meat admits only that it received a letter titled "Notice of Default" on March 2, 2023, but denies the remainder of Plaintiff's allegations in paragraph 59. Defendant Eat Just denies the allegations in paragraph 59 of the Complaint.

60. Defendants deny the allegations in paragraph 60 of the Complaint.

61. Defendants deny the allegations in paragraph 61 of the Complaint.

62. Defendants deny the allegations in paragraph 62 of the Complaint.

63. Defendants deny the allegations in paragraph 63 of the Complaint.

64. Defendants deny the allegations in paragraph 64 of the Complaint.

65. The Nexseer LOI speaks for itself. Defendants deny the allegations in paragraph 65 of the Complaint.

66. The Nexseer LOI speaks for itself. The allegations in Paragraph 66 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 66 of the Complaint.

67. Defendants deny the allegations in paragraph 67 of the Complaint.

68. Defendants deny the allegations in paragraph 68 of the Complaint.

69. Defendants deny the allegations in paragraph 69 of the Complaint.

70. Defendants admit only that Good Meat's general counsel and employees use Eat Just e-mail addresses. Defendants deny all other allegations in paragraph 70 of the Complaint.

71. Defendants deny the allegations in paragraph 71 of the Complaint.

72. Defendants deny the allegations in paragraph 72 of the Complaint.

73. Defendants deny the allegations in paragraph 73 of the Complaint.

74. Defendants deny the allegations in paragraph 74 of the Complaint.

75. Defendants deny the allegations in paragraph 75 of the Complaint.

76. Defendants deny the allegations in paragraph 76 of the Complaint. Defendants further state the allegations in Paragraph 76 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 76 of the Complaint.

77. Defendants deny the allegations in paragraph 77 of the Complaint.

78. Defendants deny the allegations in paragraph 78 of the Complaint.

**COUNT I – Breach of Contract – Pilot Plant Work**

79. Defendants repeat and re-allege its responses to the allegations contained in Paragraphs 1 through 78 above with the same force and effect as if fully set forth herein.

80. Defendants deny the allegations in paragraph 80 of the Complaint.

81. Defendants admit the allegations in paragraph 81 of the Complaint.

82. The allegations in Paragraph 82 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 82 of the Complaint.

83. Defendants lack knowledge or information sufficient to form a belief as to ABEC's commencement of work, and these allegations are, therefore, denied.

84. Defendants deny the allegations in paragraph 84 of the Complaint.

85. Defendants deny the allegations in paragraph 85 of the Complaint.

86. Defendants deny the allegations in paragraph 86 of the Complaint. Defendants deny that Plaintiff is entitled to any judgment or relief, whether monetary, equitable or otherwise, including that requested in subparts (a) through (b) of the final paragraph of Count I, which begins with the phrase "WHEREFORE, Plaintiff, ABEC, Inc. . . . ."

**COUNT II – Breach of Contract**

87. Defendants repeat and re-allege its responses to the allegations contained in Paragraphs 1 through 86 above with the same force and effect as if fully set forth herein.

88. Defendants deny the allegations in paragraph 88 of the Complaint.

89. Defendants deny the allegations set forth in paragraph 89, including subparts (a) through (e).

90. Defendants deny the allegations in paragraph 90 of the Complaint.

91. Defendants deny the allegations in paragraph 91 of the Complaint.

92. Defendants deny the allegations in paragraph 92 of the Complaint.

93. Defendants deny the allegations in paragraph 93 of the Complaint.

94. Defendants deny the allegations in paragraph 94 of the Complaint.

95. Defendants deny the allegations in paragraph 95 of the Complaint.

96. The allegations in Paragraph 96 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 96 of the Complaint. Defendants further deny that Plaintiff is entitled to any judgment or relief, whether monetary, equitable or otherwise, including that requested in subparts (a) through (e) of the final paragraph of Count II, which begins with the phrase "WHEREFORE**,** Plaintiff, ABEC, Inc. . . . ."

**COUNT III – Account Stated (In the Alternative)**

97. Defendants repeat and re-allege its responses to the allegations contained in Paragraphs 1 through 96 above with the same force and effect as if fully set forth herein.

