**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABEC, INC., | Civil Action No.: 5-23-cv-01091-WB |
| Plaintiff, | |
| v. | |
| EAT JUST, INC. | |
| and | |
| GOOD MEAT, INC., | |
| Defendants. | |

**DEFENDANTS GOOD MEAT, INC.'S AND EAT JUST, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF ABEC, INC.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

**DLA PIPER LLP (US)**

February 29, 2024

*/s/ Brian J. Boyle*
Brian J. Boyle
*brian.boyle@us.dlapiper.com*
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
215.656.3345

*Attorney for GOOD Meat, Inc. and Eat Just, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND ......................................................................................2

III.  LEGAL STANDARD .................................................................................................7

IV.  ARGUMENT ..............................................................................................................8

    A.  GOOD Meat adequately alleges a breach of contract claim in Count I..........8

        1.  GOOD Meat alleges an enforceable contract. .....................................8

        2.  GOOD Meat alleges that ABEC breached its contractual obligations. ...................10

        3.  GOOD Meat alleges resulting damages....................................................11

        4.  ABEC's contrary arguments are meritless.............................................12

    B.  GOOD Meat adequately alleges conversion and replevin claims in Counts III and IV. ........................................................15

        1.  GOOD Meat states the elements of conversion and replevin. ...................15

        2.  ABEC's contrary arguments fail.............................................................16

    C.  GOOD Meat adequately pleads a claim for a declaratory judgment in Count V...........................................................19

V.  CONCLUSION..........................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Gen. Life Ins. v. Goldstein,*
741 F. Supp. 2d 604 (D. Del. 2010).........................................................................18

*Anderson v. R.A. Midway Towing,*
No. CV 2004-07-430, 2007 WL 9658590 (Del. Com. Pl. Mar. 12, 2007)...........................15

*ASD Specialty Healthcare Inc. v. New Life Home Care Inc.,*
No. 3:11-CV-068, 2011 WL 5984024 (M.D. Pa. Nov. 29, 2011) ...........................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................7

*Berger & Montague, P.C. v. Scott & Scott, LLC,*
153 F. Supp. 2d 750 (E.D. Pa. 2001) ........................................................................17

*Doe v. Univ. of Delaware,*
No. 19-1963, 2020 WL 6060476 (D. Del. Oct. 14, 2020) .......................................................19

*Farmers New Century Ins. Co. v. Angerson,*
No. 04-2608, 2005 WL 8167845 (M.D. Pa. Apr. 18, 2005)...................................................20

*Garfield on behalf of ODP Corp. v. Allen,*
277 A.3d 296 (Del. Ch. 2022).........................................................................10, 11

*Israel Disc. Bank of New York v. First State Depository Co., LLC,*
No. CIV.A. 7237-VCP, 2012 WL 4459802 (Del. Ch. Sept. 27, 2012) .................................15

*Jackson v. Carroll,*
643 F. Supp. 2d 602 (D. Del. 2009)........................................................................10

*Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.,*
No. 11-4568, 2011 WL 6046923 (E.D. Pa. Dec. 6, 2011).....................................................17

*Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.,*
125 F. Supp. 3d 497 (D. Del. 2015)........................................................................10

*Osborn ex rel. Osborn v. Kemp,*
991 A.2d 1153 (Del. 2010) ................................................................................8

*Prusky v. Allstate Life Ins. Co.*,
No. 09-5156, 2010 WL 3859787 (E.D. Pa. Sept. 30, 2010) ....................................8

*Restanca, LLC v. House of Lithium, Ltd.*,
No. 2022-0690, 2023 WL 4306074 (Del. Ch. June 30, 2023)..................................9

*Runaway Recs. Prods., LLC v. Franciscan Univ. of Steubenville*,
No. 21-752, 2022 WL 5169810 (W.D. Pa. Oct. 5, 2022) .......................................18

*SodexoMAGIC, LLC v. Drexel Univ.*,
24 F.4th 183 (3d Cir. 2022) ...................................................................................18

*In re UD Dissolution Corp.*,
629 B.R. 11 (Bankr. D. Del. 2021) ..................................................................17, 18

*Vizant Techs. LLC v. Whitchurch*,
675 F. App'x 201 (3d Cir. 2017) ...........................................................................18

*VLIW Technology, LLC v. Hewlett-Packard Co.*,
840 A.2d 606, 612 (Del. 2003) ................................................................................8

*Wagner v. Hendry*,
No. 16364, 2000 WL 238009 (Del. Ch. Feb. 23, 2000) .........................................16

**Statutes**

28 U.S.C. § 2201 ................................................................................................19, 20

**Other Authorities**

66 Am. Jur. 2d, *Replevin* § 5 .................................................................................16

Federal Rule of Civil Procedure 8(d).........................................................................17

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§
2751, 2757 (4th ed.).........................................................................................19, 20

Defendants Eat Just, Inc. ("Eat Just") and GOOD Meat, Inc. ("GOOD Meat," and together with Eat Just, "Defendants") submit this memorandum of law in opposition to Plaintiff ABEC, Inc.'s ("ABEC" or "Plaintiff," and collectively with Defendants, the "Parties") motion to dismiss Defendants' Counterclaims.

## I.  **INTRODUCTION**

This case is about paying $80 million and receiving nothing in return. GOOD Meat hired ABEC to design, develop, and produce state-of-the-art vessels (*i.e.*, bioreactors) that were large enough to produce cultivated meat products on a commercial scale. And GOOD Meat paid ABEC handsomely for its work—indeed, more than $80 million.  Yet, ABEC has delivered ***nothing*** in exchange for this payment, has not committed to deliver anything, and has made no indication in its pleadings that it could deliver anything. Instead, it now contends in this litigation that GOOD Meat is not entitled to the equipment, or the money paid, and that Defendants should be required to pay ABEC tens of millions of dollars more.

