# Exhibit 1

KLEHR HARRISON HARVEY BRANZBURG LLP

Stephanie D. Wolbransky
**Direct Dial**: 215-569-1959
**Email**: SWolbransky@klehr.com

February 16, 2024

**VIA HAND DELIVERY**
Charlesbank Capital Partners
575 Fifth Avenue, 36th Floor
New York, NY 10017

**Re: ABEC Inc. v. GOOD Meat Inc. and EAT JUST Inc., No. 5:23-cv-01091**

Dear Sir or Madam:

This Firm represents Plaintiff, ABEC Inc., in connection with the above-captioned matter. Enclosed please find a Subpoena to Testify at a Deposition in a Civil Action on March 12, 2024 at 10:00 am.

Please advise us if you have any questions or concerns regarding compliance with the subpoena. Thank you for your anticipated cooperation in this matter.

Very truly yours,

*/s/ Stephanie D. Wolbransky*

Stephanie D. Wolbransky

SDW:

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABEC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EAT JUST, INC.<br><br>And<br><br>GOOD MEAT, INC.<br><br>Defendants. | Civil Action No.: 5:23-cv-01091-WB |

## NOTICE OF SUBPOENA

TO: Brian Boyle
Rachel Mudra
DLA Piper LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Attorneys for Defendants

PLEASE TAKE NOTICE, pursuant to Federal Rule of Civil Procedure 45, that Plaintiff, ABEC Inc. intends to serve a Subpoena, in the form attached hereto, on CHARLESBANK CAPITAL PARTNERS, on February 16, 2024, or as soon thereafter as service may be effectuated.

KLEHR HARRISON
HARVEY BRANZBURG LLP

Dated: February 15, 2024

By: */s/ Stephanie D. Wolbransky*
Charles A. Ercole
Peter J. Norman
Stephanie D. Wolbransky
1835 Market Street
Philadelphia, PA 19103

cercole@klehr.com
pnorman@klehr.com
swolbransky@klehr.com
(215) 569-2700
*Attorneys for Plaintiff ABEC, Inc.*

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| ABEC INC.<br>*Plaintiff*<br>v.<br>GOOD MEAT INC. and EAT JUST INC.<br>*Defendant* | ) | Civil Action No. 5:23-cv-01091-WB |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Charlesbank Capital Partners

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See attached Schedule A.

| Place: | Date and Time: |
|---|---|
| Klehr Harrison Harvey Branzburg LLP<br>1835 Market Street, Suite 1400<br>Philadelphia, PA 19103 | 03/07/2024 2:00 pm |

The deposition will be recorded by this method: Stenographic

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Schedule B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/15/2024

*CLERK OF COURT*

OR

/s/ Stephanie D. Wolbransky

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ABEC Inc. , who issues or requests this subpoena, are:

Stephanie D. Wolbransky, 1835 Market St., 1400, Phila, PA 19103, swolbransky@klehr.com, 215-569-2700

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 5:23-cv-01091-WB

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named individual as follows: ______________

______________________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________________

______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A TO SUBPOENA

## DEFINITIONS

1. "ABEC" or "Plaintiff" means Plaintiff ABEC, Inc., and any and all predecessors, successors, parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

2. "EJ" or "Eat Just" means Defendant Eat Just, Inc., and any and all predecessors, successors, parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

3. "GM" or "Good Meat" means Defendant Good Meat, Inc., and any and all predecessors or successors in interest, employees, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

4. "Litigation" shall mean the civil action initiated by Plaintiff against Defendants, which Defendants removed to the United States District Court for the Eastern District of Pennsylvania, No. 5:23-cv-01091.

5. "Amended Complaint" shall mean the Amended Complaint filed by Plaintiff in the Litigation in August 2023, a copy of which is attached hereto as Schedule A, Tab 1.

6. "Counterclaims" shall mean the Counterclaims filed by Defendants in the Litigation in January 2024.

7. Any capitalized terms not specifically defined herein shall have the same meaning as that set forth in the Amended Complaint.

8. Wherever used, the singular includes the plural, and the plural includes the singular; the masculine includes the feminine, and the feminine includes the masculine; the disjunctive "or"

includes the conjunctive "and," and the conjunctive "and" includes the disjunctive "or"; and each of the functional words "each," "every," "any," and "all" includes each of the other functional words.

9. As used herein, the term "concerning" means regarding, referring to, describing, evidencing, or constituting.

10. As used herein, the term "relate(d)" or "relating" or "referring" means concerning, mentioning, reflecting, pertaining, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, or constituting (in whole or part), as the context makes appropriate.

11. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

12. "ESI" shall mean all electronically stored information, including but not limited to computer files, electronic mail, text messages, instant messages, information on social media or other websites (e.g., Facebook, LinkedIn), information stored on "smart" or other Internet-and-text capable cellular phones or tablet devices (e.g., iPad), information stored on USB, "flash" drives, or other portable electronic media, information stored on cloud storage sites, and any other discoverable Internet data. ESI includes native file formats without alteration of deletion of any associated information like metadata.

13. As used herein, the terms "document" and "documents" are used in their broadest sense, and means all tangible items, all ESI, and all communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. This definition includes originals, copies,

or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

14. As used herein, the term "person" means any natural person or any business, legal, or governmental entity or association.

15. As used herein, the term "including" means "including, but not limited to."

16. Any reference to a corporation, partnership, or other business entity herein, including without limitation Plaintiff or Defendant, includes its divisions, departments and other corporate subdivisions, its domestic and foreign subsidiaries and affiliates, its predecessors in interest, its present or former officials, executives, officers, partners, directors, employees, agents, and all other persons acting or purporting to act on behalf of the entity its subsidiaries, officers, predecessors, including all past or present employees exercising discretion, making policy, and making decisions or participating in any of the foregoing functions.

17. "You" or "your" means, Charlesbank Capital Partners, and any and all predecessors, successors, parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

18. Unless otherwise indicated, the timeframe for each request is January 1, 2015 through the present.

**TOPICS**

1. Funding, monetary transfers and/or other financial transactions made by you to GM or EJ.

2. The identity of entities that have any ownership interest in EJ and/or GM, and the amounts of such interests.

3. Communications between you and GM and/or EJ concerning ABEC.

4. Communications between you and any of the corporate officers of EJ, including but not limited to, Josh Tetrick, Gabrielle Grinberg and Brandy Green.

5. The amount of secured debt of EJ and/or GM.

6. The nature of any assets owned by EJ and/or GM, including intellectual property rights.

7. The nature of your total investment and/or your ownership interest in EJ and/or GM, including the timelines with respect to such ownership and/or investment.

8. Any corporate valuation analysis (including drafts) as to defendant EJ and/or defendant GM, including any proposed liquidation analysis.

9. The corporate practices, including employment practices, of defendant GM.

10. Communications between you and GM and/or EJ related to the Litigation.

11. Communications between you and GM and/or EJ related to the Amended Complaint.

12. Communications between you and GM and/or EJ related to the Counterclaims.

13. Contracts and/or agreements entered into between you and GM.

14. Contracts and/or agreements entered into between you and EJ.

15. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued by you to GM.

16. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued to you by GM.

17. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued by you to EJ.

18. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued to you by EJ.

19. The identification of each and every person with knowledge of the facts alleged in the Amended Complaint.

20. The identification of each and every person with knowledge of the facts alleged in the Counterclaims.

# SCHEDULE A

## Tab 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ABEC, INC.

Plaintiff, Civil Action No. [illegible]

v.

EAT JUST, INC.

And

GOOD MEAT, INC.

Defendants.

**AMENDED COMPLAINT**

[illegible]

I. **INTRODUCTION**

1. [illegible]

2. [illegible]



3. [illegible]

4. [illegible]

5. [illegible]

II. **THE PARTIES**

6. [illegible]

7. [illegible]

8. [illegible]

III. **JURISDICTION AND VENUE**

9. [illegible]

10. [illegible]



11. [illegible]

12. [illegible]

13. [illegible]

14. [illegible]

15. [illegible]

16. [illegible]

17. [illegible]






18. [illegible]

19. [illegible]

IV. **FACTUAL BACKGROUND**

20. [illegible]

21. As cultivated meats are grown in a laboratory from actual animal cell cultures over the course of several weeks, the process is more akin to the development of new biopharmaceuticals rather than food products. Indeed, both the federal Food and Drug Administration ("FDA") and the United States Department of Agriculture ("USDA") have [illegible] the equipment and process under which the cultivated meat is grown.

22. In December 2020, defendant Eat Just received approval from the government of Singapore for a cultivated meat product, the "GOOD Meat [illegible]." While [illegible] develop very small amounts of cultivated meat. To make the cultivated meat product commercially viable, the [illegible] much larger.

23. The manufacture, supply and use of bioreactors is very common in the biopharmaceutical industry. However, the most common size of bioreactor used in the industry likely holds [illegible] liters of liquid product, and the largest ever developed [illegible].

24. In order to make the cultivated meat product profitable, [illegible] determined that it would need to use bioreactors that could hold 250,000 L (the "Big Vessel"), approximately [illegible] larger in size than the largest bioreactors currently in use or ever designed.

25. In order to make such a new bioreactor, [illegible] ABEC, an industry leader in the engineering and development of bioreactors, to determine if it was even feasible to design and develop the Big Vessels that [illegible] would need.

26. [illegible] that defendants would need to develop and equip two smaller demonstration plants in Singapore and Alameda, California (the "Pilot Plants" work) as part of that process development and small-scale manufacturing for successful cultivation on a smaller scale





[illegible] with the Big Vessels that were in excess of 100 [illegible].

27. Negotiations for the design and development of the Big Vessels, along with development and equipping of two Pilot Plants, began in early 2021. [illegible] In conjunction with the development and equipping of the Pilot Plants, defendants issued a purchase order to ABEC for the Pilot Plants work. A copy of Purchase Order No. [illegible] for Pilot Plants work is attached hereto as Exhibit B.

29. The Pilot Plants work encompassed improvements performed by ABEC to manufacturing facilities in Singapore and [illegible] California.

30. Towards the end of the negotiations for the Big Vessel project, [illegible] determined that it would use a wholly owned division named "Good Meat" to enter into the agreement with ABEC.

31. Unfortunately, this division, which became defendant GMI, was woefully undercapitalized from the beginning, especially considering that the whole endeavor was likely to cost more than [illegible], with payments to ABEC for ABEC's portion of the Project alone likely exceeding [illegible].

32. Around August [illegible], 2021, ABEC and the newly formed defendant entered into the Bioreactor Development Agreement (the "Original Agreement"), a copy of which is attached hereto as Exhibit C.

33. The Original Agreement contemplated five different stages of work on the project (the "Project"):

Stage One – Feasibility
Stage Two – Conceptual Design
Stage Three – Design Validation
Stage Four – Initial Capacity





Stage Five – Full Production Capacity

Each of the stages contained various activities/deliverables required to show progress and/or completion of tasks within the stage. See Exhibit C.

34. The Original Agreement also required the defendants to issue purchase orders for the various portions of each stage and set forth the payment terms under which ABEC would be entitled to receive payment upon completion of various activities or deliverables.

35. Under the Original Agreement, defendants also agreed to issue shares of common stock in the newly created corporation to ABEC as part of ABEC's compensation for its work, with the amount of stock issued to ABEC increasing as the Project proceeded to the later stages.