98. Defendants lack knowledge or information sufficient to form a belief as to internal accounts maintained by ABEC, and these allegations are, therefore, denied. Further, the allegations in Paragraph 98 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 98 of the Complaint.

99. Defendants deny the allegations in paragraph 99 of the Complaint.

100. Defendants deny the allegations in paragraph 100 of the Complaint.

101. Defendants deny the allegations in paragraph 101 of the Complaint.

102. Defendants deny the allegations in paragraph 102 of the Complaint. Defendants further deny that Plaintiff is entitled to any judgment or relief, whether monetary, equitable or otherwise, including that requested in subparts (a) through (b) of the final paragraph of Count III, which begins with the phrase "WHEREFORE**,** Plaintiff, ABEC, Inc. . . . ."

**COUNT IV – (In the Alternative)**

103. Defendants repeat and re-allege its responses to the allegations contained in Paragraphs 1 through 102 above with the same force and effect as if fully set forth herein.

104. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 104 of the Complaint.

105. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 105 of the Complaint.

106. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 106 of the Complaint.

107. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 107 of the Complaint.

108. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 108 of the Complaint.

109. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 109 of the Complaint.

110. By Order dated December 21, 2023, the Court dismissed Count IV; therefore, no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 110 of the Complaint.

## GENERAL DENIAL

Defendants deny each and every allegation set forth in the Complaint that is not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Defendants do not knowingly or intentionally waive any applicable defense and reserve the right to assert and rely on such other applicable defenses as may become available or apparent during the course of the proceedings. Defendants further reserve the right to amend their Answer and/or defenses accordingly, and/or delete defenses that they determine are not applicable, during the course of the proceedings. Without assuming any burdens that it would not otherwise bear, Defendants assert the following defenses:

### As For a First Affirmative Defense

The Complaint, in whole or part, fails to state a claim upon which relief can be granted or for which the damages sought can be awarded.

### And As For a Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and unjust enrichment.

### And As For a Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of release, waiver, and/or estoppel.

**And As For a Fourth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of laches.

**And As For a Fifth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by applicable law, rule, statute, or regulation.

**And As For a Sixth Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

**And As For a Seventh Affirmative Defense**

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff entered into an arbitration agreement with Defendant that precludes its participation in the instant action.

**RESERVATION OF RIGHTS AND TO AMEND ANSWER**

Defendants intend to rely upon any other defense that may become available during the proceedings in this case, and hereby reserve the right to amend their Answer to assert any such defenses.

**COUNTERCLAIMS**

Defendants, for their Counterclaims against Plaintiff, state as follows:

**FACTS**

1. GOOD Meat has paid approximately $80,369,066 to ABEC, Inc. but has not received any deliverables associated with its payments.

2. ABEC has possession of GOOD Meat property, including but not limited to:

(a) Five Bioreactor Trains inclusive of the below equipment:

i. 5 x 500L Vw Bioreactors;

ii. 5 x 2000L Vw Bioreactors;

iii. 5 x 8000L Vw Bioreactors;

iv. 5 x 32000L Vw Bioreactors;

v. All interconnecting piping;

vi. Agitators for each bioreactor.

(b) Materials for Bioreactor Trains:

i. Seals;

ii. Motor Enclosures;

iii. Jacket Heat Exchanger;

iv. Jacket Circulation Pump;

v. Heat Exchangers;

vi. 4 Panel Mounted Peristaltic pumps;

vii. 6 valve arrays;

viii. 1 Mettler Toledo PBA series scale;

ix. Sterile Filters;

x. Electrical: Power panels, control panels, Amp Boxes, Local Disconnects, Conduit, Nameplates;

xi. Mechanical: Non-polished 304L S/S tubing, tubing frame.