During their relationship, ABEC happily accepted GOOD Meat's money, but when it came time for ABEC to transition from concept and design to production, it changed course. Citing GOOD Meat's temporary financial difficulties, ABEC embarked on a scheme to retain GOOD Meat's prior payments, siphon additional monies out of it, and force Defendants to incur the expense of litigation rather than resolve their disagreements through arbitration, as GOOD Meat and ABEC had agreed in their contract, the Bioreactor Development Agreement (the "Agreement" or "Bioreactor Agreement").

ABEC's scheme was straightforward. It slipped advantageous terms into a proposed amendment to the existing Agreement; asserted overwhelming and incessant pressure on GOOD Meat to execute it; and as soon as ABEC thought there was any conceivable basis to claim that the amendment was enforceable, it availed itself of the amendment's new, self-serving terms.  During

negotiations, GOOD Meat provided a signature page in escrow "pending additional comments from legal"—a common commercial practice—and ABEC seized on that to falsely claim that the parties reached an agreement on amendments, which they had not.

After patiently answering ABEC's highly curated Complaint, Defendants' Counterclaims set the record straight: it was ABEC, not GOOD Meat, who breached the Bioreactor Agreement; it was ABEC, not GOOD Meat, who converted and improperly withheld money and property; and it is ABEC, not GOOD Meat, whose case is fatally deficient, most notably because it belongs in arbitration.

ABEC's motion to dismiss Defendants' Counterclaims does nothing to change this. It is riddled with inconsistent arguments that are not only ineffective to rebut Defendants' Counterclaims, but they are also contrary to ABEC's positions in its affirmative case.  This includes, incredibly, calling into question the Agreement's enforceability—the very contract ABEC alleges Defendants breached. ABEC's doublespeak may work in the boardroom, but it does not in Federal Court. This Court should deny ABEC's motion to dismiss in full.

## II.   <u>FACTUAL BACKGROUND</u>

GOOD Meat is a food technology company engaged in the development and production of cultivated meat products. *See* ECF No. 37-3, Agreement at 1. Cultivated meat is a form of cellular agriculture that produces genuine meat by harvesting animal cells and growing these cells in bioreactors. Currently, companies operating in the cultivated meat industry are largely using off-the-shelf bioreactors designed for use in biopharmaceutical manufacturing. However, bioreactors used in biopharmaceuticals have limited capacity, and to scale cultivated meat production and make it commercially viable, larger, custom bioreactors are necessary.

As a result, GOOD Meat explored hiring ABEC, a company that designs, builds, and sells bioreactors for biopharmaceutical manufacturing. *See id*. The intent was that the relationship

would be mutually beneficial by providing GOOD Meat with the bioreactors it needed to scale and commercialize cultivated meat while providing ABEC a highly visible opportunity to break into the burgeoning cultivated meat industry and expand its scope beyond biopharmaceutical bioreactors and into food production.

On August 10, 2021, GOOD Meat and ABEC entered into the Bioreactor Agreement. *See id.* The Agreement initiated a commercial relationship between GOOD Meat and ABEC for the development and supply of cell culture bioreactors to meet GOOD Meat's production needs. *See id.* at App'x 1 (hereinafter, the "SOW") at 1-1. Projects to provide bioreactors at pilot (up to 6,000L) and demonstration (up to 25,000L) working volumes were already underway and ABEC "committed to propose a plan to design and develop bioreactors with a minimum working volume of 100,000L and a target working volume of 250,000L or more ('100,000KL+ Bioreactors')." *Id.*

In the Agreement, the parties outlined a "staged approach to . . . provide a viable design" including five stages: (1) Feasibility (2-4 months); (2) Conceptual Design (4-8 months); (3) Design Validation (6-12 months); (4) Proof of Concept (20-28 months); (5) Full Scale Production Capacity (24-36 months). *Id.* The Agreement also provided that "ABEC will work collaboratively with [GOOD Meat] through regular reviews during each stage" and that "[u]pon completion of each Stage (or earlier as [GOOD Meat] and ABEC agree), ABEC will confirm pricing and [GOOD Meat] will provide formal approval and funding to proceed to subsequent Stages." *Id.* The pricing model also included an equity stake, which was provided at each Stage.[1] *See id.* at 1-4. At any point in the project, GOOD Meat retained the "option to deny progression to the next Stage." *Id.* at 1-2.

---

[1] The pricing chart on page 1-5 of the Statement of Work summarizes the pricing and equity available at each stage, totaling five percent.

Despite paying over $80 million dollars, GOOD Meat has not received ***any*** deliverables associated with this payment. *See* ECF No. 58, Defendants' Counterclaims (hereinafter, "Counterclaims") at ¶ 1. This is true despite ABEC's purported construction of bioreactors and related equipment under the Agreement—and billing of same to GOOD Meat. *Id*. ¶ 8. In fact, in December of 2022, GOOD Meat's then Vice President of Engineering conducted a site visit to ABEC's manufacturing facility to document and inventory the purchased bioreactors and equipment. *Id*. ¶ 8. The Vice President of Engineering took pictures and videos to record GOOD Meat's purchased equipment. *Id*.