36. Defendants also agreed under the Original Agreement to provide ABEC on an annual basis copies of its (a) balance sheets, (b) the statement of income, (c) cash flows and (d) stockholders equity, all prepared in accordance with generally accepted accounting principles. See Exhibit C, page 17.

37. Defendants have never provided ABEC with any copies of (a) balance sheets of GMI, (b) statement of income, (c) cash flows and (d) stockholders equity.

38. Defendants also agreed under the Original Agreement to provide ABEC on a quarterly basis unaudited copies of its (a) balance sheets of GMI, (b) statement of income, (c) cash flows and (d) stockholders equity, all prepared in accordance with generally accepted accounting principles. See Exhibit C, page 17.

39. Defendants have never provided ABEC with any copies of quarterly (a) balance sheets of GMI, (b) statement of income, (c) cash flows and (d) stockholders equity.

40. During the end of 2021 and into 2022, defendants continued to issue purchase orders to ABEC, increasing the scope of work that ABEC was to perform on the Project, and ABEC





continued to perform its work under the Original Agreement and the purchase orders for the Project.

41. Additionally, in order to perform the work required under the Original Agreement and purchase orders, ABEC was required to expand and upgrade its existing facility in Springfield, Missouri to accommodate the scope of the work, and a new facility in North Carolina. The expansion and upgrade costs (the "Expansion Costs") are estimated by ABEC to be [illegible]. Attached hereto as Exhibit D to the Complaint is a breakdown of the Expansion Costs.

42. By the end of 2022, defendants had issued approximately [illegible] worth of work in purchase orders and change orders to ABEC on the Project and had issued purchase orders for in excess of [illegible] of work.

43. Unfortunately, during this same time period, defendants began to fail to make timely payments on invoices owed to ABEC.

44. In January 2023, ABEC met with the CEO of defendants, Josh Tetrick, in an effort to resolve issues on the Project, including late payments, changes to the work, etc.

45. As a result of this meeting, on or around February [illegible], 2023, the parties entered into the Amendment to Purchase Orders and Bioreactor Development Agreement (the "Amendments"). A copy of the Amendments is attached to this Complaint as Exhibit E hereto. Collectively, the Original Agreement and the Amendments will be referred to hereinafter as the "Amended Agreement."

46. Under the Amendments, among other things, the parties agreed:

a. To deadlines under which defendants would have to make payment on past due invoices totaling [illegible].

b. That all future invoices on the Project would be paid in a timely manner.

c. That defendants would issue updated purchase orders [illegible] for work that reflected an [illegible] of [illegible] for the value of such work;

d. That defendants would issue to ABEC by February 28, 2023 copies of audited financial statements for Fiscal Year 2021 and unaudited quarterly financial statements for each fiscal quarter from the date of the Original Agreement;

e. To make scheduled changes for certain work in progress on the Project; and

f. To change certain [illegible] rights and [illegible] under the Original Agreement.

See [illegible].

47. [illegible] under the terms of the Amendments, ABEC [illegible] to [illegible] its rights to sue the defendants [illegible] and [illegible] ABEC and GM agreed that ABEC [illegible] all rights and remedies against GM [illegible] with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices, any then outstanding invoices and the Amendment. See Exhibit [illegible], Section [illegible].

48. On or around February [illegible], 2023, as required under the terms of the Amendments, defendants made payment to ABEC in the amount of $[illegible] reflecting [illegible] for the "Recent Past Due Amount" set forth in Section [illegible] of the Amendments, as well as $[illegible] reflecting the initial payment of the "Past Due Amount."

49. However, under the Amendments, defendants were required, within [illegible] days of the execution of the Amendments, to issue updated purchase orders [illegible] in the amount of $[illegible] to ABEC for work that had been performed and/or was in progress.

50. Despite receipt of notice from ABEC that the updates to purchase orders [illegible] were required and further notice that such updates were due and owing, defendants failed to issue the agreed upon updates to such purchase orders.





51. ABEC has issued [illegible] invoices [illegible] January 28, 2023 [illegible] in the amount of $[illegible] (Invoice 2186 [illegible]). A copy of Invoice 2186 [illegible] is attached hereto as Exhibit [illegible].

52. Under the terms of the Amendments, Invoice 2186 [illegible] was due and owing as of February 2[illegible], 2023.

53. In an effort to assist defendants with respect to cash management [illegible], ABEC provided [illegible] notice to defendants that payment under Invoice [illegible] was coming due on February 24, 2023.

54. However, despite receipt of such notice, defendants failed to make any payment to ABEC on Invoice [illegible].

55. Additionally, as per the terms of the Amendments, defendants were required to make a payment of $[illegible] to ABEC on March [illegible], 2023 as the second installment of the "Past Due Amount."

56. However, defendants, without excuse, failed to make the required payment of $[illegible] due to ABEC for the second installment of the Past Due Amount.

57. Under the terms of the Amendments, it was agreed that the failure to make any such payment of the Past Due Amount would cause all invoices [illegible] to defendants to immediately become due and payable.

58. Accordingly, as of March [illegible], 2023, a total of $[illegible] in invoices to defendants were due and owing to ABEC. Attached hereto as Exhibit [illegible] is a copy of a spreadsheet detailing the amounts due for each invoice. Defendants owe ABEC contractual interest on the invoices in question totaling $[illegible]. Attached hereto as Exhibit [illegible] is a copy of a spreadsheet detailing the current interest charges due for each invoice.





59. On or around March [illegible], 2023, ABEC sent notice to defendants that defendants were in breach of their obligations under the Amended Agreement and despite there not being any contractual requirement for such, ABEC provided defendants with the opportunity to cure the defaults under the Amended Agreement by March [illegible], 2023 at 5:00 p.m. EST. A copy of the March [illegible], 2023 Letter is attached hereto as Exhibit [illegible].

60. Despite being given the opportunity by ABEC to cure the defaults under the Amended Agreement, defendants have failed to even make an attempt to cure any of the defaults.

61. Accordingly, ABEC has been forced to terminate the Amended Agreement and issued [illegible] purchase orders and seek damages from defendants with respect to such termination.

62. Defendants [illegible] to ABEC for the amounts on the Project due to the [illegible] of enterprise liability.

63. Upon information and belief, defendants are subject to common control by Josh Tetrick, the CEO of both EJ and GM.

64. Upon information and belief, defendants EJ and GM have common ownership and EJ has an administrative nexus to GM.

65. Defendant EJ has assigned to third party lenders that it owns the rights to purchase orders issued by GM and the rights of GM. Attached hereto as Exhibit [illegible] is a markup copy of a November [illegible], 2022 [illegible] of the Nexsen [illegible] by Nexsen [illegible] under [illegible].

66. The markups on the Nexsen [illegible] show four ABEC purchase orders [illegible] that EJ has assigned rights over to Nexsen. See Exhibit [illegible]. These four purchase orders total more than $[illegible] million of equipment. Additionally, EJ purports to [illegible]





rights to Nexsen on all used equipment at the [illegible] facility [illegible] additional collateral, which plant facility is allegedly that of GM.

67. Upon information and belief, GM is an enterprise of defendant EJ as it is engaged in a common enterprise [illegible] with EJ [illegible] development of the [illegible] meat products.

68. Upon information and belief, GM fails to observe corporate formalities, as it was operating as a business [illegible] for at least [illegible] months before it was registered [illegible] in [illegible] 2022, fails to regularly prepare financial reports in accordance with generally accepted accounting principles and failed to properly demonstrate its capacity to operate as a separate corporation from EJ.

69. Upon information and belief, GM has no employees of its own and uses employees on the payroll of defendant EJ. By way of example, numerous purchase orders on the project were issued by defendant EJ [illegible], with billing made to "[illegible] INC." a trade name used by defendant EJ. Further, the contact persons on purchase orders were employees of EJ including [illegible] (identified as [illegible]) and [illegible] (identified as [illegible] at [illegible]) and [illegible].

70. Upon information and belief, GM and EJ have commingled corporate assets. GM and EJ use the same offices, the same address and the same [illegible]. All communications with GM are from the EJ email address [illegible] and terms and even GM's general counsel only uses an EJ email address in his communications.

71. Upon information and belief, EJ used its corporate control over GM to benefit EJ and represented that assets of EJ were actually assets of GM.

Purchase Order

#187659

TOTAL

$14,724,797.00

COUNT I – Breach of Contract – Pilot Plant Work

WHEREFORE

COUNT II – Breach of Contract

WHEREFORE

[illegible]

COUNT III – Account Stated (In the Alternative)

[illegible]

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against Defendant [illegible]

COUNT IV – (In the Alternative)

[illegible]

WHEREFORE, Plaintiff ABEC, Inc. demands judgment in its favor and against Defendant [illegible]

KLEHR HARRISON HARVEY BRANZBURG LLP

By: /s/ Peter Norman

[illegible]

CERTIFICATE OF SERVICE

[illegible]

# EXHIBIT A



**Pennsylvania Department of State**
Bureau of Corporations and Charitable Organizations
PO Box 8722 | Harrisburg, PA 17105-8722
T:717-787-1057
dos.pa.gov/BusinessCharities

| | | | |
|---|---|---|---|
| **Entity Name:** | EAT JUST, INC. | | |
| **Jurisdiction:** | DELAWARE | **Issuance Date:** | 04/06/2023 |
| **Entity No.:** | 0007305082 | **Receipt No.:** | 000456572 |
| **Entity Type:** | Foreign Business Corporation | **Certificate No.:** | 012942728 |

**Document Listing**

| Image No. | Date Filed | Effective Date | Filing Description | No. of Pages |
|---|---|---|---|---|
| A937321-1 | 06/15/2021 | 06/15/2021 | Initial Filing | 2 |

** **** ****** ******** End of list ******** ****** **** **

I, Albert Schmidt, Acting Secretary of the Commonwealth of Pennsylvania, do hereby certify that the attached document(s) referenced above are true and correct copies and were filed in this office on the date(s) indicated above.

IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the seal of my office to be affixed, the day and year above written

**ALBERT SCHMIDT**
Acting Secretary of the Commonwealth

Verify this certificate online at www.file.dos.pa.gov



Entity# : 7305082
Date Filed : 06/15/2021
Pennsylvania Department of State

PENNSYLVANIA DEPARTMENT OF STATE
BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS

Document will be returned to the name and address entered below
Bagged Management
Name
2618 Naples Blvd, Suite 210
Address
Naples CA 93135
City State Zip Code

Foreign Registration Statement
DSCB:15-412
(rev. 2/2016)

#12

Read all instructions prior to completing. This form may be submitted online at https://www.corporations.pa.gov/

Fee: $250.00

☐ I qualify for a veteran/reservist-owned small business fee exemption (see instructions)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. § 412 (relating to foreign registration statement), the undersigned foreign association hereby states that:

1. The type of association is (check only one):

☒ Business Corporation ☐ Limited Partnership ☐ Business Trust
☐ Nonprofit Corporation ☐ Limited Liability (General) Partnership ☐ Professional Association
☐ Limited Liability Company ☐ Limited Liability Limited Partnership

2. The full and proper name of the foreign association as registered in its jurisdiction of formation is:

EAT JUST, INC.