(c) Support equipment surrounding 32,000L Bioreactor Trains, including:

i. 2 x 2 x 500L Vw / 600 Vt Media Prep w/TCU;

ii. 2 x 500L Media Filter Skid;

iii. 2 x 2000L Vw / 2400 Vt media Prep w/TCU;

iv. 2 x 2000L Media Filter Skid;

v. 2 x 6400L Vw / 7800 Vt Media Prep w/TCU;

vi. 2 x 6400L Media Filter Skid;

vii. 2 x 10,000L Vw / 12,000L Vt Nutrient Prep w/TCU;

viii. 2 x 10,000L Nutrient Filter Skid;

ix. 2 x 25,000L Vw / 30,000L Vt Media Prep w/TCU;

x. 2 x 25,000L Media Filter Skid;

xi. 5 x 350L Base Hold Skid;

xii. 5 x 10,000L Primary Media Hold Skid;

xiii. 9 x 1500L Dual CI;

xiv. All Intraconnect Piping.

(d) Raw Materials and Components to Enable Bioreactor Fabrication, including:

i. 2 x 125,000 Vw Bioreactor

ii. 4 x 250,000L Vw Bioreactor

(e) Additional Equipment, including:

i. Diaphragm Valves;

ii. Raw Materials for Fabricating Support Equipment;

iii. 8,000L Bioreactor Vessel

iv. 32,000L Sidewalls;

v. 2 x 32,000L Bottom Heads;

vi. Steel for 250,000L Bioreactor Dimple Jacket;

vii. 14x 125,000 & 250,000 Bioreactor Vessel Heads;

viii. Steel for 250,000L Bioreactor Vessel Fabrication (jacket and side wall);

ix. Steel for 250,00L Bioreactor Vessel Bottom Dimple Jackets;

x. 5 x 32,000L Top Heads;

xi. 5 x 32,000L Gear Boxes;

xii. 5 x 32,000L Agitators.

3. None of the property listed above (collectively "Undelivered Equipment") has been delivered to GOOD Meat.

4. ABEC has acknowledged that the Undelivered Equipment constitutes GOOD Meat assets as evidenced by their direct involvement in providing information concerning these Undelivered Assets to GOOD Meat for the purpose of permitting GOOD Meat to secure a capital expenditure loan from Nexseer which identifies the Undelivered Equipment as collateral assets of GOOD Meat.

5. ABEC had knowledge that such Undelivered Equipment was identified by GOOD Meat as collateral assets of GOOD Meat, as evidenced by the Nexseer LOI submitted by ABEC as Exhibit J to the Complaint.

6. Indeed, ABEC was supportive of GOOD Meat pursuing funding from Nexseer, so much so that ABEC CEO Scott Pickering, during a verbal conversation with the CEO of GOOD Meat shared that if helpful, ABEC would write a letter to Nexseer or other capital expenditure line providers, clearly stating that the Undelivered Equipment were assets of GOOD Meat and could be pledged as collateral.

7. Further, ABEC has engaged with numerous customers that obtain capital expenditures lines for the purchase of related equipment—and fully understands that a capital expenditure line is only provided when collateral is pledged—in this case and in former cases, that collateral is the equipment.

8. Following an on-site visit to ABEC's facility in December 2022 by GOOD Meat's VP of Engineering, ABEC offered to ship to GOOD Meat certain Undelivered Equipment, but

GOOD Meat declined for lack of storage space with the understanding that ABEC would continue to hold the GOOD Meat assets until such time as GOOD Meat requested delivery.

9. On March 8, 2023, ABEC filed this action in the Court of Common Pleas of Northampton County.

10. This action was initiated during ongoing efforts between ABEC and GOOD Meat to negotiate an amendment to the Bioreactor Development Agreement entered into between ABEC and GOOD Meat dated on or about August 10, 2021 (the "Agreement").

11. While GOOD Meat was reviewing proposed terms of an amendment, ABEC insisted that the amendment was finalized and filed suit.

12. More than a year and a half earlier, through the Agreement, GOOD Meat and ABEC initiated a partnership for the development and potential supply of cell culture bioreactors to meet GOOD Meat's growing production needs.