ABEC supported this inventory process to encourage GOOD Meat to obtain third-party financing secured by the equipment that had been manufactured to-date as collateral. *Id*. ¶¶ 4-7. Indeed, GOOD Meat ultimately included certain equipment as collateral in its letter of intent with Nexseer, a third-party financier. *Id*.; ECF No. 37-10 at Ex. J. GOOD Meat furnished, along with its letter of intent, payment records to Nexseer. *Id*. Though the funding was not ultimately secured, GOOD Meat and ABEC plainly understood that the equipment was GOOD Meat's. *See* Counterclaims at ¶ 4.

Despite this, nearly a year and a half into the partnership, ABEC had still not delivered a single bioreactor or other piece of equipment developed pursuant to the Bioreactor Agreement. *Id*. ¶¶ 1,3. Instead, ABEC began circulating draft amendments to the Agreement. *See id.* ¶¶ 10, 24. ABEC incorrectly declared one of these drafts to be an "agreement in principal" and noted "[p]er our discussion, you intend to have [the amendment] fully reviewed and signed off no later than Monday, January 23, 2023." *See id.* ¶¶ 11, 25; *see also* ECF No. 58-3 at 2, Jan. 19, 2023 Email from S. Pickering to J. Tetrick. But because the amendment was not an agreement in principal, GOOD Meat did not finalize or return it to ABEC. *See* Counterclaims at ¶ 26. Instead, GOOD

Meat reminded ABEC that the proposed new financial terms would be infeasible without additional fundraising. *Id*. ¶ 27.

On January 30, 2023, GOOD Meat sent ABEC a proposed draft amendment, to which ABEC responded with numerous proposed changes in comment form. *Id*. ¶ 28. The next day, ABEC jumped the gun and attached what was incorrectly referred to as the "agreement as we landed today" and concluded, incorrectly, "I think this captures everything so hope to see a signed version tonight or tomorrow morning so we can move forward." *Id*. ¶ 29; *see also* ECF No. 58-5 at 2, Jan. 31, 2023 Email from S. Pickering to J. Tetrick. Because the attached draft did ***not*** reflect a meeting of the minds, GOOD Meat did not sign and return it that night or the next day. *See* Counterclaims at ¶ 30. Instead, on February 2, GOOD Meat forwarded ABEC a message from its General Counsel confirming that she was still "working on finalizing" comments to the proposed amendment but was boarding a flight and would circle back once her review was complete. *Id*. at ¶ 31; *see also* ECF No. 58-6 at 2, Feb. 2, 2023 Emails between J. Tetrick and S. Pickering.

On February 7, 2023, GOOD Meat circulated a signature page in escrow, confirming that the text of the document was ***still under review*** by stating: "Pending additional comments from legal." Counterclaims at ¶ 32; *see also* ECF No. 58-7 at 3, Feb. 7, 2023 Email from J. Tetrick to S. Pickering.  The next day, ABEC stated: "I did not see any requested revisions from [GOOD Meat's General Counsel] so we will move forward as executed," but specifically acknowledged that the amendment was still very much in draft form, stating: "[i]f there are any requested revisions, let me know and we will cycle them through the team for consideration and revise the amendment if/as appropriate." Counterclaims at ¶ 33; *see also* ECF No. 58-7 at 3, Feb. 8, 2023 Email from S. Pickering to J. Tetrick. In response, GOOD Meat reiterated that the substantive terms were still under review and negotiation, stating, "we will send back requested revisions - so

still pending legal comments. Pls let me work through these." Counterclaims at ¶ 34; *see also* ECF No. 58-7 at 2-3, Feb. 8, 2023 Email from J. Tetrick to S. Pickering.

Hoping to force its terms on GOOD Meat, ABEC responded the next day that it "[t]hink[s] we are aligned" and "[w]ith the executed document, the project is moving forward." Counterclaims at ¶ 35; *see also* ECF No. 58-7 at 2, Feb. 9, 2023 Email from S. Pickering to J. Tetrick. Later that same day, when ABEC requested the status of a payment mentioned in the proposed amendment, GOOD Meat restated, again, that "the agreement is pending legal review and until that is sorted we are holding." Counterclaims at ¶ 36; *see also* ECF No. 58-8 at 2, Feb. 9, 2023 Email from B. Green to J. Lynch. Despite being told, yet again, that the amendment was still under review by internal counsel, ABEC responded "WTF." Counterclaims at ¶ 37; *see also* ECF No. 58-8 at 2, Feb. 9, 2023 Email from J. Lynch to S. Pickering.

Once again, GOOD Meat clarified, "[r]eminder my legal counsel needs to share comments on the agreement before it's executed, which is why I said pending legal comments." Counterclaims at ¶ 38; *see also* ECF No. 58-7 at 2, Feb. 9, 2023 Email from J. Tetrick to S. Pickering. The following day, a Friday, ABEC acknowledged that ***negotiations were still ongoing***, stating "[i]f you have any proposed changes to the current amendment, please send them to me so I can review with my team." *See* Counterclaims at ¶ 40; *see also* ECF No. 58-10 at 2, Feb. 10, 2023 Email from S. Pickering to J. Tetrick.

Yet, on Monday, ABEC said, "I did not receive any proposed modifications to the current agreement," continuing, "[i]f these are legal based requests from your GC, really helpful to have them prior so I can get advice from my team." Counterclaims at ¶ 41; *see also* ECF No. 58-10 at 2, Feb. 13, 2023 Email from S. Pickering to J. Tetrick. GOOD Meat responded, "I noted pending legal comments when I sent over to ensure that was clear" and offered availability to "walk

through" comments. Counterclaims at ¶ 42; *see also* ECF No. 58-10 at 2, Feb. 13, 2023 Email from J. Tetrick to S. Pickering. ABEC refused to negotiate further, stating instead: "[p]lease be aware that ABEC expects GOOD Meat to meet the terms of the executed amendment and these PO's need to be updated." Counterclaims at ¶ 43; *see also* ECF No. 58-11 at 2, Feb. 13, 2023 Email from S. Pickering to J. Tetrick.