2A. If the name in 2 does not contain a required designator or if the name in 2 is not available for use in the Commonwealth, the alternate name under which the association is registering in this Commonwealth is:

3. The jurisdiction of formation: DE

4. The street and mailing address of the association's principal office:

2000 FOLSOM ST., SAN FRANCISCO CA 94110
Number and street City State Zip

4A. The street and mailing address of the office, if any, required to be maintained by the law of the association's jurisdiction of formation in that jurisdiction:

1209 ORANGE STREET, WILMINGTON DE 19801
Number and street City State Zip

PENN File - June 14,2021



DSCB:15-412-page2

5. The (a) address of the association's registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

*Complete part (a) OR (b) – not both:*

(a) ______
Number and street City State Zip County

(b) c/o INCORPORATING SERVICES, LTD Dauphin
Name of Commercial Registered Office Provider County

6. Check one of the following:

☐ The association may not have series
☒ The association may have one or more series

7. Effective date of registration of foreign association (check, and if appropriate complete, one of the following):

☒ The Foreign Registration Statement shall be effective upon filing in the Department of State
☐ The Foreign Registration Statement shall be effective on ______ at ______
Date (MM/DD/YYYY) Hour (if any)

8. *To be completed by Limited Liability Companies only. Check, and if appropriate complete, one of the following:*

☐ The association is a limited liability company which is not organized to render any of the below professional service(s)

☐ The association is a restricted professional limited liability company organized to render one or more of the following professional service(s). (If this box is checked, one or more of the fields below must be checked.)

___ Chiropractic ___ Dentistry ___ Law ___ Medicine and surgery
___ Optometry ___ Osteopathic medicine and surgery ___ Podiatric medicine ___ Public accounting
___ Psychology ___ Veterinary medicine

IN TESTIMONY WHEREOF, the undersigned association has caused this Foreign Registration Statement to be signed by a duly authorized representative thereof this 14th day of June, 2021.

EAT JUST, INC.
Name of Association

UZI SASSON
Signature

CFO
Title

# EXHIBIT B



JU ST

# Purchase Order

#187859

[illegible]

Vendor

ABEC, Inc.

[illegible]

United States

**TOTAL**

**$14,724,797.00**

Need By Date [illegible]

Need By Date [illegible] | [illegible] Vendor Quote # | Billing Phone

Proposal No. [illegible]

Bill To Address [illegible] | Contact [illegible] | Ship To Address

Proposal No. [illegible] Bioreactor growth suite for pilot scale plants at Alameda, CA and Singapore

| Name | Amount |
|---|---|
| Bioreactor growth suite for pilot scale plants at Alameda, CA and Singapore | $14,724,797.00 |

ABEC [illegible] proposal [illegible]

Tax

Total [illegible]

Digitally signed by Adrian Hennessy
DN: cn=Adrian Hennessy, o=ABEC, ou=Applications, email=ahennessy@abec.com, c=IE
Date: 2021.06.21 13:39:33 +01'00'

Email [illegible]



## PO 187859 Pilot Plants order confirmation

Final Audit Report 2021-06-21

| | |
|---|---|
| Created: | 2021-06-21 |
| By: | Adrian Hennessy (ahennessy@abec.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_PSeM8taIvkT-8iSdjQ3Xio-Upd |

### "PO 187859 Pilot Plants order confirmation" History

- Document digitally presigned by Adrian Hennessy (ahennessy@abec.com)
  2021-06-21 - 12:38:38 PM GMT- IP address: 188.141.115.198
- Document created by Adrian Hennessy (ahennessy@abec.com)
  2021-06-21 - 1:18:38 PM GMT- IP address: 188.141.115.198
- Document emailed to Pavan Kambam (pkambam@ju.st) for signature
  2021-06-21 - 1:21:33 PM GMT
- Email viewed by Pavan Kambam (pkambam@ju.st)
  2021-06-21 - 1:35:53 PM GMT- IP address: 71.198.116.28
- Document e-signed by Pavan Kambam (pkambam@ju.st)
  Signature Date: 2021-06-21 - 5:36:35 PM GMT - Time Source: server- IP address: 50.225.50.154
- Agreement completed.
  2021-06-21 - 5:36:35 PM GMT

Adobe Sign



# Exhibit C

# BIOREACTOR DEVELOPMENT AGREEMENT

This Bioreactor Development Agreement (this "**Agreement**") is entered into as of August [illegible], 2021 ("**Effective Date**") by and between [illegible], Inc., a Delaware corporation having its principal place of business at [illegible], San Francisco, CA [illegible] ("**GM**"), and ABEC, Inc., a Pennsylvania corporation with its principal place of business at [illegible], Bethlehem, PA [illegible] ("**ABEC**"). GM and ABEC are hereinafter referred to separately as a "**Party**" and jointly as the "**Parties**."

## RECITALS

WHEREAS, GM is a leading producer of cultured meat;

WHEREAS, ABEC designs, builds and sells bioreactors;

WHEREAS, GM and ABEC intend to collaborate on the development and manufacture of bioreactors [illegible] ("**Bioreactor Development**"); and

WHEREAS, GM and ABEC have entered into this Agreement, which sets forth the terms and conditions for the above-mentioned collaboration between GM and ABEC.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual agreements set forth herein, and the consideration and mutual benefits to be derived therefrom, the Parties agree as follows:

1 **DEFINITIONS**

1.1 "**Affiliate**" means, with respect to each Party, any legal entity other than such Party that is Controlled by such Party or is under common Control with such Party, only while and for so long as such Control exists.

1.2 "**ABEC Background IP**" means any and all Intellectual Property Rights of ABEC [illegible]

1.3 "**ABEC Foreground IP**" [illegible]

1.4 "**Bioreactor Technology Intellectual Property Right(s)**" [illegible]

1.5 "**Cell Culture Bioreactor Technology**" [illegible]







1.6 "**Cultured Meat Technology**" [illegible]

1.7 "**Cultured Meat Technology Intellectual Property Rights**" [illegible]

1.8 "**Confidential Information**" [illegible]

1.9 "**Control**" [illegible]

1.10 "**Deliverables**" [illegible]

1.11 "**Disclosing Party**" means a Party that discloses Confidential Information.

1.12 "**GM Background IP**" [illegible]

1.13 "**GM Foreground IP**" [illegible]

1.14 "**GMP**" means Good Manufacturing Practice.

1.15 "**Intellectual Property Right(s)**" [illegible]







[illegible]

1.16 "**Milestone**" [illegible]

1.17 "**Joint Intellectual Property Rights**" [illegible]

1.18 "**Patent Rights**" [illegible]

1.19 "**Permitted Purpose**" [illegible]

1.20 "**Person**" [illegible]

1.21 "**Project**" [illegible]

1.22 "**Prototypes**" [illegible]

1.23 "**Receiving Party**" means a Party that receives Confidential Information.

1.24 "**Requirements**" [illegible]

1.25 "**Statement of Work**" [illegible]

1.26 "**Third Party**" [illegible]

2 **PROJECT AND STEERING GROUP**

2.1 [illegible]

2.2 [illegible]







[illegible]

2.3 [illegible]

2.4 [illegible]

3 **EXCLUSIVITY**

[illegible]

4 **PAYMENTS**

4.1 [illegible]

4.2 [illegible]

4.3 [illegible]

4.4 [illegible]

4.5 [illegible]

4.6 [illegible]

4.7 [illegible]

5 CONFIDENTIALITY

5.1 [illegible]

5.2 [illegible]

5.3 [illegible]

5.4 [illegible]

5.5 [illegible]

5.6 [illegible]







[illegible]

5.7 [illegible]

6 INTELLECTUAL PROPERTY

6.1 [illegible]

6.2 [illegible]

6.3 [illegible]

6.4 [illegible]

6.4.1 [illegible]

6.4.2 [illegible]

6.4.3 [illegible]







6.4.4 [illegible]

6.4.5 [illegible]

6.4.6 [illegible]

6.4.7 [illegible]

6.5 [illegible]

6.6 [illegible]

6.7 [illegible]

6.8 [illegible]

6.9 [illegible]

7 REPRESENTATIONS AND WARRANTIES

7.1 [illegible]

7.2 [illegible]







7.3 [illegible]

7.4 [illegible]

7.5 [illegible]

7.6 [illegible]

8 INDEMNIFICATION

8.1 [illegible]

8.2 [illegible]

9 TERM AND TERMINATION

9.1 [illegible]

9.2 [illegible]

9.3 [illegible]

CONFIDENTIAL

9.4 [illegible]

9.5 [illegible]

10 MISCELLANEOUS

10.1 [illegible]

10.2 [illegible]

10.3 [illegible]

| | |
|---|---|
| If to GM: | If to ABEC: |
| GOOD Meat, Inc. | ABEC, Inc. |
| [illegible] | [illegible] |
| [illegible] | [illegible] |
| Attention: Legal | [illegible] |
| Email: [illegible] | Email: [illegible] |

10.4 [illegible]





CONFIDENTIAL

10.5 [illegible]

10.6 [illegible]

10.7 [illegible]

10.8 [illegible]

[SIGNATURE PAGE FOLLOWS]





CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed in duplicate originals by their duly authorized officers or representatives as of the Effective Date.

| "GM" | "ABEC" |
|---|---|
| GOOD Meat, Inc. | ABEC, Inc. |
| By: [signature] | By: [signature] |
| Name: [illegible] | Name: SCOTT PICKERING |
| Title: CEO | Title: CEO |
| Date: [illegible] | Date: 8/10/2021 |

[Signature Page to Bioreactor Development Agreement]



Appendix 1

Statement of Work

[illegible]

[illegible]

[illegible]

- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]
- [illegible]

[illegible]

- Stage 1 – [illegible]
- Stage 2 – [illegible]
- Stage 3 – [illegible]
- Stage 4 – [illegible]
- Stage 5 – [illegible]

[illegible]

[illegible] in parallel, in part or in whole, depending on resource availability, schedule needs, and GM risk tolerance.

[illegible]

[illegible]

GM will have the option to deny progression to the next Stage at any point in the project. [illegible]

DEVELOPMENT ACTIVITIES AND DELIVERABLES

STAGE 1 – FEASIBILITY

During Stage 1, ABEC and GM will set goals for process performance and the Cost of Goods Sold (COGS). ABEC will also perform initial feasibility work on Bioreactor design.

Specific Activities/Deliverables
1. Analysis of current GM cultivation process
   a. [illegible]
   b. [illegible]
2. Initial scale-up analysis
3. Establishment of [illegible] requirements
4. COGS analysis
5. Identification of Ultra Large Scale [illegible]
6. Technical Risk Assessment
7. Future Stages Cost and Schedule Update

STAGE 2 – CONCEPTUAL DESIGN

During Stage 2, ABEC will develop a conceptual design for the Bioreactor and provide budgetary pricing for the equipment.