13. The Agreement outlined a "staged approach to . . . provide a viable design" including five stages: (1) Feasibility (2-4 months); (2) Conceptual Design (4-8 months); (3) Design Validation (6-12 months); (4) Proof of Concept (20-28 months); (5) Full Scale Production Capacity (24-36 months).

14. The Agreement provided "[t]he time ranges shown above reflect the realities of design uncertainties as well as the potential for GM to drive project acceleration through more aggressive investment within a Stage and added risk through overlapping Stages."

15. The Agreement specifically provided that "ABEC will work collaboratively with GM through regular reviews during each stage" and that "[u]pon completion of each Stage (or earlier as GM and ABEC agree), ABEC will confirm pricing and GM will provide formal approval and funding to proceed to subsequent Stages."

16. From the start, the Agreement included equity stake in GOOD Meat "to strengthen the partnership and drive toward mutual success of the overall effort."

17. As a result, ABEC promised to "provide a price for each Stage that will align with the value ABEC would typically attribute to a partner-based product development and execution effort." Each stage "ha[d] a set equity stake (percent of ownership) associated with initiation."

18. At any point in the project, GOOD Meat retained the "option to deny progression to the next Stage."

19. Given financing hurdles, in November 2022, GOOD Meat recommended the evaluation of a phased approach, creating five 125KL bioreactors instead of four 250KL bioreactors to alleviate the capital outflow from GOOD Meat.

20. In response, ABEC stated that its Vice President of Project Management, Scott Brady, "is wanting to stall the progress until things are decided."

21. Though ABEC's CEO purportedly "made clear that is not to be done," he continued "the concern is rippling through the team."

22. ABEC resisted a phased approach, despite acknowledging "that [GOOD Meat's] funding has some risks per our last discussion." *See* November 4, 2022 E-mail, attached hereto as Exhibit A.

23. ABEC further recognized that discussions were needed to align on funding and discuss any delays. *See* December 3, 2022 E-mail, attached hereto as Exhibit B.

24. In the following months, ABEC began circulating draft amendments to the Agreement.

25. ABEC deemed one of these drafts "our agreement in principal" and noted "[p]er our discussion, you intend to have that fully reviewed and signed off no later than Monday, January

23, 2023," continuing "[i]t is important that we get this finalized and in place by Monday so please call me anytime if there is anything you need from me." *See* January 19, 2023 E-mail, attached hereto as Exhibit C.

26. No document was reviewed and returned by Monday January 23, 2023.

27. On January 27, 2023, ABEC acknowledged GOOD Meat's "specific concern about payments" as provided in the amendment. *See* January 27, 2023 E-mail, attached hereto as Exhibit D.

28. On January 30, 2023, GOOD Meat sent ABEC a proposed draft amendment, to which ABEC responded with numerous proposed changes in comment form.

29. The next day, ABEC attached the "agreement as we landed today" and concluded "I think this captures everything so hope to see a signed version tonight or tomorrow morning so we can move forward." *See* January 31, 2023 E-mail, attached hereto as Exhibit E.

30. GOOD Meat did not return a signed version of the proposed amendment that day or the next.

31. Instead, on February 2, 2023, GOOD Meat forwarded ABEC a message from its internal counsel flagging that she was "working on finalizing" comments to the amendment but was boarding a flight and would circle back once her review was complete. *See* February 2, 2023 E-mail, attached hereto as Exhibit F.

32. On February 7, 2023, GOOD Meat circulated a signed copy of the amendment to ABEC with the following cover message: "Pending additional comments from legal." *See* February 7, 2023 E-mail, attached here as Exhibit G.

33. The next day, ABEC concluded "I did not see any requested revisions from [GOOD Meat's internal counsel] so we will move forward as executed" but notes "[i]f there are any

requested revisions, let me know and we will cycle them through the team for consideration and revise the amendment if/as appropriate." *See* Exhibit G.

34. In response, GOOD Meat reiterated, "we will send back requested revisions - so still pending legal comments. Pls let me work through these." *See* Exhibit G.