GOOD Meat's General Counsel reiterated the need to reach agreement on terms, stating "[l]et me know if you have time tomorrow to go through a couple specific points on the proposed amendment." Counterclaims at ¶ 44; *see also* ECF No. 58-12 at 2, Feb. 13, 2023 Email from G. Grinberg to S. Pickering. ABEC did not respond. Instead, ABEC initiated suit in order to enforce terms plainly still under negotiation—all while it had not delivered a single piece of equipment pursuant to the actual Agreement. *See* Counterclaims at ¶¶ 1, 3, 45.

## III.   **LEGAL STANDARD**

In considering a motion to dismiss, all allegations in a complaint or counterclaims must be taken as true and construed in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For the reasons discussed below, Defendants' Counterclaims easily satisfy this standard.

## IV.   <u>ARGUMENT</u>

Defendants have adequately alleged their breach of contract, conversion, and replevin claims, as well as their claim for a declaratory judgment. Accordingly, ABEC's motion to dismiss should be denied.[2]

### A.   **GOOD Meat adequately alleges a breach of contract claim in Count I.**

GOOD Meat sufficiently alleges that ABEC breached the Bioreactor Agreement.  To state a claim for breach of contract under Delaware law, a party must allege: (1) the existence of an enforceable contract, whether it be express or implied; (2) a breach of a contractual obligation; and (3) resulting damages. *Prusky v. Allstate Life Ins. Co.*, No. 09-5156, 2010 WL 3859787, at *3 (E.D. Pa. Sept. 30, 2010) (citing *VLIW Technology, LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). GOOD Meat has unquestionably done so.

#### 1.   *GOOD Meat alleges an enforceable contract.*

First, GOOD Meat has alleged the existence of an enforceable contract. "Under Delaware law, a valid contract exists where "(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). All three elements are met here. GOOD Meat alleges—and documents attached to the pleadings show—that GOOD Meat and ABEC intended to be bound by the Bioreactor Agreement. *See* Answer at ¶ 32 (ABEC alleging, and Defendants admitting, that "around August 9, 2021, ABEC and GOOD Meat entered into the Bioreactor Development Agreement."); Counterclaims at ¶ 10 (Defendants alleging that ABEC

---

[2] To the extent the Court were to hold that Eat Just is the alter ego of GOOD Meat and/or that Eat Just is liable for ABEC's affirmative claims due to a lack of corporate separateness between GOOD Meat and Eat Just, both of which it should not, all of Defendants' Counterclaims would lie on behalf of Eat Just and GOOD Meat for the same reasons stated herein with respect to GOOD Meat.

and GOOD Meat entered into the "Bioreactor Development Agreement … on or about August 10, 2021"); *id*. at ¶ 48 (Defendants alleging that "on or about August 9, 2021, GOOD Meat and ABEC entered into the Agreement."). In fact, Plaintiff's motion concedes that this element is met. It states: "Defendants have alleged that [D]efendant G[OOD] Meat entered into the Bioreactor Agreement on August 9, 2021 with Plaintiff ABEC." ECF No. 62-2, ABEC's Motion to Dismiss (hereinafter, the "Mot.") at 5. Nor could ABEC reasonably challenge that GOOD Meat and ABEC intended to enter into a binding contract when its own pleading attached a fully-executed version of the Bioreactor Agreement. *See* ECF No. 37-3 at 12, Am. Compl. at Ex. C (the fully-executed Bioreactor Agreement).

Second, the terms of the alleged contract are sufficiently definite. "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Restanca, LLC v. House of Lithium, Ltd.*, No. 2022-0690, 2023 WL 4306074, at *21 (Del. Ch. June 30, 2023); *see also id*. ("If the parties have concluded a transaction in which it appears that they intend to make a contract, the court should not frustrate their intention if it is possible to reach a fair and just result, even though this requires a choice among conflicting meanings and the filling of some gaps that the parties have left.").

Here, the Bioreactor Agreement clearly states what GOOD Meat and ABEC intended to do—indeed, on the first page it states: "[GOOD Meat] and ABEC intend to collaborate on the development and manufacture of bioreactors with a minimum working volume of 100,000 liter[s] [] and a target working volume of 250,000 liter[s] or larger[.]" ECF No. 37-3, Agreement at 1. The Bioreactor Agreement also includes other definite terms, including the payment structure, development process, ownership of intellectual property, duties, indemnification requirements,

termination rights, notice requirements, and choice of law provisions, among numerous others. *See id*. Defendants specifically refer to many of these provisions in their pleadings. *See, e.g.,* Counterclaims at ¶¶ 12-13 (Defendants alleging that "through the Agreement, GOOD Meat and ABEC initiated a partnership for the development and potential supply of cell culture bioreactors to meet GOOD Meat's growing production needs" and alleging that the Bioreactor Agreement outlined a "staged approach to . . . provide a viable design"). For these reasons, there is no legitimate dispute about the sufficiency of the Bioreactor Agreement's terms.