Specific Activities/Deliverables
1. Initial Bioreactor P&ID's
2. Agitation and Aeration System Design
3. [illegible] Conceptual Design
4. Materials and [illegible] development





5. Initial 3D Layout – Plan and Elevation
6. Initial CFD Modeling
7. Utility Requirements Analysis
8. Establish Ultra Large Scale instrument and component supply chain
9. Preliminary automation system architecture
10. Fabrication/Construction/Installation Assessment
    a. ABEC factory versus field construction
    b. Indoor versus outdoor installation
    c. Modular construction/shipping
11. Support Equipment definition and sizing
    a. [illegible]
12. Conceptual Design Risk Assessment
13. Budgetary pricing of Bioreactor
14. Future Stages Cost and Schedule Update

STAGE 3 – DESIGN VALIDATION

During Stage 3, ABEC will finalize the Bioreactor design and [illegible]

Specific Activities/Deliverables
1. P&ID development to Issue for Design (IFD)
   a. Bioreactors
   b. Media, Additions, Harvest
2. IFD 3D Layout – Plan and Elevation
3. Prototype testing of components and/or subsystems as needed – [illegible]
4. Structural/Vibration [illegible] Finite Element Analysis (FEA) – [illegible] Conceptual Design
5. Heat Transfer calculations
6. [illegible] CFD Modeling – [illegible] Conceptual Design
7. [illegible] Plan
8. Preliminary Utility Requirements
9. [illegible] Automation System Architecture
10. Electrical Architecture
11. Firm Pricing
12. Future Stages Cost and Schedule Update

STAGE 4 – PROOF OF CONCEPT

During Stage 4, ABEC will construct and test the first [illegible] Bioreactor.

Specific Activities/Deliverables
1. Equipment 3D Modeling
2. Material Procurement
3. Fabrication/Construction and Installation
4. Performance Testing
   a. Cleaning and Sterilization
   b. Mixing and Mass Transfer
   c. Process Control – Temperature, pressure, pH, dissolved oxygen
5. Stage 5 Cost and Schedule Update



STAGE 5 – FULL SCALE PRODUCTION CAPACITY

During Stage 5, ABEC will [illegible] of Bioreactor capacity.

Specific Activities/Deliverables
1. [illegible] Production Bioreactors
2. Support Equipment TBD
3. Factory Acceptance Testing (if applicable)
4. Shipping
5. Site Installation, Start Up, and Site Acceptance Testing
6. Ongoing Service and Support

PROJECT ORGANIZATION

ABEC will establish a dedicated, multi-disciplinary and cross-functional team to execute the project [illegible]. The functional organization for the project is shown below.





PRICING

| [illegible] | Description | Price | Equity |
|---|---|---|---|
| 1 | Stage 1 of 100K L Bioreactor Design and Development | $600,000 | 0.5% |
| 2 | Stage 2 of 100K L Bioreactor Design and Development | $1,100,000 | 0.5% |
| 3 | Stage 3 of 100K L Bioreactor Design and Development | TBD (Budgetary = [illegible]) | 1% |
| 4 | Stage 4 of 100K L Bioreactor Design and Development | TBD | 2% |
| 5 | Stage 5 of 100K L Bioreactor Design and Development | TBD | 2% |

PAYMENT SCHEDULE

***Payment Schedule for cash portion of consideration:***

Payment terms will be as follows for Stages 1 – 3:

50% upon receipt and acceptance of purchase order
50% upon [illegible] weeks after receipt and acceptance of purchase order

Payment terms will be as follows for Stages 4 & 5:

35% upon receipt and acceptance of Purchase Order
20% upon ABEC receipt of Vessel Heads and Site Drawings
25% upon completion of Vessels
15% upon ready for Factory Acceptance Testing (FAT)
5% upon completion of Site Acceptance Testing not to exceed [illegible] days from ready for FAT date

Payment Terms are Net [illegible] days. All payments are net to ABEC [illegible].

***Payment Schedule for equity portion of consideration:***

Payment terms of equity shall be as follows:

GM shall issue the requisite number of shares of its common stock equal to the percentage ownership of GM set forth in the table above, determined as of the date of issuance on a fully diluted basis (i) upon the acceptance by GM and ABEC of the corresponding purchase order for each Stage for Stages 1 through 3, and (ii) with respect to each of Stages 4 and 5, upon successful Factory Acceptance testing. Such shares of common stock shall be duly authorized, validly issued, fully paid and non-assessable and free of all taxes, liens and charges created by GM.

Beginning at the time of the initial issuance of shares by GM to ABEC and until the parties agree otherwise, ABEC's ownership of a majority of its holdings of GM or GM has a liquidation event, GM shall provide (i) quarterly financial statements, (ii) a summary of Board meetings, excluding any confidential or sensitive information and (iii) tech steering group meetings with ABEC.

Additionally, beginning at the time of the initial issuance of shares by GM to ABEC, and until the parties agree otherwise, ABEC's ownership of a majority of its holdings of GM or GM has a liquidation event, the GM hereby covenants and agrees as follows:

1. GM will furnish the following reports to ABEC:

   (a) within one hundred twenty (120) days after the end of each fiscal year of GM, a balance sheet of GM and its subsidiaries, if any, as of the end of such fiscal year, and statements of income, cash flows and stockholders' equity of GM and its subsidiaries, if any, for such fiscal year, prepared in accordance with generally accepted accounting principles consistently applied.

   (b) within forty-five (45) days after the end of the first, second and third quarterly accounting periods in each fiscal year of GM, an unaudited balance sheet of GM and its subsidiaries, if any, as of the end of each such quarterly period, and statements of income and cash flows of GM and its subsidiaries, if any, for such period, prepared in accordance with generally accepted accounting principles consistently applied (except that such financial statements may be subject to normal year-end adjustments and may not contain all footnotes required by generally accepted accounting principles).

2. If GM registers any of its common stock, such registration shall include the registration of the GM stock issued hereunder to ABEC. Furthermore, ABEC's general rights as a Class A common stockholder of GM: GM cannot amend the rights of any class of its stockholders as set forth in its certificate of incorporation in a manner that affects any stockholders or group of stockholders within that class adversely without the approval of such group (per DGCL 242).

3. In the event that [illegible] any of its common stock of GM, it shall notify ABEC in writing ("Notice"), and ABEC shall have the right to participate in such sale by [illegible] of GM common stock by selling ABEC's pro rata portion in such sale at the same terms and conditions as specified in the Notice. To the extent that ABEC exercises its right of participation, the number of shares of GM Common Stock that [illegible] will be correspondingly reduced. ABEC shall provide notice of its participation in such sale within 5 business days of receipt of the Notice.

4. ABEC shall have the right to participate in future financing rounds of GM.

[SIGNATURE PAGE FOLLOWS]



IN WITNESS WHEREOF, the Parties have caused this Statement of Work to be signed in duplicate originals by their duly authorized officers or representatives as of the SOW Effective Date.

| "GM" | "ABEC" |
|---|---|
| GOOD Meat, Inc. | ABEC, Inc. |
| By: [signature] | By: [signature] Scott Pick[illegible] |
| Name: [illegible] | Name: SCOTT PICKERING |
| Title: CEO | Title: CEO |
| Date: 3/[illegible]/2021 | Date: 8/10/2021 |

*(Signature Page to Statement of Work to Innovative Development Agreement)*



# Exhibit D



Expansion and Upgrade Costs

| | | | |
|---|---|---|---|
| **North Carolina** | | | |
| Building Purchase | | [illegible] | |
| Building Design/Engineering/Permit | | [illegible] | |
| Equipment | | 1,448,000 | |
| | Total NC | | [illegible] |
| **Springfield Upgrades** | | | |
| Building renovation | | 800,000 | |
| Steel [illegible] | | [illegible] | |
| Parking lots | | [illegible] | |
| Vessel Mfg/Welding Equipment | | [illegible] | |
| [illegible] | | [illegible] | |
| Utilities | | [illegible] | |
| | Total Springfield | | [illegible] |
| | | | 15,[illegible],045 |

# Exhibit E



Execution Version

**AMENDMENTS TO PURCHASE ORDERS AND BIOREACTOR DEVELOPMENT AGREEMENT**

AMENDMENTS TO PURCHASE ORDERS AND BIOREACTOR DEVELOPMENT (this "Amendment") dated as of February 1, 2023, is by and between GOOD Meat, Inc., a Delaware corporation ("GM"), and ABEC, Inc., a Pennsylvania corporation ("ABEC").

RECITALS

WHEREAS, on August 10, 2021, GM and ABEC entered into that certain Bioreactor Development Agreement (the "Original Agreement", and the Original Agreement as amended hereby, the "Agreement"), relating to the development and manufacture of bioreactors for the purposes of cultivating meat;

WHEREAS, in connection with the Original Agreement, ABEC has performed services and is due payment from GM under the following invoices (copies of which are set forth hereto as Exhibit A): Invoice Nos. 24535, 24608, 24612, 24686 and 24725 (collectively, the "Past-Due Invoices");

WHEREAS, also in connection with the Original Agreement, ABEC has performed services and is due payment from GM under the following invoices (copies of which are set forth hereto as Exhibit B): Invoice Nos. 24752, 24768, 24769, 24771, 24772, 24779, and 24800 (collectively, the "Recent Past-Due Invoices");

WHEREAS, ABEC has also performed services under the following invoices in which payment shall be due and payable by GM to ABEC after the date hereof (copies of which are attached hereto as Exhibit C): Invoice Nos. 24817, 24818 and 24834 (collectively, the "Current Invoices");

WHEREAS, GM has advised ABEC that GM desires to modify the scope and certain other terms of the Purchase Orders and the Original Agreement; and

WHEREAS, ABEC and GM have agreed to amend and modify certain of the terms and conditions of the Purchase Orders and the Original Agreement as provided below.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Open Invoices.

(a) GM acknowledges, agrees and confirms that as of the date hereof, the aggregate amount of $35,111,159.80 (the "Past-Due Amount") is currently due and payable under the terms of the Past-Due Invoices without defense, counterclaim or offset of any kind. GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Past-Due Amount in full. GM covenants and agrees that it shall make full payment to ABEC of the Past-Due Invoices as follows:

[illegible]



| Payment Date: | Payment Amount |
|---|---|
| February 5, 2023 | $2,111,159.80 |
| March 1, 2023 | $16,500,000.00 |
| April 1, 2023 | $16,500,000.00 |
| Total | $35,111,159.80 |

Such payments shall be applied to the Past-Due Invoices based on the date of the invoices, from oldest date to newest date (i.e., the February 5, 2023 payment shall be applied to invoice 24535 first, with the balance applied to invoice 24612, etc.).

Notwithstanding the foregoing, in the event that GM closes on a loan financing transaction at any time on or before March 31, 2023 that provides for available loan proceeds to GM in the principal amount of at least $50,000,000, GM shall pay the then-outstanding amount of the Past-Due Invoices in full within ten (10) business days of the closing of such loan financing transaction.

(b) GM acknowledges, agrees and confirms that as of the date hereof, the aggregate amount of $2,064,552.00 (the "Recent Past-Due Amount") is currently due and payable under the terms of the Recent Past-Due Invoices without defense, counterclaim or offset of any kind. GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Recent Past-Due Amount in full. GM covenants and agrees that it shall make full payment to ABEC of the Recent Past-Due Amount with respect to the Recent Past-Due Invoices on or before February 5, 2023.

(c) GM acknowledges, agrees and confirms that as of the date hereof, the Current Invoices are outstanding but not yet due and payable. GM hereby acknowledges, agrees and confirms that the Current Invoices are (x) valid, proper and correct and (y) payable by GM on the specified payment dates thereof without defense, counterclaim or offset of any kind. GM ratifies and reaffirms the validity, enforceability and binding nature of its obligation to pay the Current Invoices in full. GM shall promptly pay the Current Invoices on their stated payment dates.