35. Still, the next day, ABEC responded that it "[t]hink[s] we are aligned" and "[w]ith the executed document, the project is moving forward." ABEC continued, "[n]o rush on any non-substantive document clean-up if [GOOD Meat's internal counsel] identifies something……if/when that occurs, we will review and revise the agreement if appropriate." *See* Exhibit G.

36. When ABEC requested the status of a payment under the amendment, GOOD Meat restated that "the agreement is pending legal review and until that is sorted we are holding." *See* February 9, 2023 E-mail, attached hereto as Exhibit H.

37. Despite being informed that the amendment was still under review by internal counsel, ABEC responded "WTF." *See* Exhibit H.

38. Once again, GOOD Meat clarified, "[r]eminder my legal counsel needs to share comments on the agreement before it's executed, which is why I said pending legal comments." *See* Exhibit G, at February 9, 2023 E-mail.

39. The next day, ABEC made its position "clear" saying "[a]ny suggestion that the executed amendment is somehow not binding is beyond nonsensical." *See* February 10, 2023 E-mail, attached hereto as Exhibit I.

40. Meanwhile, ABEC recognized negotiations were ongoing, saying "[i]f you have any proposed changes to the current amendment, please send them to me so I can review with my team." *See* February 10, 2023 E-mail, attached hereto as Exhibit J.

41. Later that day, ABEC said, "I did not receive any proposed modifications to the current agreement" continuing, "[i]f these are legal based requests from your GC, really helpful to have them prior so I can get advice from my team." *See* Exhibit J, at February 13, 2023 E-mail.

42. GOOD Meat responded, "I noted pending legal comments when I sent over to ensure that was clear" and offered availability to "walk through" comments. *See* Exhibit J, at February 13, 2023 E-mail.

43. Instead, ABEC informed GOOD Meat, "[p]lease be aware that ABEC expects GOOD Meat to meet the terms of the executed amendment and these PO's need to be updated." *See* February 13, 2023 E-mail, attached hereto as Exhibit K.

44. Following a meeting, GOOD Meat's internal counsel stated "[l]et me know if you have time tomorrow to go through a couple specific points on the proposed amendment." February 13, 2023 e-mail, attached hereto as Exhibit L.

45. Less than a month later, ABEC filed suit in Northampton County, attempting to enforce terms that were still under negotiation—as reiterated by GOOD Meat on numerous occasions and acknowledged by ABEC itself.

46. The Amendments, therefore, are not validly executed or binding upon GOOD Meat.

**COUNTERCLAIM I – BREACH OF CONTRACT**
**(Failure to Deliver)**

47. Defendants incorporate herein the allegations set forth in Paragraphs 1 through 46 of its Answer.

48. As set forth above, on or about August 9, 2021, GOOD Meat and ABEC entered into the Agreement.

49. GOOD Meat issued payments in the amount of $80,369,066 under the Agreement.

50. GOOD Meat's payments include payment for the Undelivered Equipment.

51. Under the Agreement, ABEC agreed to "timely prepare and provide to the other Party all Prototypes, other Deliverables and/or other results of the Project."

52. Despite GOOD Meat's performance, ABEC failed to deliver all prototypes, other deliverables, and other results of the project to GOOD Meat.

53. Instead, ABEC has retained or otherwise not delivered GOOD Meat's Undelivered Equipment.

54. ABEC has breached its obligations under the Agreement by failing to deliver property to GOOD Meat.

**COUNTERCLAIM II – BREACH OF CONTRACT**
**(Violation of Exclusivity Provision)**

55. Defendants incorporate herein the allegations set forth in Paragraphs 1 through 54 of its Answer.

56. As set forth above, on or about August 9, 2021, GOOD Meat and ABEC entered into the Agreement.

57. In the Agreement, ABEC agreed that "until the earlier of: (1) the start of Stage 5 of the Project (as defined in the Statement of Work) or (2) one (1) year following the termination of this Agreement, ABEC acknowledges and agrees that it will not produce, develop, test, research or otherwise commercialize of attempt to commercialize (whether internally or with any Third Party) any bioreactors exceeding 25,000 liters of working volume for the purpose of culturing animal cells for food production."