Third, GOOD Meat has sufficiently alleged an exchange of legal consideration under the Bioreactor Agreement. "Under Delaware law, 'consideration,' as required for formation of contract, is defined as benefit to promisor or detriment to promisee pursuant to promisor's request." *Jackson v. Carroll*, 643 F. Supp. 2d 602, 612 (D. Del. 2009). Here, the Bioreactor Agreement clearly contemplates the exchange of legal consideration: GOOD Meat promised to exchange money and equity in exchange for goods, services, and other rights (*i.e.*, exclusivity) from ABEC. *See, generally*, ECF No. 37-3, Agreement at 1-10, SOW at 1-1:1-6. Defendants' pleadings also specifically allege such an exchange. *See* Counterclaims at ¶ 17 (alleging that "ABEC promised to 'provide a price for each Stage that will align with the value ABEC would typically attribute to a partner-based product development and execution effort.' Each stage 'ha[d] a set equity stake (percent of ownership) associated with initiation.'"). This element is therefore satisfied, and GOOD Meat has sufficiently alleged the existence of an enforceable contract.

### 2. GOOD Meat alleges that ABEC breached its contractual obligations.

GOOD Meat also properly alleges that ABEC breached contractual obligations arising from the Bioreactor Agreement. "At the motion to dismiss stage it is sufficient to simply allege . . . the breach of an obligation imposed by th[e] [implicated] contract." *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 328 (Del. Ch. 2022); *see also Micro Focus (US), Inc. v. Ins. Servs.*

*Off., Inc.*, 125 F. Supp. 3d 497, 501 (D. Del. 2015) (holding that obligations that could plausibly arise from contractual terms are sufficient to support a breach of contract claim at the motion to dismiss stage). Defendants' pleading easily satisfies this requirement. Among other things, GOOD Meat alleges that "[it] has paid approximately $80,369,066 to ABEC, Inc. but has not received any deliverables associated with its payments[;]" that "ABEC has possession of GOOD Meat property[;]" and that these failures violate obligations imposed by the Bioreactor Agreement. *See* Counterclaims at ¶¶ 1-2, 48-54 (alleging that GOOD Meat and ABEC entered into the Agreement; that GOOD Meat issued payments totaling more than $80 million under the Agreement; that such payments included payments for certain undelivered equipment; that under the Agreement, ABEC was required to prepare and provide all "Prototypes, other Deliverables, and/or other results of the Project;" and that ABEC failed to do so). GOOD Meat has therefore satisfied this pleading requirement.

### 3. *GOOD Meat alleges resulting damages.*

GOOD Meat sufficiently alleges damages resulting from ABEC's breach of the Bioreactor Agreement.  Delaware law imposes a low bar to sufficiently allege damages for a breach of contract claim, requiring only that the pleadings "support an inference of harm." *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 329 (Del. Ch. 2022); *see id*. at 328 ("So long as the complaint alleges that an agreement has been breached, and even if it is not clear that the non-breaching party has suffered immediate quantifiable harm, the equitable powers of this Court afford it broad discretion in fashioning appropriate relief.") (cleaned up). The Counterclaims' allegations satisfy this standard. They allege numerous harms, including direct economic injuries resulting from the fact that GOOD Meat "paid approximately $80,369,066 to ABEC, Inc. but has not received any deliverables associated with its payments;" and that "ABEC has possession of GOOD Meat property, including but not limited to: […] the Undelivered Equipment." Counterclaims at ¶¶ 1-2;

*see also id*. at ¶ 53 ("ABEC has retained or otherwise not delivered GOOD Meat's Undelivered Equipment").

These allegations, individually or taken together, more than satisfy the Delaware law's standard for pleading damages. Accordingly, GOOD Meat has stated a claim for breach of contract in Count I of Defendants' Counterclaims.[3]

> **4.    ABEC's contrary arguments are meritless.**

ABEC's motion to dismiss contends that GOOD Meat's breach of contract claim fails for four reasons. None withstand scrutiny.

First, ABEC claims that GOOD Meat did not identify the contract that ABEC allegedly breached. Nonsense. GOOD Meat identified the Bioreactor Agreement as the contract that was breached numerous times throughout its Answer and Counterclaims. *See, e.g.*, Answer at ¶ 32 (admitting that "around August 9, 2021, ABEC and GOOD Meat entered into the Bioreactor Development Agreement."); Counterclaims at ¶ 10 (alleging that ABEC and GOOD Meat entered into the "Bioreactor Development Agreement … on or about August 10, 2021"); *id*. at ¶ 48 (same). In fact, only a few sentences after making this baseless claim, ABEC concedes that its argument is entirely meritless. *See* Mot. at 4 ("The Bioreactor Agreement is the [a]lleged 'contract' providing the basis for the breach of contract claim in Count I of the Counterclaim."); *see also id*. at 5 ("Defendants have alleged that [D]efendant Good Meat entered into the Bioreactor Agreement on August 9, 2021 with Plaintiff ABEC."). This argument should be summarily rejected.

Next, ABEC argues that GOOD Meat's breach of contract claim fails because it is not evident that its payments to ABEC, totaling more than $80 million, were made pursuant to the

---

[3] GOOD Meat's breach of contract counterclaim would not be affected if the Court were to ultimately find that the purported amendment is enforceable (which it is not) since it would not excuse ABEC's nonperformance.

Agreement.[4] This argument defies common sense and the allegations in the Counterclaims.  At its core, ABEC asks that the Court find that GOOD Meat paid ABEC more than $80 million for no apparent reason. This, of course, was not the case—GOOD Meat paid ABEC pursuant to the Bioreactor Agreement, as Defendants explicitly allege in their Counterclaims. *See* Counterclaims at ¶ 49 ("GOOD Meat issued payments in the amount of $80,369,066 under the Agreement."). On theme, ABEC later acknowledged that this argument is also meritless in its motion, admitting that "Defendants [] allege that ABEC breached the Bioreactor Agreement in purportedly failing to deliver the equipment, despite GOOD Meat's apparent payments … for such equipment." Mot. at 13. Accordingly, this argument should also be rejected.