(d) In the event that GM fails to timely make any of the payments in full (i) with respect to the Past-Due Invoices on the specified payment dates set forth in the chart in Section 1(a) above, (ii) with respect to the Recent Past-Due Invoices on or before February 5, 2023, (iii) with respect to the Current Invoices (as defined in the fourth "Whereas" paragraph in the recitals above) on the stated payments dates therefor plus a three-day grace period, and/or (iv) with respect to any future invoices on the stated payment dates therefor plus a three-day grace period, (x) all amounts with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices and any other then outstanding invoices shall automatically be immediately due and payable without any further action by any party, (y) notwithstanding the terms of Section 9.3 of the Agreement, ABEC may immediately terminate the Agreement for cause without the need of providing a thirty (30) day prior notice or termination; and (z) ABEC may pursue any and all rights and remedies against GM, at law or in equity, with respect to the Past-Due Invoices, the Recent Past-Due Invoices, the Current Invoices, any then outstanding invoices and the Agreement.



[illegible]



2. Extension of Delivery Dates.

(a) GM consents, agrees and acknowledges that the delivery dates under the following Purchase Orders shall be extended by twelve (12) months from the current delivery dates set forth on Schedule 2(a) attached hereto: Purchase Order Nos. 187800, 191507, 191509, 193749, 194985, 196518 (each, a "§2(a) PO"). The parties agree that that the delivery dates for the §2(a) POs may be further adjusted as determined in good faith and agreed to by the respective project teams. The delivery dates are subject to further adjustment to the extent that there are any additional changes or modifications by GM after the date of order acceptance.

(b) GM consents, agrees and acknowledges as follows:

(i) With respect to Purchase Order 191507 (small nippon equipment), the stated milestones are hereby adjusted from (x) vessel complete plus four (4) months to vessel complete plus two (2) months and (y) from vessel complete plus eight (8) months to vessel complete plus four (4) months; and

(ii) With respect to Purchase Orders 191509 and 193749 (the two sets of large bioreactors), the stated milestones are hereby adjusted from (x) vessel complete plus four (4) months to vessel head and shell materials arrived plus eight (8) months, and (y) from vessel complete plus eight (8) months to vessel head and shell materials arrived plus fourteen (14) months.

3. Confirmation of Repricing of Purchase Orders. In recognition of the change in committed scope of work and the resulting impact to ABEC, GM and ABEC agree to an increase of the amount of the pricing of the following Purchase Orders as of the date of this Agreement as set forth below:

| Purchase Order No. | Current Price | Supplemental #1 Cost Impact Price Increase | Supplemental #2 Cost Impact Price Increase | Supplemental #3 Cost Impact Price Increase |
|---|---|---|---|---|
| 187800 | $45,775,182 | $2,347,861 | $2,347,861 | $2,347,864 |
| 191507 | $41,142,154 | $2,181,655 | $2,181,655 | $2,181,655 |
| 191509 | $50,710,2[illegible]1 | $2,536,51[illegible] | $2,536,51[illegible] | $2,536,511 |
| 193749 | $49,729,150 | $2,486,408 | $2,486,428 | $2,486,408 |
| 194985 | $86,965,750 | $4,834,518 | $4,834,518 | $4,[illegible] |
| 196518 | $3,[illegible] | $167,562 | $167,562 | $167,562 |



[illegible]

Each of the above Purchase Orders will be evidenced by updated Purchase Orders issued by GM with the revised prices set forth above (the "Updated POs") as follows: (i) Updated POs that shall include an amount equal to the "Supplemental #1 Cost Impact Price Increase" set forth in the chart above shall be issued by GM within ten (10) business days of the date of this Agreement; (ii) Updated POs that shall include an amount equal to the "Supplemental #2 Cost Impact Price Increase" set forth in the chart above shall be issued by GM on July 1, 2021 if GM fails to place in excess of $200m (in the aggregate) of accepted orders with ABEC on or before June 30, 2021; and (iii) Updated POs that shall include an amount equal to the "Supplemental #3 Cost Impact Price Increase" set forth in the chart above shall be issued by GM on October 1, 2021 if GM fails to place in excess of $200m (in the aggregate) of accepted orders with ABEC on or before September 30, 2021.

ABEC will issue "catch up" invoices on all of the Updated POs delivered pursuant to clause (i) above in amounts equal to (x) the percentage of completion as of such date multiplied by (y) the "Amount of Increase" of such Updated POs in the chart above (the "Catch-up Invoices"). ABEC and GM agree that the Catch-up Invoices will be due and payable by GM on May 1, 2021.

4. Amendments. The Original Agreement is hereby amended as follows:

(a) Section 3 (Exclusivity). Section 3 ("Exclusivity") of the Original Agreement is hereby amended by adding the following sentence at the end thereof: "In addition and notwithstanding anything to the contrary contained herein, at ABEC's election (acting in its sole discretion), the exclusivity provision in this Section 3 shall immediately and automatically terminate and be of no further force or effect in the event that (x) this Agreement is terminated by ABEC in accordance with Section 9.1 hereof and/or Section [illegible] (d) of that certain Amendments to Purchase Orders and Bioreactor Development Agreement, dated as of January 21, 2021, by and between ABEC and GM, or (y) 200,000L or more of total production capacity (taking into account all previous orders by GM) is not ordered by GM and accepted by ABEC on or before September 30, 2021."

(b) Section 9.5. Section 9.5 of the Original Agreement is hereby amended and restated in full as follows: "9.5 [Intentionally deleted]."

(c) Appendix 1 (Statement of Work). Appendix 1 ("Statement of Work") of the Original Agreement is hereby amended as follows:

(i) On page 1-1 of Appendix 1, the bullet point descriptions of Stage 4 and Stage 5 are hereby amended and restated in full as follows:

"● Stage 4 – (timing as set forth in purchase orders): Construct and test first [illegible] Bioreactor. Mass [illegible] for Stage 5.

● Stage 5 – Scale Production Capacity (timing as set forth in purchase orders): Construct, install, and commission 4,800,000L of Bioreactor capacity (inclusive of seed train bioreactors)."

5. GM Financial Statements. In accordance with item 1(a) on page 1-6 of Appendix 1, GM was obligated to provide ABEC with GM's audited financial statements for the year ending







December 31, 2021 (the "GM 2021 FY Financials") on or before March 1, 2022. Further, in accordance with item 1(b) on page 1-6 of Appendix 1, GM was obligated to provide ABEC with GM's unaudited quarterly financial statements for the fiscal quarters ending September 30, 2021, March 31, 2022, June 30, 2022, and September 30, 2022 within forty five (45) days after the end of the applicable quarterly period (collectively, the "Historical Quarterly Statements"). GM shall provide ABEC with the GM 2021 FY Financials on or before February 28, 2023. GM shall provide ABEC with the Historical Quarterly Statements on or before February 28, 2023. GM shall timely deliver to ABEC (i) all future GM audited annual financial statements in accordance with item 1(a) on page 1-6 of Appendix 1 and (ii) all future FQ1, FQ2 and FQ3 unaudited quarterly financial statements in accordance with item 1(b) page 1-6 of Appendix.

6. Miscellaneous.

(a) This Amendment may be executed in multiple copies, each of which shall for all purposes constitute an agreement, binding on the parties, and each party hereby covenants and agrees to execute all duplicates or replacement counterparts of this Amendment as may be required.

(b) This Amendment shall be governed by the substantive laws of the State of Delaware without reference to any conflicts of laws provisions. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

(c) To the extent that there is any conflicts between the terms and provisions of any ABEC Purchase Order (as amended by this Amendment) and the Agreement, the terms and provisions of the ABEC Purchase Orders (as amended by this Amendment) shall control.

(d) Except as modified hereby, the Original Agreement remains in full force and effect and subject to all terms and conditions thereof, which are hereby ratified and confirmed in all respects.

*Signature Page Follows*







IN WITNESS WHEREOF, the parties have executed this AMENDMENTS TO PURCHASE ORDERS AND BIOREACTOR DEVELOPMENT AGREEMENT as of the date set forth above.

GOOD MEAT, Inc.

By: ______________________

Name: Josh Tetrick
Title: CEO

ABEC, Inc.

By: ______________________

Name: Scott Pickering
Title: CEO





Exhibit A

Past Due Invoices

See attached.

[illegible]



[illegible]C, Inc.
[illegible] Schoenersville Circle
Bethlehem PA [illegible]
610 861 4666

Tax 23-1988548

Credit Memo: 24755-A
Page: 1
Date: 12/29/2022
Currency: USD

48478

BILL TO: Good Meat
300 Wind River Way
Alameda CA 94501
United States of America
Tax ID:

SHIP TO: Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJ0501 3200 | 161636 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | | Crediting sales tax on invoice # 24612 | -659,705.08 |

Remit_To:
ABEC, Inc.
[illegible] Schoenersville Circle
Bethlehem PA 18017
The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # [illegible]

| | |
|---|---|
| Sales Amount | |
| Sales Tax | -659,705.08 |
| Total | -659,705.08 |



ABEC, Inc.
[illegible] Schoenersville Circle
Bethlehem PA [illegible]
610 861 4666

Tax 23-1988548

Credit Memo: 24756-A
Page: 1
Date: 12/29/2022
Currency: USD

4[illegible]

BILL TO: Good Meat
300 Wind River Way
Alameda CA 94501
United States of America
Tax ID:

SHIP TO: Good Meat
2000 Folsom St
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] 3200 | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | | Crediting sales tax on invoice # 24688 | -701,038.38 |

Remit_To:
ABEC, Inc.
[illegible] Schoenersville Circle
Bethlehem PA 18017
The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # [illegible]

| | |
|---|---|
| Sales Amount | |
| Sales Tax | -701,038.38 |
| Total | -701,038.38 |



[illegible]C, Inc.
[illegible] Schoenersville Circle
Bethlehem PA [illegible]
610 861 4666

Tax 23-1988548

Credit Memo: 24757-A
Page: 1
Date: 12/29/2022
Currency: USD

48478

BILL TO: Good Meat
300 Wind River Way
Alameda CA 94501
United States of America
Tax ID:

SHIP TO: Good Meat
1145 Atlantic Ave
Alameda CA 94501
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] 3400 | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | | Crediting sales tax on invoice #24608 | -1,336,444.03 |

Remit_To:
ABEC, Inc.
[illegible] Schoenersville Circle
Bethlehem PA 18017
The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # [illegible]

| | |
|---|---|
| Sales Amount | |
| Sales Tax | -1,336,444.03 |
| Total | -1,336,444.03 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1698546

Invoice Number: [illegible]
Page: 1
Date: [illegible]
Currency: USD

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

SHIP TO: Good Meat, 2000 Folsom St, San Francisco CA 94110, United States of America

Tax ID:

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | [illegible] | "Invoices are prorated equally based on quantity of systems on each order" [illegible] | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTRI [illegible]

Project Invoice Summary:

Milestones On Current Invoice: [illegible]
Milestones Previously Invoiced: [illegible]
Project To Date M/S Invoiced: [illegible]
Net Invoice Amount: [illegible]

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | [illegible] |
| Sales Tax | [illegible] |
| Total | [illegible] |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1698546

Invoice Number: [illegible]
Page: 2
Date: [illegible]
Currency: USD

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

SHIP TO: Good Meat, 2000 Folsom St, San Francisco CA 94110, United States of America