58. Stage 5 of the Project has not started.

59. Upon information and belief, during the term of exclusivity, ABEC was in conversations with multiple competitor cultivated meat companies about supplying related equipment.

60. Upon information and belief, ABEC solicited business from and attempted to commercialize cultivated bioreactors exceeding 25,000 liters of working volume for the purpose of culturing animal cells for food production with these cultivated meat companies.

61. The Agreement had not been terminated for one year when ABEC reached out to these companies.

62. In fact, to this day, the Agreement has not been terminated for one year.

63. Accordingly, ABEC violated the exclusivity provision of the Agreement.

64. ABEC's breach has damaged GOOD Meat as an industry leader in the field of cultivated meat.

65. GOOD Meat has suffered damages not yet determined by ABEC's breach.

**COUNTERCLAIM III – CONVERSION**

66. Defendants incorporate herein the allegations set forth in Paragraphs 1 through 65 of the Answer.

67. GOOD Meat paid invoices related to bioreactor vessels and related equipment under the Agreement.

68. Under the Agreement, GOOD Meat has paid $80,369,066 to ABEC, including payment for Undelivered Equipment.

69. GOOD Meat has a property interest in the Undelivered Equipment. GOOD Meat made a demand for the return of the converted property, but ABEC refused the demand.

70. GOOD Meat has a right to immediate possession of the Undelivered Equipment. ABEC wrongfully possessed or disposed of such property as if it were its own.

71. GOOD Meat was deprived of its interest in the property by ABEC's wrongful possession or dispossession, and, as a result, suffered damages.

**COUNTERCLAIM IV – REPLEVIN (*IN REM*)**

72. Defendants incorporate herein the allegations set forth in Paragraphs 1 through 71 of the Answer.

73. ABEC continuously possessed or was otherwise able to deliver the Undelivered Equipment to GOOD Meat.

74. GOOD Meat tendered payment for the Undelivered Equipment.

75. GOOD Meat has a right to the immediate and exclusive possession of the Undelivered Equipment.

76. GOOD Meat has suffered damage due to Plaintiff's wrongful possession of the Undelivered Equipment and, therefore, seeks to replevy same.

**COUNTERCLAIM V – DECLARATORY JUDGMENT**

77. Defendants incorporate herein the allegations set forth in Paragraphs 1 through 76 of the Answer.

78. As alleged herein, GOOD Meat did not enter into the Amendments.

79. GOOD Meat repeatedly made clear to ABEC that the Amendments were not finalized, but instead, were pending legal comments.

80. ABEC acknowledged that the Amendments were being actively negotiated, asking "[i]f [GOOD Meat] ha[d] any proposed changes to the current amendment . . ."

81. The Amendments are not validly executed or binding upon GOOD Meat.

82. Accordingly, Defendants hereby seek entry of a declaratory judgment that the Amendments were not validly executed.

WHEREFORE, Defendants Eat Just, Inc. and GOOD Meat, Inc. respectfully request that the Court:

(a) Award Defendant GOOD Meat damages associated with ABEC's breach of the exclusivity provision in an amount to be proven at trial; and

(b) Declare and Order that the Amendments were not validly executed and thus are not binding upon GOOD Meat; and

(c) Award Defendant GOOD Meat the Undelivered Equipment to be replevied; or

(d) Award Defendant GOOD Meat $80,369,066, the estimated value of the converted property; and

(e) Award Defendants such other and further relief as the Court deems just and proper.

DLA Piper LLP (US)

*/s/ Joseph Kernen*
Joseph Kernen
*joseph.kernen@dlapiper.com*
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
215.656.3345
*Counsel for Eat Just, Inc. and GOOD Meat, Inc.*

Dated: January 18, 2024

**CERTIFICATE OF SERVICE**

I, Joseph Kernen, certify that on this 18th day of January 2024, true and correct copies of the foregoing Answer, Affirmative Defenses, and Counterclaims against Plaintiff ABEC, Inc. was served via CM/ECF on all counsel of record.

*/s/ Joseph Kernen*

Joseph Kernen

Dated: January 18, 2024