Third, ABEC argues that GOOD Meat's claim fails because the Bioreactor Agreement does not specifically list the "45 express categories of equipment" that GOOD Meat claims it paid for but has not yet received. *See* Mot. at 7-8. This argument ignores the plain language of the Bioreactor Agreement. Under the Agreement, ABEC was required to "timely prepare and provide

---

[4] ABEC's repeated claim that the Bioreactor Agreement's integration clause further supports their position is, at best, a red-herring and, at worst, disingenuous. While hardly a model of clarity, ABEC's position appears to be that because GOOD Meat and ABEC agreed that the Bioreactor Agreement constituted the entire agreement between them, and because the Agreement does not include exact pricing or specifically list every valve, seal, pipe, cord, and other piece of equipment necessary to perform the Agreement's entire scope of work, that the integration clause operates to preclude GOOD Meat from bringing its breach of contract claim in Count I.  This argument is entirely meritless. The Bioreactor Agreement clearly contemplated that there would be subsequent invoices and other sales agreements made pursuant to its terms and that the total cost of the project and its deliverables would be further defined by the parties over the lifespan of the Agreement. *See, e.g.*, ECF No. 37-3, Agreement at § 4.3 ("ABEC will submit invoices related to any amounts owed by GM to ABEC [] as may be agreed in the Statement of Work. GM will pay ABEC correctly invoiced amounts net thirty (30) days upon receipt of ABEC's invoice."); *id*. at App'x 1-1 ("Upon completion of each Stage …, ABEC will confirm pricing and GM will provide formal approval and funding to proceed to subsequent stages."). The Bioreactor Agreement was designed this way because "it [wa]s understood [by GOOD Meat and ABEC] that as a development effort there [we]re various technical and commercial unknowns." *See* Agreement at 1-2. For this reason, GOOD Meat's payments, and the equipment it paid for, fall squarely within the bounds of the Bioreactor Agreement and are unaffected by the integration clause.

to [GOOD Meat] all Prototypes, other Deliverables, and/or other results of the Project." ECF No. 37-3, Agreement at § 2.2. The Agreement further recognized that because "it [wa]s understood [by GOOD Meat and ABEC] that as a development effort there are various technical and commercial unknowns," *see* ECF No. 37-3, SOW at 1-2, the Agreement identified categories of materials, activities, equipment, and other deliverables that would be provided in each of the Agreement's five stages, without listing every specific good that would be provided, *see id*. at 1-2:1-4 (listing the general "Development Activities and Deliverables" associated with each stage of the Agreement). To accept ABEC's position would be to render unenforceable any contract that does not expressly identify every good, service, component, or sub-component thereof that is subject to its terms. This is not the law—perhaps this is why ABEC's brief cites no caselaw to support its absurd argument.

Lastly, ABEC argues that GOOD Meat's breach of contract claim fails because no right of delivery accrued under the Agreement. This is false, and ABEC's argument again ignores the plain language of the Agreement and Defendants' allegations. Under the Agreement, ABEC was required to "timely prepare and provide to [GOOD Meat] all Prototypes, other Deliverables, and/or other results of the Project," which was divided into five stages, each of which had an anticipated scope of work outlined in the Agreement. *See* Counterclaims at ¶¶ 51, 13; *see also* ECF No. 37-3, SOW at 1-1:1-6. These deliverables came due under every stage, with physical equipment among the deliverables required during at least Stages 3, 4, and 5.[5] *Id*. at 1-2:1-4. For example, "prototyp[es] []  of components and/or subsystems" were to be constructed during Stage 3, and at least one bioreactor with a volume larger than 1000 kiloliters, along with other equipment and

---

[5] Stages 1 and 2 concerned primarily the development of intellectual property, including feasibility studies, scale-up analyses, risk assessments, system and conceptual designs, modeling, system architecture development, and other related deliverables. *See* ECF No. 37-3 at 14-15.

materials, were to be "[f]abricat[ed]," "[c]onstruct[ed]," and/or "[i]nstall[ed]" during Stage 4. *Id.*
at 1-3:1-4.

ABEC ignores this and contends that because "shipping" is listed as one of the activities in
Stage 5—a stage that Defendants allege never occurred—that it was never required to deliver the
Undelivered Equipment. *See* Mot. at 9. This is willful misreading of the Agreement. The fact that
"shipping" is listed in Stage 5 does not mean that equipment was never to be delivered under any
other stage, particularly where other stages' activities necessarily required delivery. For example,
the Bioreactor Agreement required delivery of the prototypes, components, and subsystems
developed during Stage 3, and the construction, fabrication, and ***installation*** of equipment
contemplated in Stage 4 necessarily required delivery of that equipment to GOOD Meat. *See* ECF
No. 37-3, SOW at 1-3:1-4. As a result, this argument—like all the others—is entirely meritless.
ABEC's motion to dismiss GOOD Meat's breach of contract claim should be denied.