Tax ID:

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1698546

Invoice Number: 24733
Page: 1
Date: 12/31/2022
Currency: USD

48478

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

SHIP TO: Good Meat, 2000 Folsom St, San Francisco CA 94110, United States of America

Tax ID:

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | 167860 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| | | "Invoices are prorated equally based on quantity of systems on each order" | |
| 1 | 25% Upon vessels completion | 20% Milestone Completion Proration<br>2x 500L Bioreactors<br>2x 2,000L Bioreactors | 1,598,563.25 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.63000 | 137,876.08031 |
| 2 | 25% Upon vessels completion | 20% Milestone Completion Proration<br>2x 500L Bioreactors<br>2x 2,000L Bioreactors | 599,753.05 |
| Tax Code: 94110 | SAN FRANCISCO TOURISM IMPROVEMENT DISTRI | 8.62500 | 51,728.70056 |

Project Invoice Summary:

Milestones On Current Invoice: 2,198,316.30
Milestones Previously Invoiced: 24,181,479.30
Project To Date M/S Invoiced: 26,379,795.60
Net Invoice Amount: 2,198,316.30

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210300776
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 2,198,316.30 |
| Sales Tax | 189,604.78 |
| Total | 2,387,921.08 |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1698546

Invoice Number: [illegible]
Page: 1
Date: [illegible]
Currency: USD

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

SHIP TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTRI [illegible]

Project Invoice Summary

Milestones On Current Invoice: [illegible]
Milestones Previously Invoiced: [illegible]
Project To Date M/S Invoiced: [illegible]
Net Invoice Amount: [illegible]

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | [illegible] |
| Sales Tax | [illegible] |
| Total | [illegible] |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1988548

Invoice Number: 24808
Page: 1
Date: 11/14/2022
Currency: USD

48479

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America
Tax ID:

SHIP TO
Good Meat
1145 Atlantic Ave
Alameda CA 94501
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBEC15490 | 195749 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 002 | 25% upon receipt of vessel materials | 12,432,037.50 |

Tax Code: 94501 ALAMEDA 10.75000 1,336,444.03125

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 12,432,037.50 |
| Milestones Previously Invoiced: | 7,459,222.50 |
| Project To Date MS Invoiced: | 19,891,260.00 |
| Net Invoice Amount: | 12,432,037.50 |

Remit_To:
ABEC, Inc
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000775
Routing # 221272303 Swift Code # PRNOUS33

| | |
|---|---|
| Sales Amount | 12,432,037.50 |
| Sales Tax | 1,336,444.03 |
| Total | 13,768,481.53 |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1988548

Invoice Number: 24836
Page: 1
Date: 10/18/2022
Currency: USD

48478

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America
Tax ID:

SHIP TO
Good Meat
2000 Folsom Street
San Francisco CA 94110
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| PJBSO-3215 | #161481 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 303 | 30% upon 18 months post acceptance of PO | 840,000.00 |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTRI 8.62500 72,450.00000

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 840,000.00 |
| Milestones Previously Invoiced: | 1,960,000.00 |
| Project To Date MS Invoiced: | 2,800,000.00 |
| Net Invoice Amount: | 840,000.00 |

Remit_To:
ABEC, Inc
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000775
Routing # 221272303 Swift Code # PRNOUS33

| | |
|---|---|
| Sales Amount | 840,000.00 |
| Sales Tax | 72,450.00 |
| Total | 912,450.00 |



**Exhibit B**

**Recent Past-Due Invoices**

See attached





**Good Meat - Recent Past Due Invoices**
**Exhibit B**

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] |
| | | | | | | | Total Current | | [illegible] |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax: 23-1888546

Invoice Number: 34800
Page: 1
Date: 12/31/2022
Currency: USD

48476

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America
Tax ID:

SHIP TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| AUBS013100 | 97/859 | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 01 | Pass through freight for Alameda | 66,400.00 |

Tax Code: N/A 0.00000 0.00000

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 66,400.00 |
| Milestones Previously Invoiced: | 15,910,580.53 |
| Project To Date M/S Invoiced: | 15,976,980.53 |
| Net Invoice Amount: | 66,400.00 |

Remit_To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000773
Routing # 221172380 Swift Code # PRNBUS33

| | |
|---|---|
| Sales Amount | 66,400.00 |
| Sales Tax | 0.00 |
| Total | 66,400.00 |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax: 23-1888546

Invoice Number: [illegible]
Page: 1
Date: 12/[illegible]/2022
Currency: USD

48476

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America
Tax ID:

SHIP TO: Good Meat, 4000 Friendship Road, Apex NC 27502, United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 009 | [illegible] | 30,254.12 |
| 2 | 010 | [illegible] | 50,423.50 |

Tax Code 0.00000

Tax Code 0.00000

Project Invoice Summary

| | |
|---|---|
| Milestones On Current Invoice | 80,677.62 |
| Milestones Previously Invoiced | 14,831,282.[illegible] |
| Project To Date M/S Invoiced | 14,9[illegible] |
| Net Invoice Amount | 80,677.62 |

Remit To
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000773
Routing # 221172380 Swift Code # PRNBUS33

| | |
|---|---|
| Sales Amount | 80,677.62 |
| Sales Tax | 0.00 |
| Total | 80,677.62 |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax: 23-1888546

Invoice Number: 34777
Page: 1
Date: 12/30/2022
Currency: USD

48476

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America
Tax ID:

SHIP TO: Good Meat, 4000 Friendship Road, Apex NC 27502, United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 007 | 20% [illegible] | 196,405.40 |

Tax Code: N/A 0.00000 0.00000

Project Invoice Summary

| | |
|---|---|
| Milestones On Current Invoice | 196,405.40 |
| Milestones Previously Invoiced | 17,090,380.00 |
| Project To Date M/S Invoiced | 17,286,485.40 |
| Net Invoice Amount | 196,405.40 |

Remit To
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000773
Routing # 221172380 Swift Code # PRNBUS33

| | |
|---|---|
| Sales Amount | 196,405.40 |
| Sales Tax | 0.00 |
| Total | 196,405.40 |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax: 23-1888546

Invoice Number: 34774
Page: 1
Date: 12/[illegible]/2022
Currency: USD

48476

BILL TO: Good Meat, 300 Wind River Way, Alameda CA 94501, United States of America

SHIP TO: Good Meat, 4000 Friendship Road, Apex NC 27502, United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 015 | 20% [illegible] | [illegible] |
| 2 | 016 | 20% [illegible] | [illegible] |

Tax Code 0.00000

Tax Code 0.00000

Project Invoice Summary

| | |
|---|---|
| Milestones On Current Invoice | 368,062.00 |
| Milestones Previously Invoiced | 17,[illegible] |
| Project To Date M/S Invoiced | 17,[illegible] |
| Net Invoice Amount | 368,062.00 |

Remit To
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA 18017

The Provident Bank
Account # 1210000773
Routing # 221172380 Swift Code # PRNBUS33

| | |
|---|---|
| Sales Amount | 368,062.00 |
| Sales Tax | 0.00 |
| Total | 368,062.00 |

ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax [illegible]

Invoice Number: [illegible]
Page: 1
Date: [illegible]
Currency: USD

48476

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

SHIP TO
Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| | [illegible] | [illegible] | [illegible] |
| Tax Code: | | [illegible] | |
| | [illegible] | [illegible] | [illegible] |
| Tax Code: | | [illegible] | |
| | [illegible] | [illegible] | [illegible] |
| Tax Code: | | [illegible] | |

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | [illegible] |
| Milestones Previously Invoiced: | [illegible] |
| Project To Date MB Invoiced: | [illegible] |
| Net Invoice Amount: | [illegible] |

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017

The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # [illegible]

| | |
|---|---|
| Sales Amount | [illegible] |
| Sales Tax | [illegible] |
| Total | [illegible] |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax [illegible]

Invoice Number: [illegible]
Page: 2
Date: [illegible]
Currency: USD

48476

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

SHIP TO
Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax [illegible]

Invoice Number: [illegible]
Page: 1
Date: [illegible]
Currency: USD

48476

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

SHIP TO
Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| | [illegible] | [illegible] | [illegible] |
| Tax Code: | | [illegible] | |
| | [illegible] | [illegible] | [illegible] |
| | | [illegible] | |

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | [illegible] |
| Milestones Previously Invoiced: | [illegible] |
| Project To Date MB Invoiced: | [illegible] |
| Net Invoice Amount: | [illegible] |

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017

The Provident Bank
Account # [illegible]
Routing # [illegible] Swift Code # [illegible]

| | |
|---|---|
| Sales Amount | [illegible] |
| Sales Tax | [illegible] |
| Total | [illegible] |



ABEC, Inc.
3998 Schelden Circle
Bethlehem PA 18017
610 861 4666

Tax 23-1988540

Invoice Number: 24792
Page: 1
Date: [illegible]
Currency: USD

48476

BILL TO
Good Meat
300 Wind River Way
Alameda CA 94501
United States of America

Tax ID:

SHIP TO
Good Meat
4000 Friendship Road
Apex NC 27502
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | 101509 | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 1 | 007 | DCL 1 - 15% catch up upon receipt and acceptance of PO | 444,181.00 |
| Tax Code: | | 0.00000 | |
| 2 | 008 | DCL 1- 25% catch up upon receipt of vessel materials | 740,303.20 |
| Tax Code: | | 0.00000 | |

Project Invoice Summary:

| | |
|---|---|
| Milestones On Current Invoice: | 1,184,485.20 |
| Milestones Previously Invoiced: | [illegible] |
| Project To Date MB Invoiced: | [illegible] |
| Net Invoice Amount: | 1,184,485.20 |

Remit To:
ABEC, Inc.
3998 Schelden Circle
Bethlehem, PA18017

The Provident Bank
Account # 1210020778
Routing # 221272303 Swift Code # PRNDUS33

| | |
|---|---|
| Sales Amount | 1,184,485.20 |
| Sales Tax | 0.00 |
| Total | 1,184,485.20 |

**Exhibit C**

Current Invoices

See attached



Good Meat - Current Invoices

Exhibit C

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|---|
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | | [illegible] |
| Good Meat | [illegible] | [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | | [illegible] |
| | | | | | | | Total Current | | [illegible] |



ABEC, Inc.

[illegible]

Good Meat

United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | [illegible] |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] |

Tax Code: [illegible]

Project Invoice Summary

Sales Amount: [illegible]

Sales Tax: 0.00

Total: [illegible]

Remit To

ABEC, Inc.

[illegible]



ABEC, Inc.