**B.      GOOD Meat adequately alleges conversion and replevin claims in Counts III
and IV.**

*1.      GOOD Meat states the elements of conversion and replevin.*

GOOD Meat properly alleges its conversion and replevin claims. "To make out a claim for
conversion, [a party] must prove that, at the time of the alleged conversion, (1) [it] had a property
interest in the allegedly converted property, (2) [it] had a right to possession of such property, and
(3) [the other party] wrongfully possessed or disposed of such property as if it were their own."
*Israel Disc. Bank of New York v. First State Depository Co., LLC*, No. CIV.A. 7237-VCP, 2012
WL 4459802, at *13 (Del. Ch. Sept. 27, 2012), *aff'd*, 86 A.3d 1118 (Del. 2014). The same elements
are required to state a replevin claim. *See Anderson v. R.A. Midway Towing*, No. CV 2004-07-430,
2007 WL 9658590, at *3 (Del. Com. Pl. Mar. 12, 2007) (explaining that the elements of replevin
are "1) that defendant was in possession of his property, 2) that he [] was entitled to or the owner

of the property for which defendant was in possession; and 3) that the property was of some value[.]"); *see also* 66 Am. Jur. 2d, *Replevin* § 5 ("Replevin and conversion … require proof of the same three elements.").

GOOD Meat has alleged a property interest in, and a right to possession of, the Undelivered Equipment given its payment of more than $80 million to ABEC for it. *See* Counterclaims at ¶¶ 1, 49, 68, 74. Even without the benefit of the Bioreactor Agreement, equitable considerations require that a party who paid valuable consideration for a good is "entitled to the beneficial ownership of [it]." *Wagner v. Hendry*, No. 16364, 2000 WL 238009, at *6 (Del. Ch. Feb. 23, 2000). Accordingly, GOOD Meat is entitled to possession of the Undelivered Equipment, which it owns, or its monetary value. ABEC cannot seriously contend otherwise given the fact that it explicitly acknowledged that the Undelivered Equipment is owned by GOOD Meat. *See* Counterclaims at ¶¶ 4-7 (alleging that ABEC acknowledged that the Undelivered Equipment was owned by GOOD Meat when GOOD Meat was seeking investment from Nexseer, a third-party investment firm). Accordingly, GOOD Meat properly alleges the first two elements of its conversion and replevin claims.

GOOD Meat also properly alleges that ABEC wrongfully possessed and discarded the Undelivered Equipment. Despite a demand to return the Undelivered Equipment, ABEC refused to do so and may have sold some of it to third parties without GOOD Meat's consent. *See* Counterclaims at ¶¶ 69-70, 73-74. GOOD Meat has therefore also properly stated the third element of its conversion and replevin claims.

### 2. *ABEC's contrary arguments fail.*

ABEC claims that the gist of the action and economic loss doctrines bar GOOD Meat's conversion and replevin claims. This argument fails for at least three reasons.

First, as an overarching matter, Federal Rule of Civil Procedure 8(d)(2) permits parties to plead two or more alternative claims. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses."). For this reason, courts in this district and neighboring districts regularly find that breach of contract and conversion and/or replevin claims may be pleaded simultaneously. *See, e.g., In re UD Dissolution Corp.*, 629 B.R. 11, 45 (Bankr. D. Del. 2021) ("[T]he Federal Rules permit pleading in the alternative. Thus, the Court concludes that the assertion of a tort claim as well as a contract claim, at this stage, is permissible.") (internal citations omitted).[6] As a result, the gist of the action and economic loss doctrines do not, at this stage, preclude simultaneous breach of contract and conversion and replevin claims, particularly given ABEC's contention that the Bioreactor Agreement is not an enforceable agreement, and that GOOD Meat cannot state a breach of contract claim. *See* Mot. at 4-6 (arguing that Defendants have not identified an enforceable contract and that the Bioreactor Development Agreement does not include "material term[s]" like "the agreed upon price for the alleged work" or "the 45 categories of equipment" identified in the pleadings).

---

[6] *See also Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) ("Therefore, as Federal Rule of Civil Procedure 8(d)(2) allows Berger to plead two or more alternative claims against Scott for either breach of contract or conversion, regardless of their consistency, and whether based on legal, equitable or other grounds, Defendant's motion to dismiss the claim for conversion must, at this juncture, be denied."); *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. CIV.A. 11-4568, 2011 WL 6046923, at *8 (E.D. Pa. Dec. 6, 2011)(denying motion to dismiss premised on gist of the action doctrine and explaining that "[c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry."); *ASD Specialty Healthcare Inc. v. New Life Home Care Inc.*, No. 3:11-CV-068, 2011 WL 5984024, at *5 (M.D. Pa. Nov. 29, 2011) (denying motion to dismiss conversion and replevin claims asserted alongside a breach of contract claim because a party is permitted to "plead inconsistent claims or alternative statements of a claim under Federal Rule of Civil Procedure 8(d).").

Second, as it pertains to the economic loss doctrine specifically, Delaware law "recognize[s] a fraud exception to th[e] [] doctrine." *In re UD Dissolution Corp.*, 629 B.R. 11, 45 (Bankr. D. Del. 2021) (collecting cases). For this reason, conversion claims are exempt from the doctrine's application. *See id.* ("The Court concludes that the conversion claim in the Amended Complaint fits within the fraud exception to the economic loss doctrine recognized by Delaware courts."). It does not appear that a Delaware court has ever barred a replevin claim based on the economic loss doctrine.