[illegible]

Good Meat

United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] |

ABEC, Inc.
[illegible]

Tax [illegible]

Invoice Number: [illegible]
Page: 2
Date: [illegible]
Currency: USD

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| | 139 | DCL# 18 - 7.5% Catch-up ready for FAT (S) | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTR [illegible]

Project Invoice Summary

Milestones On Current Invoice [illegible]
Milestones Previously Invoiced [illegible]
Project To Date MS Invoiced [illegible]
Net Invoice Amount [illegible]

Sales Amount [illegible]
Sales Tax [illegible]
Total [illegible]

Remit To:
ABEC, Inc.
[illegible]



ABEC, Inc.
[illegible]

Invoice Number: [illegible]
Page: 1
Date: [illegible]
Currency: USD

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| | [illegible] | [illegible] | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTR [illegible]



[illegible]C, Inc.
[illegible]

Tax [illegible]

Invoice Number: [illegible]
Page: 2
Date: [illegible]
Currency: USD

BILL TO: [illegible]
United States of America
Tax ID:

SHIP TO: [illegible]
United States of America

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | |

| Line/Rel | Milestone | Description | Extended Price |
|---|---|---|---|
| 7 | 144 | DCL# 18 - 7.5% Catch-up ready for FAT (S) | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTR [illegible]

Project Invoice Summary

Milestones On Current Invoice [illegible]
Milestones Previously Invoiced [illegible]
Project To Date MS Invoiced [illegible]
Net Invoice Amount [illegible]

Sales Amount [illegible]
Sales Tax [illegible]
Total [illegible]

Remit To:
ABEC, Inc.
[illegible]



Schedule 2(a)

ABEC GOOD Meat Schedule Summary _ Rev6

See attached.

















# Exhibit F



ABEC, Inc.

Invoice Number

Page 1

Date

Currency USD

Tax ID

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
| --- | --- | --- | --- | --- | --- | --- |
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Item/Job | Description | Extended Price |
| --- | --- | --- | --- |
| [illegible] | [illegible] | [illegible] | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTRICT



ABEC, Inc.

Invoice Number

Page 2

Date

Currency USD

Tax ID

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
| --- | --- | --- | --- | --- | --- | --- |
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Item/Job | Description | Extended Price |
| --- | --- | --- | --- |
| [illegible] | [illegible] | [illegible] | [illegible] |

Tax Code: 94110 SAN FRANCISCO TOURISM IMPROVEMENT DISTRICT

ABEC, Inc. [illegible]

Invoice Number: [illegible]

Page: [illegible]

Date: [illegible]

Tax [illegible]

Currency: USD

Tax ID: [illegible]

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Item/Rev | Description | Extended Price |
|---|---|---|---|
| Tax Code: [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |



ABEC, Inc. [illegible]

Invoice Number: [illegible]

Page: [illegible]

Date: [illegible]

Currency: USD

Tax ID: [illegible]

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Item/Rev | Description | Extended Price |
|---|---|---|---|
| Tax Code: [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |



ABEC, Inc. [illegible]

Invoice Number: [illegible]

Page: [illegible]

Date: [illegible]

Currency: USD

Tax ID: [illegible]

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

| Line/Rel | Item/Rev | Description | Extended Price |
|---|---|---|---|
| Tax Code: [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |



ABEC, Inc. [illegible]

Invoice Number: [illegible]

Page: [illegible]

Date: [illegible]

Currency: USD

Tax ID: [illegible]

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | | | | Net 30 Days |

Project Invoice Summary

Milestones On Current Invoice: [illegible]

Milestones Previously Invoiced: [illegible]

Project to Date M/S Invoiced: [illegible]

Net Invoice Amount: [illegible]

Remit To: [illegible]

Sales Amount [illegible]

Sales Tax [illegible]

Total [illegible]

# Exhibit G





# Exhibit H

Interest on Eat Just/Good Meat Late Payments

| Invoice Number | Due date | Paid date | Amount Due | Days Late | Interest |
|---|---|---|---|---|---|
| 24818 | 2/9/2023 | 2/13/2023 | (122,945.03) | 4 | (107.79) |
| 24817 | 2/9/2023 | 2/13/2023 | 460,037.74 | 4 | 403.32 |
| 24800 | 1/30/2023 | 2/7/2023 | 66,400.00 | 8 | 116.43 |
| 24773 | 1/29/2023 | 2/7/2023 | 80,677.60 | 9 | 159.14 |
| 24772 | 1/29/2023 | 2/7/2023 | 196,405.40 | 9 | 387.43 |
| 24771 | 1/29/2023 | 2/7/2023 | 80,186.00 | 9 | 158.18 |
| 24769 | 1/29/2023 | 2/7/2023 | 368,062.00 | 9 | 726.04 |
| 24768 | 1/29/2023 | 2/7/2023 | 628,136.40 | 9 | 1,239.06 |
| 24752 | 1/28/2023 | 2/7/2023 | 1,184,485.20 | 10 | 2,596.13 |
| 24431 | 10/14/2022 | 10/31/2022 | 34,643.43 | 17 | 129.08 |
| 24400 | 10/7/2022 | 10/31/2022 | 1,391,129.93 | 24 | 7,317.72 |
| 24374 | 9/29/2022 | 10/31/2022 | 2,318,549.88 | 32 | 16,261.61 |
| 24252 | 8/14/2022 | 10/31/2022 | 1,391,129.92 | 78 | 23,782.60 |
| 24206 | 7/21/2022 | 10/31/2022 | 8,261,088.92 | 102 | 184,686.26 |
| 24133 | 6/26/2022 | 10/31/2022 | 240,730.38 | 127 | 6,700.88 |
| 24116 | 6/16/2022 | 6/21/2022 | 2,229,483.33 | 5 | 2,443.27 |
| 24107 | 6/10/2022 | 6/15/2022 | 4,775,842.16 | 5 | 5,233.80 |
| 24011 | 4/24/2022 | 4/26/2022 | 1,783,586.65 | 2 | 781.85 |
| 24010 | 4/24/2022 | 4/26/2022 | 24,020.25 | 2 | 10.53 |
| 24009 | 4/24/2022 | 4/26/2022 | 616,115.41 | 2 | 270.08 |
| 23754 | 1/21/2022 | 2/3/2022 | 7,500,048.05 | 13 | 21,370.00 |
| 23753 | 1/21/2022 | 2/3/2022 | 9,643,510.79 | 13 | 27,477.40 |
| 23735 | 1/15/2022 | 1/26/2022 | 4,560,372.25 | 11 | 10,994.87 |
| | | | | Total | 313,137.90 |



# Exhibit I



KLEHR HARRISON HARVEY BRANZBURG LLP

Michael P. Rittinger
**Direct Dial**: 215-569-3399
**Email**: MRittinger@klehr.com

March 2, 2023

***Via Federal Express & Email (notices@ju.st)***

GOOD MEAT, INC.
Attn: Legal
2000 Folsom Street
San Francisco, CA 94010

GOOD MEAT, INC.
Attn: Legal
300 Wind River Way
Alameda, CA 94501

**Re: Notice of Default**

Dear Good Meat, Inc. Legal Department:

This firm represents ABEC, Inc. ("ABEC"). Reference is made to that certain Bioreactor Development Agreement, dated as of August 10, 2021, by and between GOOD MEAT, Inc. ("GM") and ABEC (the "Original Agreement"), as amended by that certain Amendments to Purchase Orders and Bioreactor Development Agreement, dated as of February 1, 2023 (the "First Amendment", and together with the Original Agreement, the "Agreement").

This will confirm that GM is in breach of the Agreement for failing to timely pay the following amounts to ABEC (collectively, the "Payment Defaults"):

| Invoice / Agreement § | Amount | Due Date |
|---|---|---|
| Invoice #24845 | $927,366.90 | February 24, 2023 |
| First Amendment §1(a) | $16,500,000.00 | March 1, 2023 |

Further, GM is in default of the Agreement for (x) failing to deliver updated POs to ABEC as required under Section 3 of the First Amendment, and (y) failing to deliver to ABEC copies of GM's 2021 annual financial statements (the "GM 2021 FY Financials") and the GM quarterly financial statements for the fiscal quarters ended September 30, 2021, March 31, 2022, June 30, 2022 and September 30, 2022 (collectively, the "Historical Quarterly Statements"), as required under Section 5 of the First Amendment.







In accordance Section 1(d) of the First Amendment, ABEC is entitled on account of the Payment Defaults to immediately terminate the Agreement and all outstanding purchaser orders. Upon such a termination, Section 3 ("Exclusivity") of the Original Agreement will immediately and automatically terminate and be of no further force or effect.

Notwithstanding such right of ABEC to immediately terminate the Agreement, ABEC hereby grants GM until ***5:00 pm Eastern Time on March 6, 2023*** (i) to cure the Payment Defaults by making payment in full to ABEC of $17,427,366.90 by wire transfer of immediately available funds, (ii) to deliver the GM 2021 FY Financials and the Historical Quarterly Statements to ABEC, and (iii) to issue the required replacement POs to ABEC under Section 3 of the First Amendment.

If GM fails to timely pay the Payment Defaults and cure the other defaults specified above, the Agreement and all purchase orders shall automatically be deemed terminated as of 5:01 pm Eastern Time on March 6, 2023 and ABEC will be entitled to all damages against GM on account of GM's breach of the Agreement and purchase orders.

This letter does not purport to reflect all GM defaults that may have occurred under the Agreement. ABEC reserves any and all rights it may have in connection with any such additional defaults. Furthermore, nothing herein contained is intended as, constitutes, or should be construed as, an election of remedies or a waiver of any of ABEC's rights or remedies.

If you have any questions concerning GM's obligations under the Agreement, you should contact the undersigned or instruct your attorney do so on your behalf.

Very truly yours,

Michael P. Rittinger

MPR:el

cc: Scott Pickering, Chief Executive Officer

SHIP DATE: 02MAR23
ACTWGT: 0.25 LB
CAD: 252291063/INET4580

BILL SENDER

TO ATTN: LEGAL
GOOD MEAT, INC.
2000 FOLSOM STREET
SAN FRANCISCO CA 94010

REF: 1997-0002
DEPT:

FRI - 03 MAR 4:30P
STANDARD OVERNIGHT

TRK# 7714 5309 2270

XW BWCA

94010
CA-US SFO

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



SHIP DATE: 02MAR23
ACTWGT: 0.25 LB
CAD: 252291063/INET4580

BILL SENDER

TO ATTN: LEGAL
GOOD MEAT, INC.
300 WIND RIVER WAY
ALAMEDA CA 94501

REF: 1997-0002
DEPT:

FRI - 03 MAR 4:30P
STANDARD OVERNIGHT

TRK# 7714 5316 8451

XW JBSA

94501
CA-US OAK

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



# EXHIBIT J



NEXSEER

Presented by:
Donal O'Donoghue
Vice President
Office: 469.310.4828
Email: donal.odonoghue@nexseer.com

| | | |
|---|---|---|
| TO | : | Eat Just, Inc. ("Lessee")<br>2000 Folsom Street<br>San Francisco, CA 94110<br>U.S.A. |
| FROM | : | Nexseer Capital ("Nexseer")<br>2942 Century Place, Suite 800<br>Costa Mesa, CA 92626 |
| RE | : | LETTER OF INTENT |
| DATE | : | November 3, 2022 |

The following Letter of Intent (a) is intended to be confidential and Lessee hereby agrees that it will not review, retransmit, disseminate, or discuss the contents of this Letter of Intent with anyone outside of Lessee's organization other than its auditors, attorneys or other professional third party advisors not actively involved in providing financing for commercial lease or loan transactions without Nexseer's prior written consent and (b) does not constitute an offer or commitment to provide financing and is provided for discussion purposes only.

| | | |
|---|---|---|
| BASIS OF PROPOSAL | : | This Letter of Intent assumes a total Leased Property Cost in the amount of $140,791,506.00 (plus applicable sales/use tax), Leased Property description, configuration, Acceptance Date and terms as provided herein. |
| RELIANCE ON COMMITMENT | : | Lessee agrees to provide Nexseer with a deposit in the amount of one Monthly Lease Payment which will be applied to the transaction ("Deposit"). An initial deposit ("Initial Deposit") in the amount of $100,000.00 ($50,000.00 due now and $50,000.00 due in 30 days) is due at the time of Lessee's acceptance of this Letter of Intent. The remainder of the Deposit is due upon Nexseer approving this transaction and transaction closing. If after 45 days from the receipt by Nexseer of this executed Letter of Intent, Initial Deposit, all documentation, and information required by Nexseer, Lessee terminates this Letter of Intent in writing, Lessee's Initial Deposit less any transaction expenses will be returned. In the event Nexseer provides materially different terms than those of this Letter of Intent, substantially delays or chooses not to consummate this transaction, the Initial Deposit will be returned to Lessee upon Lessee request. Upon execution of the transaction documents, Lessee agrees Nexseer may file Uniform Commercial Code (UCC) Financing Statements to provide notice of Nexseer's interest in the Leased Property. |
| INITIAL DEPOSIT | : | The terms of the Initial Deposit shall be legally binding on the parties. If either party has to enforce their rights pursuant to such terms, the other party will pay for all attorney's fees and any other costs incurred with enforcing such rights. |

FINANCIAL INFORMATION : Lessee will provide financial information, internal financial statements and other business and financial information reasonably required by Nexseer.