Third, the gist of the action doctrine is inapplicable to this case. The doctrine is a product of Pennsylvania law and, for that reason, it is not applicable to GOOD Meat's claims, which arise under Delaware law. *See Vizant Techs. LLC v. Whitchurch*, 675 F. App'x 201, 208 (3d Cir. 2017) ("[Plaintiff] could not rely on Pennsylvania's gist of the action doctrine [because] Delaware law does not recognize a doctrine by that name."); *Am. Gen. Life Ins. v. Goldstein*, 741 F. Supp. 2d 604, 611 (D. Del. 2010) ("Because the court has already found that Delaware law controls, it need not address Pennsylvania's gist of the action doctrine."). Moreover, even if the doctrine was applicable, which it is not, it would not operate to preclude GOOD Meat's claims in light of the numerous bases for its interest in the converted and replevied property and ABEC's challenge to the legitimacy of the Bioreactor Agreement. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 217 (3d Cir. 2022) ("The gist of the action doctrine does not apply here because [plaintiff's] claim does not depend on the breach of a contractual duty."); *Runaway Recs. Prods., LLC v. Franciscan Univ. of Steubenville*, No. CV 21-752, 2022 WL 5169810, at *6 (W.D. Pa. Oct. 5, 2022) ("[W]hen a plaintiff has a property interest in the thing that is the subject of a [conversion] claim, the gist of the action doctrine does not bar recovery under a conversion theory even though the property may also be the subject of a contract.").

For all these reasons, ABEC's arguments are meritless and do not affect the validity of GOOD Meat's conversion and replevin claims.

**C.      GOOD Meat adequately pleads a claim for a declaratory judgment in Count V.**

This case does not belong in this Court—it belongs in arbitration pursuant to the terms of the Bioreactor Agreement. For that reason, GOOD Meat seeks a declaratory judgment in Count V, requesting that the Court find that the purported amendment was not validly executed.

The importance of Count V is straightforward. Under the Bioreactor Agreement, GOOD Meat and ABEC agreed that "[a]ny dispute, controversy or claim arising out of or in connection with the Agreement, or the breach, termination, or invalidity thereof, shall be finally settled by arbitration[.]" ECF No. 37-3 at 30, Agreement at § 10.8. Arguably, however, one of the self-serving terms ABEC added to the purported amendment would displace the Agreement's arbitration provision, at least with respect to certain sums in dispute.[7] *See* ECF No. 51 at 9-10 (denying Defendants' prior motion to compel arbitration where the Court was bound to accept as true ABEC's allegation that the purported amendment was enforceable). For this reason, if the Court ultimately declares that the purported amendment was not validly executed or otherwise not enforceable, the Bioreactor Agreement will control and likely require the Parties to arbitrate this dispute.

The Declaratory Judgment Act allows GOOD Meat to seek the Court's resolution of this issue. *See Doe v. Univ. of Delaware*, No. 19-1963, 2020 WL 6060476, at *7 (D. Del. Oct. 14, 2020), *report and recommendation adopted*, No. 19-1963, 2020 WL 6343290 (D. Del. Oct. 29, 2020) (denying motion to dismiss a claim for declaratory judgment and rejecting movant's

---

[7] ABEC's weaponization of discovery in this case highlights why GOOD Meat insisted that the Agreement include an arbitration provision in the first place.

argument that the "the Declaratory Judgment Act does not create an independent cause of action."); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751 Purpose of Declaratory Judgments (4th ed.) (The remedy made available by the Declaratory Judgment Act … helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants."). Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. That is precisely what GOOD Meat seeks here, supported by detailed allegations about the purported amendment's unenforceability. *See* Counterclaims at ¶¶ 24-46, 78-82.

Insofar as Defendants can tell, ABEC appears to argue that the Court does not have jurisdiction over GOOD Meat's claim because there is no "case or controversy" between the Parties. *See* Mot. at 14 (arguing that "[t]he Court is without jurisdiction to entertain a declaratory judgment action absent an 'actual case or controversy' between the parties."). This argument is meritless. In determining whether a case or controversy exists, "the question [] is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2757 Existence of Actual Controversy (4th ed.); *see also Farmers New Century Ins. Co. v. Angerson*, No. 04-2608, 2005 WL 8167845, at *4 (M.D. Pa. Apr. 18, 2005) (explaining that the case or controversy requirement is satisfied where the action for declaratory judgment "involves the legal relations of parties who have adverse interests [and] regards … the application of [a written document]").  All of these factors are met here. ABEC and GOOD Meat have adverse legal

interests and the resolution of its declaratory judgment claim will resolve a live dispute that exists independent of its legal claims—namely, whether the purported amendment is effective. For this reason, GOOD Meat's claim for a declaratory judgment is proper and ABEC's motion should be denied.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny ABEC's motion to dismiss in its entirety. In the alternative, Defendants request that Court dismiss Defendants' Counterclaims without prejudice to give Defendants an opportunity to replead its claims.


Dated: February 29, 2024.

                                        DLA Piper LLP (US)

                                        */s/ Brian J. Boyle*
                                        Brian J. Boyle
                                        *brian.boyle@dlapiper.com*
                                        Joseph M. Baker
                                        *joseph.baker@dlapiper.com*
                                        Rachel K. Mudra
                                        *rachel.mudra@dlapiper.com*
                                        1650 Market Street, Suite 5000
                                        Philadelphia, PA 19103-7300
                                        215.656.3345

                                        *Counsel for Eat Just, Inc. and*
                                        *GOOD Meat, Inc.*

## CERTIFICATE OF SERVICE

I, Brian Boyle, certify that on this 29th day of February 2024, a true and correct copy of the foregoing Eat Just, Inc. and GOOD Meat, Inc.'s Opposition to ABEC, Inc's Motion to Dismiss was served via CM/ECF on all counsel of record.

*/s/ Brian J. Boyle*_____
Brian J. Boyle

Dated: February 29, 2024