DOCUMENTATION : Lease documentation will be Nexseer's standard Lease Agreement and Lease Schedule generally reflecting the terms and conditions of this Letter of Intent and to be commercially reasonable and mutually agreeable to Lessee and Nexseer.

INDEX RATE : Lease rates quoted may be adjusted in direct relation to any increase in the equally maturing swap rate and then fixed for the term of the lease at commencement. The rate to be used for comparison and adjustment purposes shall be 2.75%.

PROGRESS FUNDING FACILITY : Nexseer may provide a facility to reimburse Lessee for any deposits made and at Lessee's election make deposit and progress payments up to 18 months.

LESSEE : Eat Just, Inc.

LESSOR : Nexseer Capital

EQUIPMENT : Nexseer's collateral to include items contained in purchase orders provided by Lessee.
Purchase Orders: 187860*, 190258, 191481, 191507, 191509, , , 193838, 187142, 192715, 192249, 192279, 192549, 192577, 189291, 192686, 194118, 192686, 192715, 193280, 193871, 193972, 193595, 189291, 192549, 189762, 189291, 188456, 193237, , 187859, 189982, and 192288."
*Purchase Order #18760 has five seed train units. Only three will be used as collateral equipment for Nexseer Capital.

EQUIPMENT COST : Up to $140,791,506.00

ABEC & GM POs

Alameda Plant is solely GM plant

| | |
|---|---|
| INITIAL BASE LEASE TERM | 36 Months |
| EQUIPMENT LOCATION | U.S.A. |
| EQUIPMENT | Nexseer's collateral to include items contained in (30) purchase orders provided by Lessee. Purchase Orders: 187860, 190258, 191481, 191507, 191509, , 193838, 187142, 192715, 192249, 192279, 192549, 192577, 189291, 192686, 194118, 192686, 192715, 193280, 193871, 193972, 193595, 189291, 192549, 189762, 189291, 188456, 193237, , 187859, 189982, and 192288." |
| MONTHLY LEASE RATE FACTOR | 0.0300868 |
| EQUIPMENT COST | ($140,791,506.00 x 75%) = $105,593,630.00 |
| ADDITIONAL COLLATERAL | Nexseer to take a lien on all used equipment at the Alameda pilot facility as additional collateral. |
| ADVANCE | Advance 75% of Original Equipment Cost. |
| EARLY BUYOUT OPTION | Month 30 = 32% of the Original Leased Property Cost |
| MONTHLY LEASE PAYMENT | $3,176974.43 |
| | (Based on an equipment cost of $140,791,506.00 or Lease amount of $105,593,630.00) |

| | |
|---|---|
| END OF TERM OPTIONS | Continue leasing or purchase the Leased Property for its then fair market value to not be not less than 15% of the original Leased Property Cost. |

ANTICIPATED LEASED PROPERTY ACCEPTANCE DATE : Nov 2022 – Dec 2023

AGREED TO ON THIS ____________ DAY OF November 7, 2022

LESSEE

Eat Just, Inc.

BY: [signature]

NAME: Josh Tetrick

TITLE: CEO

## SCHEDULE B TO SUBPOENA

## DEFINITIONS

1. "ABEC" or "Plaintiff" means Plaintiff ABEC, Inc., and any and all predecessors, successors, parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

2. "EJ" or "Eat Just" means Defendant Eat Just, Inc., and any and all predecessors, successors, parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

3. "GM" or "Good Meat" means Defendant Good Meat, Inc., and any and all predecessors or successors in interest, employees, agents, representatives, attorneys, and all other persons or entities who have acted or purported to have acted on behalf of any of them.

4. "Litigation" shall mean the civil action initiated by Plaintiff against Defendants, which Defendants removed to the United States District Court for the Eastern District of Pennsylvania, No. 5:23-cv-01091.

5. "Amended Complaint" shall mean the Amended Complaint filed by Plaintiff in the Litigation in August 2023, a copy of which is attached hereto as Schedule A, Tab 1.

6. "Counterclaims" shall mean the Counterclaims filed by Defendants in the Litigation in January 2024.

7. Any capitalized terms not specifically defined herein shall have the same meaning as that set forth in the Amended Complaint.

8. Wherever used, the singular includes the plural, and the plural includes the singular; the masculine includes the feminine, and the feminine includes the masculine; the disjunctive "or"

includes the conjunctive "and," and the conjunctive "and" includes the disjunctive "or"; and each of the functional words "each," "every," "any," and "all" includes each of the other functional words.

9. As used herein, the term "concerning" means regarding, referring to, describing, evidencing, or constituting.

10. As used herein, the term "relate(d)" or "relating" or "referring" means concerning, mentioning, reflecting, pertaining, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, or constituting (in whole or part), as the context makes appropriate.

11. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

12. "ESI" shall mean all electronically stored information, including but not limited to computer files, electronic mail, text messages, instant messages, information on social media or other websites (e.g., Facebook, LinkedIn), information stored on "smart" or other Internet-and-text capable cellular phones or tablet devices (e.g., iPad), information stored on USB, "flash" drives, or other portable electronic media, information stored on cloud storage sites, and any other discoverable Internet data. ESI includes native file formats without alteration of deletion of any associated information like metadata.

13. As used herein, the terms "document" and "documents" are used in their broadest sense, and means all tangible items, all ESI, and all communications, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. This definition includes originals, copies,

or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

14. As used herein, the term "person" means any natural person or any business, legal, or governmental entity or association.

15. As used herein, the term "including" means "including, but not limited to."

16. Any reference to a corporation, partnership, or other business entity herein, including without limitation Plaintiff or Defendant, includes its divisions, departments and other corporate subdivisions, its domestic and foreign subsidiaries and affiliates, its predecessors in interest, its present or former officials, executives, officers, partners, directors, employees, agents, and all other persons acting or purporting to act on behalf of the entity its subsidiaries, officers, predecessors, including all past or present employees exercising discretion, making policy, and making decisions or participating in any of the foregoing functions.

**INSTRUCTIONS**

A. These Document Requests ("Requests") are to be responded to in accordance with the Federal Rules of Civil Procedure, the Local Rules, any Court Orders, and are continuing in nature. You have an affirmative obligation to promptly supplement your response as required by any new or changed information. You must produce all responsive information and documents as soon as they become known or available to you.

B. In responding to these Requests, produce all documents that are available to you, including documents in the possession of your attorneys, investigators, or experts, and not merely documents in your own personal possession. If you or any of your agents, including your attorneys, are aware of the existence of any document within the scope of these Requests that is not within the custody, possession or control of you or your agents, please identify any such document in a written

response to the Request and provide information about who has possession, custody or control over the document.

C. When a Request calls for documents or facts that relate to a claim or contention, produce documents that are inconsistent with as well as those that support such claim or contention.

D. If you object to any part of any Request, you must respond to all parts of that Request to which you do not object, and state the specific bases for your objection to any part to which you do object, describe generally the document or information that is withheld and set forth the facts upon which you rely as the basis for each such objection.

E. In the event that you claim that a Request is overly broad or unduly burdensome, you should respond to that portion of the Request which is unobjectionable and specifically identify the manner in which the Request is allegedly overly broad or burdensome.

F. If you claim that a response, in whole or in part, to any Request or part thereof is privileged or otherwise protected from discovery, you must identify such information by subject matter and state with particularity the nature and basis of its claim of privilege or other reason that the information is protected from discovery.

G. These Requests are deemed continuing in nature and call for prompt supplemental production whenever you receive or discover additional information covered by these Requests. You are hereby notified of and referred to the Federal Rules of Civil Procedure regarding your ongoing duty to promptly supplement your responses to these Requests should you obtain information upon the basis of which you know a prior response was incorrect or incomplete when made, or that a response, thought correct and complete when made, is no longer true and complete.

H. The conjunctions "and" and "or" shall be interpreted conjunctively and shall not be interpreted disjunctively or in any manner that would exclude any information otherwise within the scope of any Document Request.

I. Unless otherwise indicated, the timeframe for each request is January 1, 2020 through the present.

**DOCUMENT REQUESTS**

1. Documents concerning, referring and/or reflecting any funding, investment, monetary transfers and/or other financial transactions made by you to GM or EJ.

2. Documents concerning, referring and/or reflecting any identity of entities that have any ownership interest in EJ and/or GM, and the amounts of such interests.

3. Communications between you and GM and/or EJ concerning, referring and/or relating to ABEC.

4. Communications between you and any of the corporate officers of EJ, including but not limited to, Josh Tetrick, Gabrielle Grinberg and Brandy Green.

5. Documents concerning, referring and/or reflecting the amount of secured debt of EJ and/or GM.

6. Documents concerning, referring and/or reflecting the nature of any assets owned by EJ and/or GM, including intellectual property rights.

7. Documents concerning, referring and/or reflecting the nature of your total investment and/or your ownership interest in EJ and/or GM, including the timelines with respect to such ownership and/or investment.

8. Documents concerning, referring and/or reflecting any corporate valuation analysis (including drafts) as to defendant EJ and/or defendant GM, including any proposed liquidation analysis.

9. Documents concerning, referring and/or reflecting any corporate practices, including employment practices, of defendant GM.

10. Communications between you and GM and/or EJ concerning, referring and/or related to the Litigation.

11. Communications between you and GM and/or EJ concerning, referring and/or related to the Amended Complaint.

12. Communications between you and GM and/or EJ related to the Counterclaims.

13. Contracts and/or agreements entered into between you and GM.

14. Contracts and/or agreements entered into between you and EJ.

15. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued by you to GM.

16. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued to you by GM.

17. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued by you to EJ.

18. All notices, quarterly statements, audits, audit requests, advance payments, sales reports, and/or payments made or issued to you by EJ.

19. All audits or audit requests concerning, related to, or involving any agreements with GM and/or EJ.

20. All communications with any third parties related to GM and/or EJ.

21. All quarterly statements sent to, or received from GM and/or EJ.